**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA |
| *Plaintiff*, |
| v. |
| BERTELSMANN SE & CO. KGaA, PENGUIN RANDOM HOUSE, LLC, VIACOMCBS, INC., and SIMON & SCHUSTER, INC. |
| *Defendants*. |

Civil Action No. 1:21-cv-02886-FYP

**ANSWER**

Defendants Bertelsmann SE & Co. KGaA, Penguin Random House LLC, ViacomCBS Inc., and Simon & Schuster, Inc. respond to the allegations of the Complaint as set forth below. Any allegation not specifically and expressly admitted is denied.

**GENERAL RESPONSE TO PLAINTIFF'S ALLEGATIONS**

1.      The mission of Penguin Random House and Simon & Schuster is to create the future of reading for generations to come.  Authors are central to their mission.  As book publishers, they focus on discovering and nurturing authors, supporting authors' creative efforts, and investing in authors' careers by promoting and selling their works.  All of these efforts ultimately increase author compensation.

2.      When storied publishing house Simon & Schuster was put up for sale, Penguin Random House saw an opportunity to build on the legacy of Simon & Schuster's imprints by nurturing their existing author relationships and identifying new authors to cultivate.  The transaction will benefit not just the many thousands of Simon & Schuster authors but also book retailers and consumers.  Penguin Random House plans to reinvest its savings from the merger to

grow title acquisitions and continue its support of brick-and-mortar booksellers. By giving Simon & Schuster authors access to Penguin Random House's highly efficient supply chain, their books will be more discoverable, visible, and available—online, internationally, and down the street. Penguin Random House's extensive supply capabilities are increasingly important to neighborhood book stores as they strive to compete with Amazon's almost infinite book selection and highly efficient delivery capabilities. Expanding Penguin Random House's supply chain to include Simon & Schuster authors ultimately provides greater income for authors and more choices for readers.

3.      The merger's pro-competitive effects are not just aspirational, but are borne out by precedent. After the 2013 merger between Random House and Penguin, competition in the markets for books and book rights intensified. The trade-book market in the U.S. has expanded substantially, with more titles being published every year. And publishers outside the so-called "Big Five" have been *gaining* share in the retail market for book sales at the expense of the "Big Five," driving the "Big Five's" share down to only about 50% of the overall book market:



4.      Notably, the Department of Justice ("DOJ") does not allege that the merger will reduce competition in the market for book sales or raise prices for consumers.  DOJ professes a different concern:  it wants to protect the most successful authors, those with sophisticated agents and the most lucrative book contracts.  To secure that protection, DOJ invents a market for rights to "anticipated top-selling books" that excludes the vast majority of authors and lacks any basis in either the real world or accepted market-definition analysis.  According to DOJ, only the "Big Five" publishers today regularly compete to acquire rights in this invented market.  Reducing that number to four, DOJ asserts, will diminish competitive high-end bidding and thus reduce the royalty advances that authors obtain for their works.

5.      DOJ's theory is factually wrong and legally baseless.  On the facts, DOJ errs in asserting that the "Big Five" are the only participants in the alleged market of "anticipated top-selling books."  As just one example, in each of the past three years, three of the top ten highest-selling authors according to BookScan have been published by publishers other than the so-called "Big Five."

6.      On the law, DOJ's theory is flawed, starting with the fictional market on which it depends:  a supposed market for "anticipated top-selling books."  DOJ defines this market according to the amount of advance royalties the author receives, but does not identify the market-defining amount.  And the publishing industry does not divide the market for book rights into distinct categories based on the author's compensation for the book or whether it is anticipated to be a top seller.  The royalty advance for a proposed book is driven mainly by the reader demand a particular editor anticipates for that particular book.  Because books are not commoditized consumer products, editors at different publishers have different expectations for any given book.  There is no identifiable advance level above which only certain publishers

compete for book rights.  DOJ's failure to identify any such market-defining "price" is critical: like any antitrust plaintiff, DOJ cannot claim harm to a market without identifying the essential facts that define the alleged market.  What is more, the concept of a distinct market for "premium" goods defined solely by price has been rejected by multiple courts.

7.     The only potentially legitimate market in this context is the market for rights in all proposed books.  And as to that market, DOJ barely makes any allegations at all.  Most important, DOJ alleges no cognizable competitive harm—it does not even suggest that the merger will cause a market-wide decline in royalty advances or in overall author compensation. To the contrary, DOJ affirmatively concedes that in the market for all book rights, hundreds of small and mid-size publishers provide a competitive alternative to the largest publishing houses, foreclosing any possibility that the merger could diminish competition in the only plausibly relevant market.

8.     Even in its made-for-litigation market artificially limited to only the richest royalty advances, DOJ cannot show that the merger will cause authors to accept lower advances than they did before the merger.  DOJ does not deny that competition will remain robust in the market to sell books to readers.  And publishers can sell books only if they first obtain the rights to publish them.  To compete successfully in the book market, then, a post-merger Penguin Random House that would include Simon & Schuster, along with all its rivals, will have every incentive to continue competing aggressively in the book-*rights* market, *especially* for the rights to books they expect to be most successful.  These are the most sought-after books, where authors and their sophisticated agents have the greatest negotiating leverage.  The merger will neither reduce that leverage nor lessen the incentives of Penguin Random House and its competitors to make aggressive offers for the most coveted books.

9.      A post-merger Penguin Random House will have no power to compel authors to accept lower advance royalties for the most sought-after books.  The combined company will still be competing for the rights to those books against not only the other remaining largest publishers, but also the many small and mid-size publishers that often compete in—and often *win*—bidding for the most valuable properties.  These rivals either are already active participants in high-end bidding today, or could easily become vigorous competitors after the merger.

10.      DOJ tries to discount the competitive effect of smaller publishers by asserting that any one of them does not compete in high-end bidding today as often as the "Big Five" houses do.  DOJ misses the point:  what matters is that in bidding for any *given* book, *at least one* smaller publisher often competes.  And in fact, the available data show that these publishers win bidding for books more often than Simon & Schuster does.  DOJ also ignores how easily many publishers outside the "Big Five"—which include such media heavyweights as Disney, Amazon, and Scholastic, as well as brand-name publishing "imprints" like Norton and Abrams and new entrants like Zando—could increase their participation in high-end bidding.  In short, after the merger, authors will still have a vast array of buyers for their book proposals, particularly for books expected to be "top sellers."

11.      DOJ's theory also erroneously assumes that price effects in the post-merger marketplace can be predicted based on a simple analysis of market shares.  That assumption is wrong not only because DOJ misdefines the market, mischaracterizes its participants, and miscalculates market shares, but also because DOJ misunderstands the most basic dynamics of the book-rights market.  Like books themselves, transactions in book rights are personal and individualized, especially in high-dollar deals.  These transactions are controlled by the author's agent, who is almost always a sophisticated repeat player.  The agent decides which publishers

can bid, how the bidding process will work, and what rights will be offered.  Agents invite bids from select imprints based on myriad factors—often highly subjective—that depend on the specific proposed book.  Penguin Random House has no ability to influence overall advances or compensation:  a Penguin Random House imprint is not invited to bid for every book, and even when one or more Penguin Random House imprints do bid, they lose far more auctions than they win.  The same is true for Simon & Schuster.  After the merger, the market dynamic will be just the same, and post-merger Penguin Random House's pricing influence will be just as nonexistent as it is today.

12.     For these and other reasons, DOJ cannot show that the merger will likely reduce competition or diminish pay for book rights at any level of the market.  The merger will instead allow Penguin Random House to bring enhanced distribution capacity to a greater number of authors, including Simon & Schuster's authors.  The proposed merger is procompetitive in every way.  DOJ's challenge should be rejected.

## RESPONSE TO SPECIFIC ALLEGATIONS

1.     Defendants admit that authors and books are vitally important to our culture and society.

2.     Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 2, except Defendants deny that Penguin Random House's proposed acquisition of Simon & Schuster would result in substantial harm to authors and that Penguin Random House's proposed acquisition of Simon & Schuster would result in particular harm to authors of "anticipated top-selling books," which is not an ascertainable category, and admit that Penguin Random House and Simon & Schuster, as well as dozens of other publishers, have competed to acquire publishing rights.

6

3.      Defendants lack knowledge or information sufficient to admit or deny the allegations in the first two sentences of paragraph 3 because the Complaint does not state what metric is being used as basis for the allegations.  Defendants further respond that Plaintiff's selective quotation in the third sentence is taken out of context and refer the Court to the document itself.

4.      Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 4, except Defendants admit that, by some measures, Penguin Random House, Simon & Schuster, HarperCollins Publishers, Hachette Book Group, and Macmillan Publishers constitute what some in the publishing industry refer to as the "Big Five" U.S. publishers and deny the allegations in the second sentence.  Defendants further respond that Plaintiff's selective quotation in the third sentence is taken out of context and refer the Court to the document itself.

5.      Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 5, except Defendants admit that publishing can be a risky business; many books published do not earn a profit for the publisher; publishers often pay significant advance royalties to authors when they present an attractive book concept; some authors do not earn additional royalties; Penguin Random House and Simon & Schuster have provided editorial, production, marketing, and publicity support to authors; and Penguin Random House and Simon & Schuster have sales and distribution networks.

6.      Defendants deny the allegations of paragraph 6.  Defendants further respond that Plaintiff's selective quotations in the second and third sentences are taken out of context and refer the Court to the documents themselves.

7.      Defendants deny the allegations of the first three sentences of paragraph 7. Defendants lack knowledge sufficient to admit or deny the allegations of the fourth sentence of paragraph 7, but state that the chart is at best misleading, if not simply wrong, and shows that competitors to Penguin Random House and Simon & Schuster have themselves paid hundreds of millions of dollars in author advances, often by bidding more than Penguin Random House and Simon & Schuster.

8.      Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 8, except Defendants admit that Penguin Random House competes with dozens of publishers to acquire content and Simon & Schuster is one of them; that Penguin Random House and other publishers, including Simon & Schuster, are invited by agents to bid on potential book concepts; and that competition among all publishers, including Penguin Random House and Simon & Schuster, yields more favorable contract terms for potential authors.

9.      Defendants deny the allegations of paragraph 9.  Defendants further respond that Plaintiff's selective quotations in the paragraph are taken out of context and refer the Court to the documents themselves.

10.     Defendants deny the allegations of paragraph 10, except Defendants admit that some employees have publicly suggested that the merger is necessary to compete with Amazon because Amazon is the largest company facilitating self-publishing, is increasingly aggressive in contract negotiations, and has leverage over the industry due to its strength as a bookseller. Defendants further respond that Plaintiff's selective quotations in the paragraph are taken out of context and refer the Court to the documents themselves.

11.     Defendants deny the allegations of paragraph 11.  Defendants further respond that Plaintiff's selective quotations in the paragraph are taken out of context and refer the Court to the documents themselves.

12.     Defendants deny the allegations of paragraph 12.

13.     Defendants deny that the proposed transaction would lessen competition in any relevant market or otherwise violate the Clayton Act and that Plaintiff is entitled to any relief. Defendants admit that Plaintiff has filed its complaint under Section 15 of the Clayton Act and seeks an injunction under Section 7 of the Clayton Act.

14.     Defendants deny the allegations of paragraph 14, except Defendants admit that Penguin Random House and Simon & Schuster are engaged in interstate commerce and that they acquire some publishing rights from authors.

15.     Defendants deny the allegations of paragraph 15, except Defendants admit that this Court has personal jurisdiction over Defendants because they have consented to personal jurisdiction in this Court for this litigation and that Penguin Random House and Simon & Schuster transact business within the District of Columbia.

16.     Defendants admit the allegations of paragraph 16.

17.     Defendants admit the allegations of paragraph 17.

18.     Penguin Random House admits the allegations of paragraph 18.  ViacomCBS and Simon & Schuster lack knowledge or information sufficient to admit or deny the allegations of paragraph 18.

19.     Defendants admit the allegations of paragraph 19.

20.     Defendants admit the allegations of paragraph 20, except that Defendants lack knowledge or information sufficient to admit or deny the allegation that Simon & Schuster is the

fourth largest U.S. trade book publisher because the Complaint does not state what metric is being used as the basis for that allegation.

21.     Defendants admit the allegations of paragraph 21.

22.     Defendants deny the allegations of paragraph 22, except Defendants admit that the term "general trade books" is widely used in the publishing industry and generally refers to books that are published for wide public consumption, including both fiction and some non-fiction, but does not include academic texts or professional manuals, and that bringing a book to market in the United States requires the cooperation of authors and others.

23.     Defendants deny the allegations of paragraph 23, except Defendants admit that book publishing is a collaborative effort between authors and publishers; authors write draft manuscripts or proposals for books and rely on agents to represent them in obtaining the best publisher for the potential book and negotiate on their behalf; when publishers obtain the right to publish a book, agents determine whether that right includes different formats and limited geographic scope; publishers compete for publishing rights on several different dimensions, including the amount of the advance payments, the editor's vision for the book, and the connection the author feels to the editor; publishers typically pay authors royalties and advances on expected royalties and edit the book, market it, and arrange for printing and distribution.

24.     Defendants deny the allegations of paragraph 24, except Defendants admit that authors can be compensated in the form of royalties, a portion of which are often paid in advance; if the author's compensation is based on royalties and the author's book "earns out" by earning royalties in excess of the advance, the author receives additional payments from further sales at the agreed-upon royalty rate; and some authors do not earn out their advance on a particular book.

25.     Defendants deny the allegations of paragraph 25, except Defendants admit that authors' agents generally seek to maximize the amount paid to their clients; agents typically submit book proposals to several publishers; agents generally seek bids for these book proposals; and multiple publishers often compete to win rights to the potential book.

26.     Defendants deny the allegations in the third sentence of paragraph 26, except admit that publishers often set the cover or "list price" of physical books and sell physical books to retailers, wholesalers, and distributors at a discount from that price.  Defendants admit the other allegations of paragraph 26.

27.     Defendants deny the allegations of paragraph 27.  Defendants further respond that Plaintiff's selective quotation in the paragraph is taken out of context and refer the Court to the document itself.

28.     Defendants lack knowledge or information sufficient to admit or deny the allegations in paragraph 28, except Defendants admit that authors' agents attempt to solicit the most attractive bids for their clients; authors generally choose to work with a publisher they believe will bring them the best chance of success; and Penguin Random House has the largest number of imprints and publishes the most new books in the United States each year. Defendants further respond that Plaintiff's selective quotation in the paragraph is taken out of context and refer the Court to the document itself.

29.     Defendants deny that publishers outside of the "Big Five" lack the ability to compete for publishing rights, including for rights to books that are expected to sell a lot of copies, and the other allegations of paragraph 29.

30.     Defendants deny the allegations of paragraph 30.  Defendants further respond that Plaintiff's selective quotation in the paragraph is taken out of context and refer the Court to the document itself.

31.     Defendants deny that Plaintiff has identified a relevant market and that competition will be harmed in the appropriate relevant market.  Defendants admit that defining a relevant market correctly is necessary to assess whether there is harm to competition from a merger.

32.     Defendants deny the allegations of paragraph 32.

33.     Defendants deny the allegations of paragraph 33, except Defendants admit that there is a differentiated market; advances are individually negotiated; and each individual publisher makes its own decision about what to bid in seeking to acquire the rights for any given book and often considers the expected level of overall interest in the title among publishers.

34.     Defendants deny the allegations of paragraph 34.  Defendants further respond that Plaintiff's selective quotation in the paragraph is taken out of context and refer the Court to the document itself.

35.     Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 35, except Defendants admit that some publishers hire authors to draft books originally conceived by the publisher and that such authors are sometimes compensated differently than other authors.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37, except Defendants admit that senior executives of Penguin Random House and Simon & Schuster review some proposed advances and that such review might include review of a P&L projection, and that P&L

projections typically take into account expected sales, which may be based upon the sales history of comparable books or other works by the same author, production and marketing costs, and the book's expected list price.

38.     Defendants deny the allegations of paragraph 38.

39.     Defendants deny the allegations of paragraph 39, except Defendants admit that self-published and work-for-hire authors typically do not receive advances.

40.     Defendants deny the allegations of paragraph 40, except Defendants admit that Penguin Random House and Simon & Schuster compete with each other and with many other publishers to acquire rights to publish books in the United States and that authors who sell U.S. publishing rights can reside anywhere in the world.

41.     Defendants deny the allegations of paragraph 41.

42.     Defendants deny the allegations of paragraph 42.

43.     Defendants deny the allegations of paragraph 43.  Defendants further respond that Plaintiff's selective quotation is taken out of context and refer the Court to the document itself.

44.     Defendants deny the allegations in the first sentence of paragraph 44.  Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of paragraph 44, except admit that publishers, including Penguin Random House and Simon & Schuster, made bids for the memoir of a Grammy-award winning singer in 2019 and that the author ultimately accepted a bid from Simon & Schuster.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable and Plaintiff's selective quotation is taken out of context.  Defendants refer the Court to the bidding correspondence itself.

45.     Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 45, except admit that publishers, including Penguin Random House and

13

Simon & Schuster, made bids on a book proposal based on a Broadway play in mid-2019 and that the author ultimately accepted a bid from Penguin Random House.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable and Plaintiff's selective quotation is taken out of context.  Defendants refer the Court to the bidding correspondence itself.

46.    Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 46, except admit that publishers, including Penguin Random House and Simon & Schuster, made bids for a book on the Mueller investigation in mid-2019 and that the author ultimately accepted a bid from Penguin Random House.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable and Plaintiff's selective quotations are taken out of context.  Defendants refer the Court to the bidding correspondence itself.

47.    Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 47, except admit that publishers, including Penguin Random House and Simon & Schuster, made bids for a book on gender inequality in 2020 and that the author ultimately accepted a bid from Penguin Random House.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable and Plaintiff's selective quotations are taken out of context.  Defendants refer the Court to the bidding correspondence itself.

48.    Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 48.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable.

49.     Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 49, except admit that publishers, including Penguin Random House and Simon & Schuster, made bids for a book on the opioid epidemic in early 2020 and that the author ultimately accepted a bid from Penguin Random House.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable.

50.     Defendants deny the allegations in the first, second, and last sentences of paragraph 50, except Defendants admit that smaller publishers are competitive alternatives for *all* authors.  Defendants lack knowledge or information sufficient to admit or deny the allegations in the third and fourth sentences of paragraph 50.  Defendants further respond that Plaintiff's reliance on this anecdotal evidence is misleading and unreliable.

51.     Defendants deny the allegations of paragraph 51.

52.     Defendants deny the allegations of paragraph 52.

53.     Defendants deny the allegations of paragraph 53, except Defendants admit the allegations included in the last two sentences of paragraph 53.  Defendants further respond that Random House (before its merger with Penguin) was not alleged to have conspired with Apple.

54.     Defendants deny the allegations of paragraph 54.

55.     Defendants deny the allegations of paragraph 55, except Defendants admit that Penguin Random House and Simon & Schuster provide distribution services to some third-party publishers.

56.     Defendants deny the allegations of paragraph 56, except Defendants admit that the proposed acquisition would generate synergies.  Defendants further respond that Plaintiff's selective quotations are taken out of context and refer the Court to the documents and testimony themselves.

57.     Defendants deny the allegations of paragraph 57.  Defendants further respond that Plaintiff's selective quotations are taken out of context and refer the Court to the documents and testimony themselves.

58.     Defendants deny the allegations of paragraph 58, except Defendants admit that Penguin Random House has announced that after the merger it will allow Penguin Random House imprints and legacy Simon & Schuster imprints to continue bidding against one another up to a certain amount.

59.     Defendants deny the allegations of paragraph 59.

60.     Defendants deny the allegations of paragraph 60.

61.     Defendants deny that Plaintiff is entitled to any of the relief requested and request that they be awarded the costs incurred in defending this action, as well as any and all other relief the Court may deem just and proper.

## DEFENSES

Defendants assert the following defenses, without assuming the burden of proof on such defenses that would otherwise rest with Plaintiff:

1. Without prejudice to Defendants' response to Paragraph 56, the overwhelming efficiencies that will result from the transaction will benefit authors and consumers, such that the transaction is in the public interest.

2. Plaintiff's claim reflects improper selective enforcement of the antitrust laws.

Dated: December 13, 2021

Respectfully submitted,

By: */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli (appearing *pro hac vice*)
M. Randall Oppenheimer (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
roppenheimer@omm.com

Andrew J. Frackman (appearing *pro hac vice*)
Abby F. Rudzin (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, NY 10026
Telephone: (212) 326-2000
afrackman@omm.com
arudzin@omm.com

Courtney Dyer (D.C. Bar No. 490805)
Julia Schiller (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
cdyer@omm.com
jschiller@omm.com

Deborah L. Feinstein (D.C. Bar No. 412109)
Jason Ewart (D.C. Bar No. 484126)
**ARNOLD & PORTER**
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
debbie.feinstein@arnoldporter.com
jason.ewart@arnoldporter.com

*Attorneys for Defendants Bertelsmann SE & Co.
KGaA and Penguin Random House LLC*

17

By:  */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing *pro hac vice*)
Jessica K. Delbaum (appearing *pro hac vice*)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (DC Bar No. 500031)
Michael Mitchell (DC Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (DC Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants ViacomCBS Inc. and
Simon & Schuster, Inc.*