UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,            .
                                     .
          Plaintiff,                 .    CA No. 21-2886 (FYP)
                                     .
     v.                              .
                                     .
BERTELSMANN SE & CO. KGAA,           .    Washington, D.C.
et al.,                              .    Thursday, February 10, 2022
                                     .    2:00 p.m.
          Defendants.                .
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE FLORENCE Y. PAN
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:                JOHN R. READ, ESQ.
                              U.S. Department of Justice
                              Antitrust Division
                              450 Fifth Street NW
                              Washington, DC 20530
                              (202) 307-0468


For Defendants Bertelsmann,   DANIEL M. PETROCELLI, ESQ.
Penguin Random House:         O'Melveny & Myers LLP
                              1999 Avenue of the Stars
                              8th Floor
                              Los Angeles, CA 90067
                              (310) 553-6700


For Defendants Viacom,        STEPHEN FISHBEIN, ESQ.
Simon & Schuster:             Shearman & Sterling LLP
                              599 Lexington Avenue
                              New York, NY 10022
                              (212) 848-4000


Court Reporter:               BRYAN A. WAYNE, RPR, CRR
                              U.S. Courthouse, Room 4704-A
                              333 Constitution Avenue NW
                              Washington, DC 20001
                              (202) 354-3186

1          P R O C E E D I N G S

2              (Via Videoconference)

3          THE DEPUTY CLERK:  This is civil action 21-2886,

4    the United States of America versus Bertelsmann SE & Co.,

5    et al.  Counsel, please identify yourselves for the record,

6    beginning with the plaintiffs.

7          MR. READ:  Your Honor, John Read representing the

8    United States, and with me is my colleague, Jessica Leal.

9          THE COURT:  Good afternoon.

10         MR. PETROCELLI:  Your Honor, Daniel Petrocelli,

11   along with my colleagues Abby Rudzin and Andrew Frackman,

12   and together with the Penguin Random House Chief Legal

13   Officer Anke Steinecke, we represent Penguin Random House

14   and Bertelsmann.

15         THE COURT:  Good afternoon.

16         MR. FISHBEIN:  Your Honor, this is Stephen Fishbein,

17   Shearman & Sterling, and with my colleagues Ryan Shores,

18   Jessica Delbaum, and Mike Mitchell, we represent Viacom and

19   Simon & Schuster.

20         THE COURT:  Good afternoon.

21     So we're here for a status hearing, and I have no agenda

22   for this hearing; I just want to get a status update from

23   you all.  So who would like to give me an update?

24         MR. READ:  If I may begin, Your Honor.  Thank you for

25   holding this.  I would like to tell you about two agreements

1    that we've recently reached and then give you a heads-up on

2    the status.  We're grateful you've held this.  In the last

3    few weeks, we've made a lot of progress on discovery disputes

4    as we've prepared for this and tried to resolve things.

5        The two agreements are -- you had asked in the last hearing

6    about posttrial submissions?

7            THE COURT:  Yes.

8            MR. READ:  We've agreed that we're going to propose

9    to you that posttrial findings of fact and conclusions of law

10   and briefs be filed simultaneously three weeks after trial,

11   and then two weeks after that, a reply brief will be filed.

12   I don't know if that works for Your Honor, but that's what

13   we had agreed on.

14           THE COURT:  I think that's fine and it sounds

15   efficient.  Instead of three rounds of briefing, we have

16   two.  I think that works.

17           MR. READ:  The other agreement is, defendants have

18   agreed to drop one of their defenses, and so we're working

19   on a stipulation that we'll file regarding that, which we

20   should finalize in the next short while.

21           THE COURT:  All right.  Thank you.

22           MR. READ:  On the status, the United States' view

23   is that we're unfortunately a little behind.  Both sides

24   have been working hard, but we have 60 depositions in the

25   next few months, that if you count both sides together, it's

1    probably north of 60 that need to be done, and that will be

2    a tall order.

3        I want to give you a heads-up about a couple of future

4    issues that may come your way, nothing we're going to ask for

5    today that's a big decision, but defense have already missed

6    some dates in the case-management order, and there's been

7    some, frankly, corner-cutting.  Let me give you two examples.

8        The defendants listed six witnesses on their preliminary

9    witness list where they didn't identify an individual, just

10   an organization that individual works for.  That handicaps

11   our ability to seek documents from the individual that we're

12   going to need to depose.  We've already lost a week on that,

13   and the schedule's tight, so we've got to work through that.

14       The other example is we had a mutual exchange of experts

15   and preliminary witnesses, and after that exchange, a literary

16   agent was named as an expert without any consent or notice;

17   and we just want to lay down a marker that we're worried about

18   the gamesmanship of seeing our witnesses and our experts and

19   then the ability to adjust based on that.

20       The final thing that gives you a sense of a heads-up and

21   where we're going is, we've been working on discovery, and we

22   have some outstanding discovery from December where we asked

23   for and a lot's been produced, but there's still some to come.

24   We're being told that if we take some depositions now but the

25   documents for those custodians roll in later, we've only got

1    one shot.  We understand that position.  It puts us in a

2    difficult position.  We're going to move ahead with depositions,

3    because we've got to start, and I think everybody understands

4    we've got to start.

5        So that's where we're going.  We're not asking for anything

6    today.  We just have a lot of work, both sides, to do to get

7    ready.  It's going to require effort and good faith to meet

8    these ambitious deadlines that we picked to accommodate the

9    defendants' merger agreement.

10       I guess I do have one question:  If we don't resolve in

11   meet-and-confers soon some of the issues, how would you like

12   us to raise issues with you?

13       THE COURT:  So my normal process in civil cases is

14   outlined in my standing order, and so the parties should send

15   an email to my chambers that outlines what the issue is and

16   what the parties' positions are, and then I will schedule

17   either a video or telephone conference to address it.

18       If the parties want to do something different in this case,

19   because I understand that this case is probably unusually

20   complex, I'm open to hearing suggestions.  But that's the

21   way I normally do things on a civil case on the calendar.

22       MR. READ:  We have not talked among ourselves about

23   whether there's a different way to do it, but I am hopeful

24   that we can figure out a way that will be expeditious, given

25   we've got two months left of fact discovery, and then we all

1    have the record we have.

2    THE COURT:  Well, my process is designed to be

3    streamlined.  Instead of having to file a motion, you just

4    send me an email, and all the parties should be on that email

5    so that there's no ex parte concerns.  But just identify the

6    issue, tell me your positions in an email, and then I will

7    promptly set a teleconference or a video hearing.

8    MR. READ:  Okay.  That's how we'll do it, Your Honor,

9    and we appreciate that.

10    I guess we do have one ask, is I think just holding this

11    status conference, even if we don't accomplish anything

12    substantively, I think helped move things along.  If Your

13    Honor would be willing to, in four weeks, hold another one,

14    that would be a week in advance of when the final witness

15    lists are exchanged and about five weeks before the close

16    of fact discovery.  That might help us resolve, hopefully,

17    everything and keep us on schedule.  That would be our

18    request.

19    THE COURT:  That's fine with me.

20    Does anybody else want to be heard?

21    MR. PETROCELLI:  Yes, Your Honor.  Mr. Petrocelli.

22    I'm surprised, and frankly disappointed, that in this early

23    stage of this case the government feels the need to make

24    disparaging comments about cutting corners and gamesmanship.

25    It's not our practice to make those kinds of comments.  You

1    won't hear those from us, and I would hope that we don't

2    hear anything further along those lines from the government.

3         Your Honor, I think as you know, this process is extremely

4    asymmetrical in that once the merger agreement was announced

5    in November 2020, the government had a full year where it

6    conducted extensive investigative discovery, subpoenaing

7    documents, taking depositions.  We the merging parties have

8    no visibility role into any of that, except to the extent

9    they seek documents and depositions from our clients.  So

10   they have an enormous head start.

11        So they filed this lawsuit in November.  In a couple of

12   months, Your Honor, it took us -- they didn't want to produce

13   the investigative file immediately.  They wanted to wait until

14   the CMO was entered or thereabouts, and so then we finally got

15   our hands on the investigative file, which consists of all of

16   the depositions and documents that they had assembled over

17   the course of the prior year.

18        And then there's been just a mountain of discovery requests

19   that both sides are serving on each other, and I think the

20   defendants collectively have produced millions of pages of

21   documents in just a couple of months.  I mean, it's quite

22   extraordinary, and I have every confidence that we're going

23   to be able to abide by the schedule.  We, more than anyone,

24   want to abide by the schedule, as Your Honor understands.

25        With respect to the two issues that Mr. Read felt compelled

1   to point out -- and as a matter of process, Your Honor,

2   I have no issue, obviously, with the government disagreeing

3   with something that we're doing, but I would suggest that we

4   follow Your Honor's local rules.  You have Rule 26.2 which

5   requires a meet-and-confer and then a joint letter, and then

6   we get you on the phone and we can resolve these things.

7        The government has not seen fit to initiate any of that,

8   but rather to mention these things on the call.  And so as a

9   matter of order, I do believe we should follow Your Honor's

10  rules, and I'm happy to work with opposing counsel if they

11  want to modify those rules in some way.  But with respect to

12  these particular circumstances, although I hate to be put on

13  the defensive, and I typically avoid being put on the

14  defensive, let me just briefly respond.

15       On the 4th of February, which was last Friday, that was

16  the date that we were exchanging these preliminary witness

17  lists, which include the experts.

18       We have two experts, Your  Honor, but we were only

19  able to identify the one as of last Friday because of very

20  unfortunate family circumstances that prevented that expert

21  from confirming her availability last week; and the very next

22  business day, which is Monday, she was able to do so, and we

23  promptly filed her name in a supplemental list and explained

24  the circumstances to Mr. Read.  So he's fully aware of what

25  transpired, and there's obviously no harm, no foul, and no

1    basis whatsoever to have brought this up.

2        As Your Honor knows, the expert discovery period, including

3    the disclosure of the reports and the deposition of experts,

4    extends through -- I think it's June -- according to your

5    order, June 21st is the last day.  So there's zero prejudice

6    whatsoever as a result of that situation.

7        Now let me talk about the second situation very briefly.

8    Each side, under the CMO, identified 35 witnesses.  Fact

9    witnesses.  For six publishers -- not all the publishers we

10   listed.  For three of the publishers, we were able to identify

11   the specific individuals who we want to put down as our

12   preliminary fact witnesses.  For six of them, we put down

13   the names of the publishers - the companies, that is - and

14   indicated that we would be taking the deposition of a

15   representative to be designated.

16       Unlike the government, who have the ability to subpoena -

17   and did subpoena - publishers, and had visibility into who

18   knew what among the various publishers, we did not until the

19   lawsuit was filed.  We have served subpoenas on all of the

20   publishers, and we're in the process of getting their

21   documents from those subpoenas.  Many of them have not yet

22   responded.

23       As you can imagine, these are competitors, Your Honor.

24   They're not that anxious to turn over their materials, and

25   we're in the midst of a number of meet-and-confer sessions

1    with these various publishers.  But once we get their

2    documents, then we'll be able to identify the specific

3    witnesses at those companies who have the most knowledge for

4    our case; and we've explained that, again, to the government.

5        There's no harm, no foul, or no nothing, because Your

6    Honor's CMO provides in March the designation of a final

7    fact witness.  And certainly by then, if not sooner, we will

8    identify those individuals, and then they will have at least

9    another month or so to take their depositions.  We will

10    endeavor to identify the specific people at those six

11    publishers as soon as we can.  We're simply waiting for the

12    documents, and we'll go through the documents.

13        Now, if the government, who's not asking the Court to

14    do anything about any of this, wants to litigate these issues,

15    I'm happy to meet and confer with them, and we'll address them

16    more formally to the Court.  But that's the short answer.

17        This is a very ambitious schedule, but it's typical in

18    these merger cases, Your Honor, and the one I recently did was

19    a schedule that was significantly heavier and more expedited

20    than this one.  So we all have lots of people working on this

21    around the clock, and we're all determined to make it work.

22        THE COURT:  All right.  Thank you, Mr. Petrocelli.

23        So I will say that I'm going to be presuming good faith

24    from all the parties in their dealings with each other, and

25    I do expect you to meet and confer and try to resolve issues

1    without needing to bring them to my attention.  I do also,

2    though, appreciate getting some status as to what's happening

3    in the case, because unless you tell me, I don't know anything

4    that's going on.  And so I do also appreciate getting some

5    information about where things stand.

6        With that in mind, I hope the parties will work together to

7    accomplish what they need to accomplish to meet this schedule

8    that we've set.  And I'm available to give rulings if they're

9    needed, but until you need something from the Court, you don't

10   need to bring issues such as what were brought today to my

11   attention.

12       Okay.  Does anybody else want to be heard on any issue in

13   this matter?  I just realized recently that there's something

14   I probably should disclose to the parties, and probably should

15   have at my last hearing, and it had not occurred to me because

16   it was so long ago.  But I did just want to let you all know

17   that my father worked at Random House.

18       He worked at Random House for 10 years, in the late '60s

19   to late '70s; and this came up at a family gathering, and it

20   just sparked in my mind that I had forgotten that he had done

21   that because it was so long ago.  So if anybody wants to be

22   heard on that, I'll hear you, but I just wanted to put that

23   on the record.

24           MR. PETROCELLI:  Your Honor, we have no issue with

25   that, but I neglected to bring up another subject.

1              THE COURT:  Okay.

2              MR. PETROCELLI:  And this has to do with clarification

3      of a request that you made at the last status conference.

4              THE COURT:  Yes.

5              MR. PETROCELLI:  And you indicated that you would

6      like to receive copies of the expert reports and an executive

7      summary; and the date you set for that is July 8, 2022, which

8      is after all the reports will have been prepared and exchanged,

9      and it also coincides with the date on which motions in limine

10     are due.

11         We have no problem, of course, providing what Your Honor

12     requested, but we do wish to make clear that we do not want

13     those expert reports to be part of the trial record.  In our

14     view, they're probably not admissible.  They usually contain

15     all kinds of hearsay.

16         For example, in the last trial they were not admitted into

17     evidence, and it was the experts' testimony that was admitted.

18     And so we may well be making motions in limine to keep out the

19     expert reports from the actual trial record.

20         Now, I understand you're the trier of fact, but there's

21     a difference between what Your Honor might want to read for

22     background and what is actually part of the record.  And so

23     I would just request that that submission not be made part

24     of the record until Your Honor has had a chance to rule on

25     any motions in limine.

1        THE COURT:  Do you mean part of the record or

2    admitted as evidence?

3        MR. PETROCELLI:  I mean admitted as evidence,

4    Your Honor, in the trial record.

5        THE COURT:  Right.

6      So, Mr. Read, do you have any objection to that?

7        MR. READ:  Our view is this a great idea for Your

8    Honor to read these reports to get up to speed in advance

9    of the trial.  I think it's premature to decide this issue.

10   We haven't exchanged exhibit lists yet, and we'll sort

11   that out with them; and if there's a motion to be made,

12   maybe it will be stipulated one way or the other, or maybe

13   we'll make a motion.  I think it's a heads-up we're giving.

14       MR. PETROCELLI:  The issue is, Your Honor, I just

15   want a clarification that when we send them to you on the

16   8th of July, Your Honor's not going to be receiving those

17   into evidence.  That's all.

18       THE COURT:  Yes.  Absolutely.  I think presumptively

19   they're not admitted as evidence.  I just wanted to read

20   them for background, and if anybody wants to move them into

21   evidence, we'll deal with that at a later time.

22       MR. PETROCELLI:  Thank you, Your Honor.

23       MR. READ:  We agree with that.  Thank you, Your Honor.

24       THE COURT:  All right.  Is there anything else anybody

25   wants to raise, or do we just want to pick a date for another

1      status conference in about a month?

2              MR. READ:  Yes.  I think that's the thing.  We will,

3      Your Honor, I suspect have some testimony that comes in by

4      deposition, and I don't know what Your Honor's preference is,

5      how you'd like to receive that, whether written form, video,

6      read at trial.

7              THE COURT:  I'm sorry.  You mean at trial?

8              MR. READ:  At trial, yeah.  Way down the road at trial.

9              MR. PETROCELLI:  We might have objections to that,

10     Your Honor, because the witnesses are typically available

11     live, but I'm happy to meet and confer with Mr. Read about

12     that.

13             THE COURT:  All right.  I would prefer that you meet

14     and confer.  So a month from now, I'm not available that week,

15     but the following week, how about March 17?  Saint Patrick's

16     Day?  Two o'clock.

17             MR. PETROCELLI:  I will wear a green tie, Your Honor.

18             THE COURT:  Excellent.  All right.  So next status

19     hearing, March 17th at 2 p.m.  Same place, video.  All right.

20     Thank you very much for the updates, and I appreciate you all

21     working very hard.

22         All right.  Thank you.  Parties are excused.

23         (Proceedings adjourned at 2:23 p.m.)

24

25

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter. *


/s/ Bryan A. Wayne
Bryan A. Wayne


* PLEASE NOTE:

This hearing was taken via videoconference in compliance with U.S. District Court standing order(s) during the COVID-19 pandemic.  Transcript accuracy may be affected by the use of electronic technology, including but not limited to sound distortion or audiovisual interference.