```
               UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
_____

United States of America,       ) Civil Action
                                ) No. 1:21-cv-02886-FYP
            Plaintiff,          )
                                ) Status Hearing
vs.                             ) (via Zoom)
                                )
Bertelsmann SE & Co. KGaA,      )
et al.                          ) Washington, D.C.
                                ) March 17, 2022
            Defendants.         ) Time:  2:00 p.m.
_____

       Transcript of Status Hearing (via Zoom)
                      Held Before
      The Honorable Florence Y. Pan (via Zoom)
              United States District Judge


                 A P P E A R A N C E S

For the Plaintiff:       John R. Read
(via Zoom)               Sarah Heideman Licht
                         U.S. DEPARTMENT OF JUSTICE
                         Antitrust Division
                         450 Fifth Street, Northwest
                         Washington, D.C. 20530

For the Defendants Bertelsmann SE & Co. KGaA and Penguin Random
House, LLC:              Daniel M. Petrocelli
(via Zoom)               O'MELVENY & MYERS LLP
                         1999 Avenue of the Stars, 8th Floor
                         Los Angeles, California 90067

                         Andrew J. Frackman
                         Abby Rudzin
                         O'MELVENY & MYERS LLP
                         7 Times Square, Times Square Tower
                         New York, New York 10036

For the Defendant ViacomCBS, Inc. and Simon & Schuster, Inc.:
(via Zoom)               Stephen Fishbein
                         Jessica Delbaum
                         SHEARMAN & STERLING, LLP
                         599 Lexington Avenue
                         New York, New York 10022
```

```
Stenographic Official Court Reporter:
(via Zoom)                Nancy J. Meyer
                          Registered Diplomate Reporter
                          Certified Realtime Reporter
                          333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
                          202-354-3118
```

P R O C E E D I N G S

(REPORTER'S NOTE: This hearing was held during the COVID-19 pandemic restrictions and is subject to the limitations of technology associated with the use of technology, including but not limited to telephone and video signal interference, static, signal interruptions, and other restrictions and limitations associated with remote court reporting via telephone, speakerphone, and/or videoconferencing.)

THE COURTROOM DEPUTY: This is Civil Action 21-2886, the United States of America v. Bertelsmann SE & Co., et al.

Counsel, please identify yourselves for the record, beginning with the government.

MR. READ: Good afternoon, Your Honor. John Read representing the United States, and with me is my colleague Sarah Licht.

MS. LICHT: Good --

THE COURT: Good afternoon, Mr. Read. Good afternoon, Ms. Licht.

MR. PETROCELLI: Good afternoon, Your Honor. Daniel Petrocelli with my colleagues Abby Rudzin, Andrew Frackman, and Anke Steinecke for defendants Bertelsmann and Penguin Random House.

THE COURT: All right. Good afternoon.

MR. FISHBEIN: And Stephen Fishbein with my colleague Jessica Delbaum from Shearman & Sterling for ViacomCBS and Simon & Schuster.

THE COURT: Good afternoon.

```
 1              All right.  So we're here for another status hearing in
 2    this case.  Does anybody want to give me an update on where
 3    things stand.
 4              MR. READ:  If I can, Your Honor.  I have a few
 5    sentences on that, and I want to tell you about a couple of
 6    agreements we've reached --
 7              THE COURT:  All right.
 8              MR. READ:  -- that involve you; and then one issue
 9    that we hope to brief shortly for you, to give you a heads-up
10    on that.
11         I think the status would be we've all been very busy.
12    We've taken three depositions since we talked, and we probably
13    have 30 -- or maybe a little more -- depositions that are
14    likely to be taken between now and the close of fact discovery.
15    So everybody is working hard.  A lot of work remains.
16         I don't know if Mr. Petrocelli wants to amplify on that,
17    but that's kind of the high level.
18              THE COURT:  But you're expecting to close discovery
19    according to schedule?
20              MR. READ:  Yes.  Except I'm about to tell you about
21    two agreements, and the one does affect that schedule.
22              THE COURT:  All right.
23              MR. READ:  Okay.  So we've agreed to extend the final
24    witness list that's to be exchanged tomorrow by two weeks, and
25    when we negotiated the case management order that set that
```

1   date, we -- you know, we had all the other dates lined up right
2   behind it.  So we're going to also file a stipulation that
3   would extend by two weeks the fact discovery deadline --
4           THE COURT:  Okay.
5           MR. READ:  -- and then the expert discovery
6   deadlines, in particular the close of expert discovery and the
7   exchange of expert reports.
8           All other dates we're going to maintain.  So the trial
9   date, your pretrial hearing, they'll all be maintained.
10  That's -- that's the plan anyway.
11          THE COURT:  All right.  So to be specific then, the
12  parties will exchange final trial fact witness lists in
13  two weeks, which is April 1st?
14          MR. READ:  Yes.
15          THE COURT:  And that will also be the day that you'll
16  exchange designations of all experts?
17          MR. READ:  Correct.
18          THE COURT:  Okay.  And the close of fact discovery
19  will be two weeks later, which is?
20          MR. READ:  Friday, April 29.
21          THE COURT:  April 29th.  Okay.
22          MR. READ:  And then, just so it's clear, the initial
23  expert reports will be Wednesday, May 4th.
24          THE COURT:  Okay.
25          MR. READ:  The rebuttal expert reports will be

1  Friday, June 3rd.  The reply expert reports will be Thursday,
2  June 23rd.  And then all of expert discovery, meaning like the
3  depositions, will need to be accomplished by Tuesday, July 5th.
4              THE COURT:  Is that on your schedule, the exchange of
5  exhibit lists and opening deposition designations?  That's
6  July 5th?
7              MR. READ:  No.  The July 5th will be the close of
8  expert discovery.
9              THE COURT:  Okay.
10             MR. READ:  The exhibit list exchange and the
11 deposition designations will stay June 15th.  So we'll do those
12 in advance of all the expert depositions being finalized.
13             THE COURT:  Okay.  If that's what all the parties
14 want, that's fine with me.  Could you just submit something in
15 writing so that the record will be clean?  I'll just --
16             MR. READ:  Yeah, I -- I think defendants will do that
17 today.
18             THE COURT:  Okay.
19             MR. PETROCELLI:  That is correct, Your Honor.  Those
20 dates are correct.
21             THE COURT:  All right.  Thank you, Mr. Petrocelli.
22          All right.  Anything else, Mr. Read?
23             MR. READ:  Yeah.  The second agreement I wanted to
24 alert you to involves confidentiality at trial.  Because this
25 is a case involving how competition affects authors and author

1    compensation, we've asked for materials from third parties
2    about how much authors are paid.  And there's some concern --
3    and they're protected during the discovery process with the
4    protective order Your Honor already entered.
5              THE COURT:  Yes.
6              MR. READ:  But there's some concern about how that
7    will play out at trial.  And so we have agreed with defendants
8    that we will propose to you at the appropriate point in time
9    a -- a way to handle that.  And the way is we will delink
10   an individual author's name with a specific amount paid for --
11   for a work, like when a publisher buys a right to publish a
12   work.
13             So, for example, it might be that we name a specific
14   author that there's bidding over or negotiation over and talk
15   about the number being in the six figures.  Or it might be that
16   there's specific information about -- maybe bids of 250,000,
17   275,000, 300,000, but then we would do anonymize the author and
18   maybe talk about a romance writer or a historian.
19             So we think that's the way we can present to you the
20   information you're going to need while preserving the -- the,
21   you know, privacy of some of these court filings.
22             THE COURT:  That's fine with me.  If all parties
23   agree, that's fine with me.  Do you have any objection to that,
24   Mr. Petrocelli?
25             MR. PETROCELLI:  No.  We have actually worked out a

1    written stipulation to that effect.
2             THE COURT:  Okay.
3             MR. PETROCELLI:  So everybody is on board.
4             MR. READ:  Yeah, it will come in -- in -- the
5    protective order requires that we do a global proposal to you
6    of how we treat all confidential information at trial, and so
7    at least this piece we've got worked out.
8             THE COURT:  Okay.  That sounds fine.
9             MR. READ:  And then the thing that we're planning or
10   thinking we're going to file a brief with you involves how you
11   will treat at trial documents that are otherwise admissible,
12   whether you will allow those to be submitted or whether you
13   will require a -- a witness to say, yes, I signed that contract
14   or I wrote that email.  So that's an issue that's important, I
15   think, for both sides to figure out in advance of our exhibit
16   list, in advance of -- as we prepare what witnesses to put on
17   our witness list and -- and to call at trial to get some
18   guidance on that.
19        We haven't been able to agree on a proposal.  And so the
20   thought is we would file something next Friday if we haven't
21   fully worked out the schedule.  So if Mr. Petrocelli has a
22   different view, they can let us know around Wednesday of the
23   week after that, which means, like, ten days after we'd get an
24   opposition from defendants, and then something like the Monday
25   after that we'd have a reply brief from us.

1        THE COURT:  Okay.

2        MR. PETROCELLI:  Yes, Your Honor.

3     I'm sorry, Mr. Read.  Have you finished?

4        MR. READ:  Yeah, I'm done.

5        MR. PETROCELLI:  Yeah.  So, Your Honor, this is a --

6  a subject of serious disagreement between the parties.  And

7  without casting any aspersions, the brief characterization by

8  Mr. Read is not actually the issue involved.  The issue

9  involved is -- has to do with the admissibility of exhibits,

10 which is a subject that can only be addressed once we have each

11 other's exhibit list and can work through them, at which time

12 I'm sure we'll be able to work out agreements regarding

13 stipulations, disabilities, and the like.

14       We obviously can't stop the -- the government from

15 filing a motion at this point, but just as a warning to

16 Your Honor, we believe this motion is extremely premature, asks

17 for an advisory opinion, and is not the type of motion that the

18 Court can decide in advance of actually seeing and the parties

19 seeing the specific exhibits that are the subject of -- of

20 these issues.

21       As Your Honor knows from the schedule, the exhibit

22 exchange does not occur until the 15th of June.  Parties were

23 well aware of that when they entered into the CMO providing for

24 the -- for the overall schedule, including identification of

25 witnesses early on, taking of depositions, and the like.  So

1  part of our opposition certainly will be that it is premature
2  to hear this now, but, you know, we'll also address some of the
3  arguments on the merits.
4  　　　　　As far as the briefing schedule, Your Honor, there has
5  been some meeting and conferring on this -- on this motion.  I
6  believe the parties should continue to meet and confer before
7  it is filed, but as things currently stand, without really
8  knowing what kind of motion they're going to file and what the
9  specifics are, we would ask for the entire two-week period
10 under Local Rule 7(b) to respond.  And -- and then the
11 government can have its -- its time under the local rules as
12 well.  But I don't want to -- I don't want to agree to a
13 shortened time without really having a motion in hand and
14 knowing what I'm responding to.
15 　　　　　THE COURT:  Thank you.
16 　　　　Did you want to be heard, Mr. Fishbein?
17 　　　　　MR. FISHBEIN:  We are aligned with -- with
18 Mr. Petrocelli on this, and we would contemplate doing a joint
19 opposition, in any event, so.
20 　　　　　THE COURT:  Okay.  All right.  Thank you.
21 　　　　So, Mr. Read, can you just give me a better sense of
22 what the issue is, because maybe we can save a round of
23 briefing if we can just talk it through right now.
24 　　　　　MR. READ:  Yes, that would be ideal.
25 　　　　We've -- we've had meet-and-confers on these.

|     |     |
| --- | --- |
| 1   | Unfortunately, Mr. Petrocelli has not been able to attend.  And |
| 2   | there are two issues.  There's an issue about what documents |
| 3   | will be admissible at trial.  That we're going to wait; right? |
| 4   | We -- we are in great disagreement about certain types of |
| 5   | documents that we think are admissible and they don't.  They go |
| 6   | to how competition works in this industry and what kind of |
| 7   | market intelligence is -- is gathered.  That -- that we are |
| 8   | waiting on. |
| 9   | But -- but there's a second issue of -- for materials |
| 10  | that Your Honor decides are admissible, do you want an extra |
| 11  | step of a witness coming and saying, yes, that's an email I |
| 12  | wrote; yes, that's a contract I signed?  There are -- let me |
| 13  | tell you how this is playing out.  There are third parties |
| 14  | where defendants have -- where materials have been subpoenaed |
| 15  | by defendants and us, and there's an effort to just have the |
| 16  | admissible material from those third parties come in without a |
| 17  | sponsoring witness. |
| 18  | And then the question is can that also apply to the |
| 19  | materials from defendants' own files.  So that's the issue. |
| 20  | We -- we -- in recent antitrust cases in front of |
| 21  | Judge Jackson, Judge Bates, Judge Sullivan, we were able to put |
| 22  | in evidence without a sponsoring witness and -- |
| 23  | THE COURT:  Was that -- was that with the consent of |
| 24  | the opposing party or -- |
| 25  | MR. READ:  It was.  It was. |

| | |
|---|---|
| 1 | THE COURT: -- a separate ruling? |
| 2 | MR. READ: It was stipulated to and consent. And, |
| 3 | Your Honor, of course, has discretion on this. And -- |
| 4 | THE COURT: I do. But I guess, Mr. Read, generally, |
| 5 | I'm sort of governed by the rules of evidence, and if you're |
| 6 | required to lay a foundation, et cetera, that's kind of your |
| 7 | obligation, unless the other side agrees and says, you know, we |
| 8 | can. |
| 9 | MR. READ: Sure. |
| 10 | THE COURT: That's kind of, I think, the default rule |
| 11 | that you need to comply with the rules of evidence. |
| 12 | MR. READ: Oh, sure. And I'm not -- and I'm not |
| 13 | arguing about that. I'm -- what I'm saying is documents that |
| 14 | are otherwise admissible. So they've been stipulated, or -- or |
| 15 | in a deposition we've proved up that they're admissible. And |
| 16 | we can have that -- the dispute later, but -- but if they are |
| 17 | admissible because we've shown that in a deposition or it's |
| 18 | stipulated to -- |
| 19 | THE COURT: Okay. So you -- |
| 20 | MR. READ: -- we would like Your Honor to have -- we |
| 21 | would like Your Honor to have that record without having to |
| 22 | call additional people just to, you know -- |
| 23 | THE COURT: Okay. So to be sure I understand, you're |
| 24 | saying that they've been identified by the proper people at a |
| 25 | deposition. So you don't want to repeat that -- |

```
 1                   MR. READ:  Or will be --
 2                   THE COURT:  -- on the record.
 3                   MR. READ:  -- or there will be a stipulation about
 4     it, yes.
 5                   THE COURT:  Okay.  And a stipulation is fine.
 6              All right.  Go ahead, Mr. Petrocelli.
 7                   MR. PETROCELLI:  Yes.  This is one of the reasons why
 8     I believe this should be the subject of some deeper meet and
 9     conferring because there's simply no way to deal with these
10     documents in the abstract.
11              This issue, by the way, was litigated in the prior
12     merger trial of the AT&T-Time Warner trial, and the Court ruled
13     consistent with the rules of evidence; that the entry of
14     documents absent a stipulation need to be put into evidence by
15     a sponsoring witness.
16              And why that's important, Your Honor, is because there
17     are many, many documents that require context.  It's not simply
18     a question of authenticating the document.  That's not the
19     issue at all.  It's the question of avoiding what has been
20     condemned in the cases as a document dump; where documents are
21     just indiscriminately put into the record, no testimony is ever
22     received, and all of a sudden they show up for the first time
23     in findings of fact and conclusions of law without our being
24     able to address them, explain them, without Your Honor being
25     able to understand and receive evidence about them.  And,
```

1    furthermore, Your Honor, they wreak -- they wreak havoc on
2    appeal.  Because if they're -- if they're in the trial record,
3    they can be cited on appeal, but they're untethered to any
4    testimony.
5         So, for example, in the last trial, absent a
6    stipulation -- and there are a number of -- of documents that
7    don't require any testimony, things that are a matter of
8    public record and certain things that the parties can agree
9    to.  But most of these documents are in the nature of emails.
10   They're rife with hearsay, embedded hearsay.  Oftentimes,
11   the emails don't even identify what book is being discussed.
12   So it would be -- it would be totally inappropriate to just
13   be dumping documents into the record without a witness, and
14   so --
15        THE COURT:  What I hear from you, Mr. Petrocelli, is
16   it sort of depends on the document.  So what I'll say is I
17   think that I'm all for streamlining the presentation of
18   evidence at trial and having people who are not really adding
19   anything to the presentation not testify.
20        But it sounds like, Mr. Read, you should meet and confer
21   a bit longer because I think if you're asking for a blanket
22   ruling -- that anything that's otherwise admissible, you don't
23   have to call a sponsoring witness -- I'm not really willing to
24   do that right now, especially given Mr. Petrocelli's objection
25   and saying that, well, some of them we will agree to but others

```
 1    we will not.
 2           I think that before you brief anything, I would like you
 3    to meet and confer further and be more specific about what
 4    you're asking for.  Because I generally support the idea, but I
 5    think that if there's an objection, I'd like to understand why.
 6    And if we need some of those witnesses to testify, they should.
 7           MR. READ:  Yeah.  I'm happy to talk it out further
 8    and make sure that there is clarity on what we're asking for
 9    and see if we can at least get categories of things that we can
10    agree to.  So we will do that, Your Honor.
11           THE COURT:  All right.  Thank you.  So motion
12    averted.
13           MR. READ:  Hopefully.
14           MR. PETROCELLI:  For the time being.
15           THE COURT:  All right.  For now.  For now, motion
16    averted.  But if you do file one, I'd like it to be more
17    specific rather than a blank request for all documents.
18       All right.  Anything else we should address?
19           MR. READ:  Those were the issues that I had,
20    Your Honor.
21           THE COURT:  All right.  Do you have anything,
22    Mr. Petrocelli?
23           MR. PETROCELLI:  No.  But can we assume it appears
24    we'll be having a courtroom live by August?
25           THE COURT:  Yes, that's my intention.
```

1      MR. PETROCELLI:  Great.  Okay, Your Honor.  Thank you
2  very much.  I appreciate your time.
3      THE COURT:  All right.  Thank you.
4      And so if the parties could just sort of file the -- the
5  new agreed-upon schedule, I think it's good just to have it in
6  writing in an order on the record.  I'll definitely approve
7  that.  And, otherwise, I think we should set another date for a
8  status hearing.
9      How much time would the parties want?  Another 30 days,
10 or is there a different time frame that makes sense?
11     MR. PETROCELLI:  Is it possible to do it on a
12 Wednesday because I'm starting a trial and the Court is dark on
13 Wednesdays?
14     THE COURT:  Sure.  So let's see.  Are we talking
15 about April 13th or April 20th?
16     MR. READ:  That would be good.  They're before the
17 close of fact discovery in case there's any last-minute issue.
18 I think those would work.
19     MR. PETROCELLI:  Either are fine.
20     THE COURT:  Okay.  April 20th would be better for me.
21 So how about April 20th at 2 o'clock?
22     MR. READ:  Yes, Your Honor, that works for me.
23     MR. PETROCELLI:  Yes, Your Honor.  Works for us,
24 Your Honor.
25     Stephen, does that work for you?

1           MR. FISHBEIN:  Yes, that's fine for us as well.

2           THE COURT:  Okay.  All right.  Thank you.  If there's

3 nothing further, then the parties are excused.

4           (Proceedings were concluded at 2:19 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 19th day of March, 2022.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001