```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____

United States of America,          ) Civil Action
                                   ) No. 1:21-cv-02886-FYP
              Plaintiff,           )
                                   ) Status Hearing
vs.                                ) (via Zoom)
                                   )
Bertelsmann SE & Co. KGaA,         )
et al.                             ) Washington, D.C.
                                   ) May 25, 2022
              Defendants.          ) Time:  1:00 p.m.
_____

         Transcript of Status Hearing (via Zoom)
                        Held Before
         The Honorable Florence Y. Pan (via Zoom)
                United States District Judge


                      A P P E A R A N C E S

For the Plaintiff:        John R. Read
(via Zoom)                Sarah Heideman Licht
                          Ihan Kim
                          Melvin A. Schwartz
                          U.S. DEPARTMENT OF JUSTICE
                          Antitrust Division
                          450 Fifth Street, Northwest
                          Washington, D.C. 20530

For the Defendants Bertelsmann SE & Co. KGaA and Penguin Random
House, LLC:               Daniel M. Petrocelli
(via Zoom)                Megan Smith
                          O'MELVENY & MYERS LLP
                          1999 Avenue of the Stars, 8th Floor
                          Los Angeles, California 90067

                          Abby Rudzin
                          O'MELVENY & MYERS LLP
                          7 Times Square, Times Square Tower
                          New York, New York 10036

For the Defendants ViacomCBS, Inc. and Simon & Schuster, Inc.:
(via Zoom)                Stephen Fishbein
                          SHEARMAN & STERLING, LLP
                          599 Lexington Avenue
                          New York, New York 10022
```

```
 1                    A P P E A R A N C E S, continued

 2     For the Defendants ViacomCBS, Inc. and Simon & Schuster, Inc.:
       (via Zoom)              **Ryan A. Shores**
 3                             SHEARMAN & STERLING LLP
                               401 9th Street, Northwest
 4                             Washington, D.C. 20004
       _____
 5
       Stenographic Official Court Reporter:
 6     (via Zoom)              Nancy J. Meyer
                               Registered Diplomate Reporter
 7                             Certified Realtime Reporter
                               333 Constitution Avenue, Northwest
 8                             Washington, D.C. 20001
                               202-354-3118
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            P R O C E E D I N G S

2            (REPORTER'S NOTE: This hearing was held during the
    COVID-19 pandemic restrictions and is subject to the
3   limitations of technology associated with the use of
    technology, including but not limited to telephone and video
4   signal interference, static, signal interruptions, and other
    restrictions and limitations associated with remote court
5   reporting via telephone, speakerphone, and/or
    videoconferencing.)
6

7            THE COURTROOM DEPUTY: This is Civil Matter 21-2886,

8   the United States of America v. Bertelsmann SE & Co., et al.

9            Counsel, please identify yourselves for the record,

10  beginning with the government.

11           MR. READ: Your Honor, this is John Read. I'm joined

12  with -- by my colleagues Ihan Kim, Sarah Licht, and Melvin

13  Schwartz.

14           THE COURT: Good afternoon.

15           MR. PETROCELLI: Hello, Your Honor. Daniel

16  Petrocelli. I'm here in my office in L.A. with Megan Smith. I

17  think Abby Rudzin is also on the videoconference. And we

18  represent Penguin Random House and Bertelsmann. And also

19  general counsel Anke Steinecke is on.

20           THE COURT: All right. Good afternoon. So this case

21  is -- I'm sorry. Go ahead.

22           MR. FISHBEIN: It's Steve Fishbein and Ryan Shores

23  representing Viacom and Simon & Schuster.

24           THE COURT: Of course. Thank you. Good afternoon.

25           All right. So this case is here for a status hearing.

| | |
|---|---|
| 1 | And I'm -- I'm here to resolve anything that you need to |
| 2 | resolve, and I'll let the parties let me know what's -- what's |
| 3 | going on in the case. |
| 4 |     MR. READ:  Yes, Your Honor.  We've worked on some |
| 5 | agreements looking ahead to trial, and we'd like to run those |
| 6 | by you and make sure that they accord with your expectations |
| 7 | and desires.  And we do have some questions for you. |
| 8 |     I did want to note at the beginning that congratulations |
| 9 | are in order for you. |
| 10 |     THE COURT:  Thank you.  Thank you. |
| 11 |     So for the record, I was -- it was announced today that |
| 12 | I'm going to be nominated for the -- for a spot on the District |
| 13 | of Columbia Circuit.  And so I'll tell you, I have not spoken |
| 14 | to the Chief Judge about the status of this case and what |
| 15 | that's going to be.  But for now I'm here, and I'm -- I'm |
| 16 | hoping I'll be able to -- to remain on this case. |
| 17 |     So thank you. |
| 18 |     Go ahead, Mr. Read. |
| 19 |     MR. READ:  Yes.  We've discussed -- now that fact |
| 20 | discovery is closed -- and are in agreement that the trial will |
| 21 | take no more than three weeks.  We did -- I, at least, wanted |
| 22 | to confirm that since it's August and almost all of the |
| 23 | witnesses will be traveling, that there was no need for a break |
| 24 | during those three weeks.  If vacations interfere, we could |
| 25 | work around that, but we'd rather know that now for witness |

1    purposes.
2            THE COURT:  It was certainly my intention just to
3    clear the decks and do it all in August.  And I understand that
4    it's important to the parties that this trial happen in August,
5    and so that will be a priority.
6            MR. READ:  We have discussed, Your Honor, the idea of
7    a chess clock to have some bounds on the time for each side.
8    And before we finalize those discussions -- or went deeper, I'm
9    just wondering if you had any view about the value of that
10   or -- or that it would be something you wouldn't -- wouldn't
11   appreciate.
12           THE COURT:  No, I -- I'm in favor of the chess clock.
13   I'm surprised that the parties would suggest it because usually
14   the judge wants the chess clock and the parties don't.  So if
15   the parties are willing to do a chess clock, I would be very
16   supportive of that.
17           MR. READ:  Okay.  Well, we haven't figured out the
18   hours that each side would be allotted.  That would be
19   something we would meet and confer on.
20           THE COURT:  Okay.
21           MR. READ:  But I think there's some value in that.
22       We have discussed about the pretrial brief.  There's a
23   potential ambiguity in the way the CMO was drafted about
24   whether proposed findings of fact or proposed conclusions of
25   law would go with that pretrial brief.  We agree they should

1   not.  Those findings of fact and conclusions of law would
2   come -- the proposed ones would come after trial.  But -- and
3   so it would just be a standard pretrial brief we would submit
4   mid-July, if that was acceptable.
5           THE COURT:  Yeah, I think that's fine.  I think
6   that's appropriate.
7           MR. READ:  We've also agreed that with regard to the
8   pretrial statement, both sides will submit the list of
9   witnesses in the order they're going to call those witnesses so
10  that we have notice in advance of trial about -- you know,
11  given trial schedules, who's coming and what.  And so that's --
12  that's something, I think, that is fairly standard in this
13  court, but just going to confirm that we agreed on that.
14          THE COURT:  Okay.  Thank you.
15          MR. READ:  We had an interest in opening statements,
16  if Your Honor is interested.  We could agree to time limits on
17  that of somewhere between 30 and 60 minutes, if that would
18  accord with Your Honor.
19          THE COURT:  Yes, absolutely. I'm in favor of opening
20  statements.
21          MR. READ:  Your Honor had asked for expert -- for
22  summaries of the expert reports.  We've agreed -- each side has
23  identified two experts.  We've agreed that those summaries will
24  be combined per side no more than 20 pages, double spaced, and
25  otherwise consistent with your standing order.  It -- we can

1    work out the logistics of how you want those presented.  We

2    assume you would want those presented as your standing order

3    has it for how papers are submitted to chambers, since it's not

4    going to be filed.

5           THE COURT:  Yes, that's fine.  Submitting to chambers

6    is fine, and also you can use the email -- chambers email for

7    those documents.

8           MR. READ:  Okay.  We have agreed -- both sides have a

9    number of witnesses that are identical on each side's witness

10   list, and so we have agreed that the witness need only be

11   called once.  And that would give the defendants the

12   opportunity, if we were to call somebody on their witness list,

13   to ask questions that might go beyond the scope of the direct.

14   And we've agreed to allow that to happen.

15          THE COURT:  I appreciate that.  That's a much better

16   way to proceed.

17          MR. READ:  With regard to deposition designations, we

18   thought we would ask Your Honor's preference of how you want to

19   receive those.  All the depositions have a video component.

20   They've all been captured by video, as well as transcript.  We

21   could submit those for your viewing in chambers.  We could play

22   some in court.  We have some ideas.  We've discussed it but

23   wanted to see if you had strong preferences.

24          THE COURT:  So I think in terms of me understanding

25   how it fits into your case, it would be preferable to me for

```
1    you just to present it in court, if it can be done in an
2    efficient way.  Because for me just to get that without the
3    context, I don't think, is as useful.
4              MR. READ:  Okay.  I think we can work on that.
5         Dan, are you in agreement on that?
6              MR. PETROCELLI:  I am.  And that it would count
7    against the hours.
8              THE COURT:  On the chess clock?
9              MR. PETROCELLI:  Yes.
10        And, Your Honor, I -- I have not weighed in on any of
11   these.  I'm going to let Mr. Read finish, and I'll have some
12   comments.
13             THE COURT: Oh, okay.  I'm sorry.  I thought these
14   are things you had agreed on.
15             MR. PETROCELLI:  So far -- so far that is correct,
16   except I do want to go back to the trial schedule issue, but
17   I'll let Mr. Read complete his remarks.
18             THE COURT:  All right.  Thank you.
19             MR. READ:  Okay.  Because I don't mind hearing -- if
20   there's any clarification that needs to happen, hearing it now.
21   I don't mind.
22             MR. PETROCELLI:  On the trial schedule, Your Honor,
23   for obvious reasons, in terms of giving the Court ample time to
24   render an opinion, receive post-trial submissions, and the
25   like, we do need to do everything we can to stay within the
```

1    three-week time period.
2         I also need to let the Court know that I have a major
3    criminal trial starting on September 7 and don't have
4    flexibility, really, to go beyond the three weeks.  And so I
5    just wanted to -- as we're thinking about any scheduling
6    issues, just to make that disclosure to the Court.
7              THE COURT:  Okay.  Thank you.
8              MR. PETROCELLI:  It's going to be relevant when we
9    get to the issue of closing argument, which I think I'll just
10   raise right now, which is that the government, apparently,
11   prefers a closing argument following the post-trial
12   submissions.  I would not be available at that point in time,
13   and so for that reason -- but also because in my experience
14   it's -- it's preferable to conduct the closing argument right
15   after the last witness is called -- or, you know, right after
16   the close of evidence.
17        To the extent that Your Honor has any questions which
18   are not resolved or answered during closing argument, of course
19   those can be submitted and the parties can address those in the
20   post-trial submissions, but that is one area where there's a
21   difference of opinion.
22              THE COURT:  I -- I was expecting to do the closing
23   arguments right after the close of the evidence, which is --
24   I've never done a trial any other way.  I would be willing to
25   hear why it would be preferable to do it some other way, but it

1  just seems to make the most sense that when the evidence is
2  fresh in my mind, that I hear your closings.
3         MR. READ:  We will do it as Your Honor desires.  We
4  have had other cases where the judges found value in receiving
5  the post-trial submissions and then providing counsel for both
6  sides with pointed questions about cases or issues that they
7  wanted further explication about, and we thought that would be
8  useful.  But if Your Honor prefers immediately after trial,
9  that's one of the issues we wanted to resolve today.
10         THE COURT:  I think that's the way I would prefer to
11 do it, and if I need to set another hearing to ask you pointed
12 questions, I can just do so.
13         MR. READ:  Okay.  And I think that leaves us -- we're
14 near the end of where we're -- what we had planned to raise
15 with you.
16         We do as -- have the post-trial briefing, where we have
17 three weeks after trial, the proposed findings of fact and
18 proposed conclusions of law Your Honor will receive.  We had
19 thought a brief would go with that.  I think it's what we had
20 identified earlier.  And then two weeks after that, a reply
21 brief will be submitted.  And so that was what we understood
22 the -- the practice to be.  Defendants may have a slightly
23 different view on that.  It's hard to tell from the other day.
24         MR. PETROCELLI:  Your Honor, there may be a little
25 bit of confusion here.

1        What we envisioned was a single document entitled
2   findings of fact and conclusions of law, which would have the
3   entirety of each side's position, both on the facts and the
4   law.  I think what Mr. Read is suggesting is each side files
5   initially two documents, one called the trial brief and one
6   called findings of fact and conclusions of laws.  We just think
7   that's redundant and can put all of that in a single
8   submission, to which then the parties would respond with a
9   single submission.  Is that right, John?  Is that the issue?
10       MR. READ:  Yeah.  We had thought Your Honor would
11  find value in a document, the proposed findings of fact and
12  conclusions of law, where you could cut and paste, to the
13  extent you thought appropriate, material for your opinion,
14  since you're going to be asked to draft something in short
15  order, and while preserving the ability to have legal argument
16  coming out of the -- the three-week trial that -- an
17  explanation for why you've heard what you've heard.
18       MR. PETROCELLI:  And -- I'm sorry.  To be clear,
19  Your Honor, the findings of fact and conclusions of law
20  would -- would be written in a way where there would be
21  discrete findings and conclusions which could then populate a
22  proposed order by Your Honor.  But, in addition, it would have
23  the legal context and legal discussion, as well as the factual
24  discussion, around that.  But whatever your preference is.  I
25  just wanted to identify what the issue was.

1       THE COURT:  I understand.  And, of course, the goal
2  is to have the proposed findings of fact and conclusions of law
3  and the opportunity to, I guess, object to the other side's
4  proposals, if you want to, and include some legal argument.
5       I think the question is what is the format that that
6  should be.  And I understand Mr. Petrocelli to be saying we
7  should just submit proposed findings of fact and conclusions of
8  law and then there could be a subsequent filing of objections
9  and argument.  Is that what you're saying, Mr. Petrocelli?
10      MR. PETROCELLI:  Yes.  Both sides on day -- on
11 whatever the appointed day is, would prepare their findings of
12 fact and conclusions of law, together with all of their
13 contextual arguments about why the facts and law, you know,
14 support these findings.  And then, each side then has a
15 counter-statement to that, objecting or disagreeing or
16 whatever, in the second date that was specified by the Court.
17 So there would be -- there would be one filing by each side
18 initially and one filing by each side responsively.
19      THE COURT:  I think that seems more efficient,
20 Mr. Read, because this way I'll know what's in dispute before I
21 have to read the legal argument.
22      MR. READ:  We just want to make sure that the first
23 filing you get three weeks after trial has the ability to
24 present for Your Honor why the evidence you've heard is
25 relevant and how it fits in and, you know, not be so stilted by

1     just a list of findings of fact or conclusions of law, that --
2     have, you know, an opportunity to present, you know, how it all
3     fits together in kind of a standard -- more standard-looking
4     legal brief.
5              THE COURT:  I just -- is there some reason why you
6     can't include that within the findings of fact or conclusions
7     of law or --
8              MR. READ:  We might be able to do it.  It's just --
9     so if we're just talking semantics, where it's kind of a longer
10    piece of paper, but it's one piece of paper, that's not an
11    issue.  But we thought there would be value to providing that
12    information to you; wanted to make sure we could.
13             THE COURT:  Okay. No. Of course.  I would be
14    interested in receiving that, and I think just getting it in
15    one document is probably better.  And so I understand that you
16    can include things in there that you otherwise might not if you
17    were just proposing an order for me to sign.  So, yeah, go
18    ahead, because I would end up editing that anyway.
19             MR. READ:  Yeah.  Well -- as we would expect.
20         I think, Your Honor, that's where we're at.  We are
21    working on additional things and -- but I don't know they're
22    quite ripe for you.  And I did want to -- especially if we're
23    going to have another status conference, maybe after the expert
24    reports are done but before our main pretrial conference in --
25    I think July 25th.

1          THE COURT:  Of course we can schedule another status
2     hearing before then.
3          Did you have anything else, Mr. Petrocelli?
4          MR. PETROCELLI:  No, Your Honor, other than to echo
5     all of our congratulations to Your Honor for an extraordinary
6     appointment.
7          THE COURT:  Thank you very much.  I appreciate that
8     very much.
9          So should we set another date to come back?  Let me pull
10    up my calendar.
11         MR. PETROCELLI:  John, did you say July 8 was the day
12    you wanted?
13         MR. READ:  Somewhere around there, depending on the
14    Court's schedule and your schedule, Dan.
15         MR. PETROCELLI:  July 8 would work with me, John, if
16    it works for Steve and others and the judge.
17         THE COURT:  That's fine with me.
18         MR. FISHBEIN:  Yeah -- yeah, that's good for me.
19         THE COURT:  I'm sorry.  Let me just --
20         MR. PETROCELLI:  That's a Friday.
21         THE COURT:  Yes.  I think I'm out of the office that
22    day.  Let me look at my calendar.  How about the following
23    week?  I have the 11th, the 12th, or the 14th.
24         MR. READ:  If Your Honor -- I would prefer earlier
25    rather than later because we are -- you know, we're getting

```
 1    close to July 25th and --
 2              THE COURT:  Okay.  How about the 11th, July 11th?
 3              MR. PETROCELLI:  I can do 7/11.
 4              THE COURT:  Okay.  7/11.  Is 2 o'clock a good time?
 5              MR. READ:  Yes, Your Honor.
 6              MR. PETROCELLI:  Eastern Time, yes, Your Honor.
 7              MR. FISHBEIN:  Yes, Your Honor.
 8              THE COURT:  Okay.  Great.
 9         Okay.  Is there anything else that we need to address
10    today?
11              MR. PETROCELLI:  Not from me, Your Honor.
12              MR. READ:  Thank you, Your Honor.  We're fine.
13              MR. FISHBEIN:  Thank you.
14              THE COURT:  All right.  The parties are excused.
15              (Proceedings were concluded at 1:18 p.m.)
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF OFFICIAL COURT REPORTER

     I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

     Dated this 27th day of May, 2022.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001