UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> BERTELSMANN SE & CO. KGaA, <br> PENGUIN RANDOM HOUSE, LLC, <br> VIACOMCBS, INC., and <br> SIMON & SCHUSTER, INC, <br><br> *Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

**UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF
PENGUIN RANDOM HOUSE'S ANNOUNCED BIDDING POLICY**

Plaintiff United States respectfully moves this Court for an order precluding Defendants from presenting at trial evidence of statements by Penguin Random House ("PRH") that it intends in the future to allow its commonly-owned imprints (i.e., publishing brands) to behave as if they are separate companies. The Clayton Act prohibits attaining market power by acquisition regardless of the resulting dominant company's self-serving promise about its own internal rules. The substance of Defendants' argument amounts to "don't worry about allowing us to get market power; we promise not to use it." But competition—not ephemeral corporate promises—ensure that markets deliver competitive prices, better quality and more choices for Americans. Unilateral and ultimately unenforceable promises that do not alter the structure of the underlying

1

acquisition—and therefore do not maintain the real-world incentives to ensure competition prevails—are irrelevant and inadmissible to the question of whether the Court should permit this proposed merger to proceed.  The provision of testimony on this subject at trial is not only irrelevant, it also will unnecessarily waste time and confuse the proceedings with collateral witnesses and evidence, and unfairly prejudice the United States.  It should therefore be excluded.

## BACKGROUND

In September 2021, PRH CEO Markus Dohle—in reaction to competitive concerns from agents and authors regarding its acquisition of Simon & Schuster (the "Transaction") and aware of the potential for this action from the United States to enjoin the Transaction—announced that if and when the Transaction is consummated, PRH imprints and legacy Simon & Schuster imprints would be allowed to bid against one another for the acquisition of books (the "Announced Bidding Policy").[1]

Defendants do not allege that the Announced Bidding Policy changes, amends, or results in an acquisition different from the Transaction that is the subject of this case, or structurally alters the post-merger competitive incentives of the combined company.  Nor does the Announced Bidding Policy create any legally binding or continuing commitment.  To the contrary, the Announced Bidding Policy is an unenforceable, unilateral commitment that Defendants assert they will adhere to should the Court permit the Transaction to close, but which in reality can be retracted, modified, or evaded at any time for any reason.

---

[1] *Penguin Random House's Open Letter to Our Book Publishing Industry Partners*, https://www.penguinrandomhouse.com/penguin-random-houses-open-letter-to-our-book-publishing-industry-partners/.

**ARGUMENT**

**I.   Evidence of PRH's Announced Bidding Policy is irrelevant, and therefore, inadmissible.**

The Announced Bidding Policy is a unilateral commitment that PRH can simply ignore, alter, or rescind without recourse—and is likely to do so.  Merger law focuses on market structure, not purely speculative "promises" a defendant makes about their post-merger behavior.  As such, the Court should use its discretion to exclude this irrelevant evidence.  *See* Fed. R. Evid. 401, 402.

In essence, PRH's Announced Bidding Policy comes down to the proposition that, although Defendants will attain additional market power and be the industry's dominant player by eliminating their strong pre-merger rivalry, they promise after the merger to forgo profits and benevolently pretend for some of its imprints to compete against some of its other imprints, ostensibly driving up their own costs.[2]  But this is nonsensical, akin to spouses bidding against each other and driving up the price for a house that they will share.  PRH is a profit-maximizing firm, and the law categorically rejects arguments that individual units of a corporation are "separate economic actors, pursuing separate economic interests." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984).  Rather, a corporation and its division or wholly owned subsidiary "have a complete unity of interest.  Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." *Id*. at 771; *see also United States v. AT&T, Inc.*, 916 F.3d 1029, 1043 (D.C. Cir. 2019) ("Companies with multiple divisions must be viewed as a single actor, and each

---

[2] The fact that Defendants are willing to make such a promise "strongly supports the fears" of anticompetitive effects. *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 67 (D.D.C. 1998).

division will act to pursue the common interests of the whole corporation."); Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application (2022), ¶ 964b ("Antitrust generally presumes that a firm maximizes its profits in the environment in which it finds itself . . . ."). When a corporation states an intention to maintain an acquired entity as separate and permit them to continue to function in the future as they had been doing, "[t]here can be little, if any, reliance upon the statement in the face of well-known tendencies of human conduct." *United States v. Pennzoil Co.*, 252 F. Supp. 962, 984 (W.D. Pa. 1965). PRH's own marketplace behavior corroborates the fact that this "promise" is directly contrary to its economic self-interest, as their typical practice is that PRH imprints may not exceed one another's bids when they are the only remaining bidders to acquire a book.

    Stated intentions of post-merger behavior are irrelevant in cases such as this. The Clayton Act prohibits attaining market power by acquisition without requiring a showing that the dominant merged firm intends to exercise that market power. *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 362–63 (1963); *Hosp. Corp. of Am. v. F.T.C.*, 807 F.2d 1381, 1389 (7th Cir. 1986) (proof that a merger has caused higher prices is not required); *see also F.T.C. v. H.J. Heinz Co.*, 246 F.3d 708, 719 (D.C. Cir. 2001). This holds true even when a defendant has supposedly benevolent intentions to voluntarily refrain from exercising its acquired market power. *See United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 82 (D.D.C. 2011) ("While the Court has no reason to doubt that defendants would honor their promise [to maintain the acquired firm's current prices for three years post-merger], this type of guarantee cannot rebut a likelihood of anticompetitive effects in this case." (citing *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 64 (D.D.C. 1998)). Further, an action that a defendant takes during the pendency of an investigation into their acquisition should be viewed with skepticism, especially when it may have been made

to improve their litigating position. *See Hosp. Corp. of Am.*, 807 F.2d at 1384 ("Post-acquisition evidence that is subject to manipulation by the party seeking to use it is entitled to little or no weight.").

If Defendants were correct that the law allows an ephemeral promise to replace real, structural competition, then firms in any industry could just merge to monopoly and then go scot-free with a promise to act like competitors. Such an absurd result is not the law; the Clayton Act instead focuses on market structure. Because the Announced Bidding Policy does not change the structure of the Transaction or the structure of the market if the Transaction were to proceed, it does not impact the competitive incentives of the combined firm and is appropriately excluded as irrelevant to the legal question before the Court.[3]

The merged company would not only have the strong incentive to change, rescind, or ignore the Announced Bidding Policy, but it would have the ability to do so easily and without oversight, rendering this stated intention speculative and irrelevant. The Announced Bidding Policy has no set duration and could be revised or thrown out entirely by the company for any reason on any day if and when the merger closes—including by the next CEO. PRH could also easily circumvent the Announced Bidding Policy as-is by consolidating or reorganizing its imprints. If, for example, a legacy Simon & Schuster imprint is consolidated with its current PRH rival imprint—or simply rearranged to be under the same division—any effect that the

---

[3] Defendants' "promise" is effectively a self-help remedy for the market power that they claim not to be acquiring, but even as such it is not of the type that courts consider, as it does not change or affect the acquisition at issue. *See, e.g.*, Mem. Op. at 5, 7, *FTC v. Arch Coal, Inc.*, No. 1:04-cv-534 (D.D.C. July 7, 2004) (permitting evidence of a proposed sale of assets because "the transaction that is the subject of the FTC's challenge is properly viewed as the set of two transactions involving the [original agreement and additional divestiture agreement]."); *FTC v. Libbey*, 211 F. Supp. 2d 34 at 46 (D.D.C. 2002) (finding that an amended acquisition agreement that "supercede[d] and nullifie[d]" the original merger agreement "becomes the new agreement that the Court must evaluate in deciding whether an injunction should be issued.").

Announced Bidding Policy may have had to preserve pre-merger competition between those imprints would be nullified. PRH may also simply ignore the Announced Bidding Policy and permit or direct its imprints to pull punches or coordinate on their respective bids. Such internal coordination would go undetected by the agents and authors who would suffer the resulting harm. But even if authors and agents could spot deviations from the Announced Bidding Policy, they—and this or any Court—would be powerless to enforce it. The merged company has free rein to restrict competition between its imprints without liability, because even though such coordination would be illegal between separate companies, the antitrust laws are not violated by internally coordinated conduct by a corporation and its subparts. *Copperweld*, 467 U.S. at 770. Because PRH is likely and so easily able to take any of these actions to undermine its Announced Bidding Policy the moment this case concludes, the Announced Bidding Policy is a purely speculative statement of intent, and is irrelevant to the Court's analysis in this case.

**II.     Any marginal relevance of the Announced Bidding Policy is outweighed by a danger of unfair prejudice, confusing the issues, and wasting time.**

Even if the Announced Bidding Policy has some marginal relevance to the Court's analysis of whether to allow the Transaction—which it does not—it should still be excluded because any marginal probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and wasting time. Fed. R. Evid. 403; *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 11-1623 (RC), 2015 WL 13680817, at *3 (D.D.C. June 12, 2015) (excluding evidence from a bench trial because "any relevance would be limited and outweighed by the dangers of undue delay and wasting time"). Time discussing the Announced Bidding Policy at trial would be better spent focused on the actual Transaction at issue. Indeed, the topic has already taken up valuable resources during discovery, as more than 15 fact and expert witnesses have already testified about their opinions

on the Announced Bidding Policy. It would be prejudicial to the United States' case to allow Defendants to use this testimony to obscure witnesses' real competitive concerns, especially when the Announced Bidding Policy's lack of economic sense suggests it is simply a made-for-litigation performative gesture offered as a temporary distraction from the anticompetitive effects of the proposed merger.

## CONCLUSION

Defendants likely will seek to present evidence of statements of their future intentions, made unilaterally and outside of this Court's purview to quell concerns about anticompetitive harm from the Transaction. But the Announced Bidding Policy has no relevance to the matters to be considered by the Court, and trial time should not be wasted on such distractions. Thus, the United States respectfully seeks an order precluding admission of evidence regarding PRH's Announced Bidding Policy.

Pursuant to the Court's Standing Order and Local Rule 7(m), the parties have met and conferred, and Defendants have stated that they will oppose this Motion. A proposed order is attached.

Respectfully submitted,

Dated: July 8, 2022

*/s/ John R. Read*
John R. Read (DC Bar #419373)
Jonathan S. Goldsmith (DC Bar #1044315)

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Fax: (202) 514-7308
Email: john.read@usdoj.gov

*Counsel for Plaintiff United States of America*

7

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, I served the foregoing and all accompanying documents on the below individuals by electronic mail:

For Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC:

Daniel M. Petrocelli (dpetrocelli@omm.com)
M. Randall Oppenheimer (roppenheimer@omm.com)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Andrew J. Frackman (afrackman@omm.com)
Abby F. Rudzin (arudzin@omm.com)
Eamonn W. Campbell (ecampbell@omm.com)
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Julia Schiller (jschiller@omm.com)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Debbie Feinstein (Debbie.Feinstein@arnoldporter.com)
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001

For Defendants ViacomCBS Inc. and Simon & Schuster, Inc.:

Stephen Fishbein (sfishbein@shearman.com)
Jessica Delbaum (jdelbaum@shearman.com)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Ryan Shores (ryan.shores@shearman.com)
Michael Mitchell (michael.mitchell@shearman.com)
Shearman & Sterling LLP
401 9th Street NW, Suite 800
Washington, DC 20004

Rachel Mossman (rachel.mossman@shearman.com)
Shearman & Sterling LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201

Dated: July 8, 2022

*/s/ Ihan Kim*
Ihan Kim
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Phone: 202-532-4283
E-mail: ihan.kim@usdoj.gov

*Counsel for Plaintiff United States of America*