## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　　*Plaintiff,*<br><br>v.<br><br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC.<br>　　　　　*Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

## DEFENDANTS' MOTION TO STRIKE BELATED EXPERT OPINION APPLYING "GUPPI" ANALYSIS

Defendants respectfully move *in limine* for an order precluding the government's expert, Dr. Nicholas Hill, from relying on a "GUPPI" model and analysis he failed to conduct and disclose in his initial report on the alleged competitive effects of the merger at issue. If Dr. Hill believed the GUPPI model was equal or superior to the model he initially invoked or was somehow supportive of it, he could and should have invoked that model in his initial report. Dr. Hill instead conducted and disclosed a GUPPI analysis only after Defendants' expert thoroughly debunked his Initial Report's model and analysis. Allowing the government to rely on Dr. Hill's new GUPPI analysis is inconsistent with the CMO and would severely prejudice Defendants because the CMO does not permit Defendants to prepare a written report rebutting Dr. Hill's new analysis. By delaying disclosure of a GUPPI analysis, the government therefore denied Defendants an opportunity to provide this Court with a written critique of that analysis in their own expert reports. It is too late in the process to prepare and submit a written response now. Dr. Hill's unfairly delayed GUPPI analysis should be excluded. The government should be

confined to the analyses disclosed in its Initial Expert Report as the entire expert basis for the government's case.

## BACKGROUND

The proposed merger of Penguin Random House, LLC ("PRH") and Simon & Schuster, Inc. ("S&S"), was announced on November 25, 2020. In late 2020, the government commenced an investigation into its potential effects on competition. The investigation continued over the next year, until November 2, 2021, when the government filed its Complaint challenging the merger as likely to substantially harm competition in the market to acquire U.S. rights to books. The government's case now focuses on one small price segment of that market, viz., the segment that includes books acquired for advances of $250,000 or more, which the government describes as a distinct "submarket."

After the Complaint was filed, the Court entered a Case Management Order ("CMO") that specified key deadlines for this necessarily fast-moving case. Dkt. 53. As amended, the CMO provided that "Initial Expert Report(s) on the issues on which the party bears the burden" would be due on May 4, 2022; "Rebuttal Expert Report(s) to the Initial Expert Report(s)" would be due on June 3, 2022; and "Reply Expert Report(s) to the Rebuttal Expert Report(s)" would be due on June 23, 2022. Dkt. 69. Trial commences August 1, 2022.

Dr. Hill was retained by the government prior to the Complaint's filing. He accordingly had six months or more to analyze the merger and develop his opinions as to why the merger was likely to harm competition in the government's alleged markets.

The government timely served Dr. Hill's Initial Expert Report on May 4. Consistent with the CMO, the report disclosed the expert analysis supporting the government's claim that the merger would cause competitive harm to the small $250,000+ price segment of the book-

acquisition market. Dr. Hill's analysis was based on an academic model called a "Second Score Auction" ("SSA") model, which analyzes the effects of a merger on certain types of competitive auctions. The SSA model is more fully described in Defendants' Expert Summaries also submitted to the Court today, but in brief, the model is designed to quantify the amount of harm that will result from a merger in an industry where prices generally are determined through a certain type of auction. The SSA model assumes that the winning auction bidder offers the highest "score" to the author based on both the payment offered and the non-monetary value of the offer (e.g., in this industry, how much the author feels the editor is a good fit). Critically, the SSA model assumes that the winning bidder in the auction is constrained by the runner-up bid, offering only a nominal amount more than the runner-up bid to prevail. The SSA model explicitly attempts only to approximate auctions that involve multiple bidding publishers and multiple bidding rounds.

On June 3, Defendants timely served the Rebuttal Expert Report of Dr. Edward A. Snyder, William S. Beinecke Professor of Economics and Management at Yale School of Management. In that report, Professor Snyder demonstrated that that the multi-round, multi-bidder auctions modeled by the SSA represent, at best, only a small fraction of the acquisition formats actually used in the publishing industry. The overwhelming majority of books instead are acquired through one-on-one negotiations, single-round "best bid" auctions, or a hybrid of a multi-round auction and a best-bid auction—none of which satisfies the assumptions underlying Dr. Hill's application of the SSA model, as Dr. Hill himself admitted in deposition. Hill. Dep. 230:11–231:10, 235:12–236:16. Professor Snyder also showed that Dr. Hill made significant

errors in the two most important inputs he used for his SSA model: publishers' market shares, and the profit margins for PRH and S&S.

In his Reply Expert Report, Dr. Hill attempted to defend his use of the SSA model, just as the CMO contemplated. Defendants have no procedural objection to that effort and will meet his responses on the merits at trial. But Dr. Hill's Reply also tried to respond to Professor Snyder's critique of his SSA analysis by creating and disclosing for the first time an entirely *new* model and analysis, which had not been mentioned anywhere in his Initial Report or in Professor Snyder's rebuttal report. Dr. Hill's new analysis relied on a model called the "Gross Upward Pricing Pressure Index," or "GUPPI." Like the SSA (as Dr. Hill applied it), the GUPPI relies on market shares and profit margins to identify potential harm from a merger. And like the SSA, the GUPPI estimates harm based on "aggregate diversion ratios," which are (roughly speaking) the estimated proportion of acquisitions that would have been made by one of the merging buyers, but would be diverted to non-merging buyers if the combined entity imposed a material price reduction (the larger the aggregate diversion ratio, the likelier sellers will be to turn to non-merging buyers in the event of a price reduction, giving the combined entity less power to impose a profitable price reduction).

Unlike the SSA, however, the GUPPI model does not attempt to quantify the price effects a merger is likely to cause. The GUPPI model is instead essentially a "screen" antitrust agencies use as "a starting point" to determine whether a merger bears further investigation and more comprehensive analysis. Statement of the Fed. Trade Comm'n, *In the Matter of Dollar Tree, Inc. and Family Dollar Stores, Inc.*, FTC File No. 141-0207, at 2 (July 13, 2015). As its title indicates, the GUPPI model assesses only *gross* upward (here, downward) pricing *pressure*—it expressly does not examine "any of the countervailing downward pricing pressures that

contribute to the net effect of the merger," and thus chiefly operates to estimate "upper bound on net, short-term unilateral pricing pressure," rather than providing "a direct indication of the likely effects of a merger."  Jan M. Rybnicek & Laura C. Onken, *A Hedgehog in Fox's Clothing? The Misapplication of GUPPI Analysis*, 23 Geo. Mason L. Rev. 1187, 1193 (2016).  In other words, because GUPPI "is the easiest factor to measure simply and quickly," some view it as "a good candidate for an initial screen," but it is widely recognized as "only one factor among others."  Steven C. Salop & Serge Moresi, *Updating the Merger Guidelines: Comments* at 20 (Nov. 9, 2009), https://www.ftc.gov/sites/default/files/documents/public_comments/horizontal-merger-guidelines-review-project-545095-00032/545095-00032.pdf.  As Dr. Hill himself recently testified, a GUPPI analysis only "measures the upward pricing pressure created by a merger" and "cannot predict how a merger is likely to affect prices."  Defs.' Proposed Findings of Fact & Conclusions of Law ¶ 260 & nn. 602–04, *FTC v. RAG-Stifung*, Case No. 1:19-cv-02337-TJK (D.D.C.) (Dkt. 138-1).

Dr. Hill's deposition took place on July 1, 2022.  Dr. Hill testified that before he conducted the SSA analysis described in his Initial Report, he was aware of the GUPPI model and knew that he could conduct a GUPPI analysis here.  Hill Dep. 237:2–7.  But he determined that the SSA was a "reasonable way to approach the loss of competition" in the alleged market, so he decided to forgo any GUPPI analysis.  Hill Dep. 229:16–21.  According to Dr. Hill, he conducted a new GUPPI analysis only in response to Professor Snyder's criticism that the SSA model did not approximate the acquisition formats used in the real-world publishing industry.  *Id.* at 236:17–237:15.

**ARGUMENT**

Dr. Hill's GUPPI analysis was unreasonably and unfairly delayed in this highly time-compressed case. Despite the urgency of the matter, Dr. Hill does not and could not suggest that he lacked the time or resources to conduct a GUPPI analysis and disclose its results in his Initial Report. To the contrary, he testified that he consciously chose *not* to conduct a GUPPI analysis, because in his view, the SSA model was a reasonable model for analyzing harm to competition in this industry. Indeed, he necessarily determined that the SSA model was the *superior* model for this industry—he presumably would not claim that he elected to forgo a GUPPI analysis even while believing it would provide more reliable results. But after Professor Snyder's rebuttal report so thoroughly explained why SSA model in fact cannot be reasonably applied to acquisitions in the market Dr. Hill was trying to model, Dr. Hill evidently felt compelled to generate the GUPPI analysis he willfully omitted from his initial assessment of potential competitive harm.

The thirteenth-hour production of this entirely new analysis violates the letter and spirit of the CMO and unfairly prejudices Defendants. The CMO ultimately fixed May 4 as the deadline for "Initial Expert Report(s) on the issues on which the party bears the burden." The CMO thus contemplated that on May 4, the government would fully disclose any expert analysis it would rely on to carry its burden to prove competitive harm. The CMO certainly does not contemplate initial disclosure of only a *partial* or *preliminary* analysis. To the contrary, the impending August 1 trial date required efficient development and discovery of the parties' litigation positions, which in turn required timely and complete compliance with deadlines

governing disclosure of the evidence and opinions the parties had developed to support their positions.

To achieve the crucial objective of identifying the bases for the government's claim of competitive harm, Dr. Hill chose to pursue and present the SSA-model-based analysis, because in his considered expert opinion, the GUPPI model was inferior to the SSA model in this context and therefore unnecessary.  As contemplated by the CMO, Defendants relied on the only disclosed analysis supporting his opinion, and they developed expert analysis responsive to that analysis.  The CMO then allows for the government expert to submit a "reply" to Defendants' critique of the Initial Report's analysis, but the CMO does not contemplate a *new* analysis altogether.

Allowing the government to rely on Dr. Hill's new GUPPI analysis would unfairly prejudice Defendants because under the CMO, they are not entitled to prepare a written report rebutting Dr. Hill's new analysis.  The CMO instead expressly limits Defendants to expert reports rebutting the *Initial* Report.  That structure is precisely why it was so essential for the Initial Report to disclose all the expert bases for the government's claims—Defendants' Rebuttal Report would be their sole opportunity for a written response.

The government's delay in conducting any GUPPI analysis is not only unfair to Defendants, it also undermines this Court's design for the fact-finding process in this case.  The Court emphasized on the record that it would be giving special attention to expert reports, Dec. 14, 2021 Hr'g. Tr. 10:4-8, and to that end the Court specifically included in the CMO a deadline of July 8, 2022, for the parties to file "Expert reports with executive summaries."  As the matter now stands, the government's Reply Report and its executive summary will set forth the GUPPI analysis and argue that it proves likely substantial harm to competition.  Defendants' reports and

summaries will include no response to that analysis, entirely because of the government's decision not to generate and disclose it until it was too late for Defendants to respond. Accordingly, when the Court is assessing the merit of Dr. Hill's new GUPPI analysis, the Court will have only the benefit of whatever critiques Professor Snyder can provide in live trial testimony.

This Court has discretion to strike Dr. Hill's GUPPI analysis as unfairly delayed. Courts in other cases have struck opinions, or parts of opinions, when the timing of disclosure did not allow the adverse party an adequate opportunity to respond before trial. *See*, *e.g.*, *Artis v. Yellen*, 307 F.R.D. 13, 22 (D.D.C. 2014); *Guerra v. Dematic Corp.*, 2022 WL 1062336, at *3–4 (D. Nev. Apr. 8, 2022); *Keener v. United States.*, 181 F.R.D. 639, 641-42 (D. Mont. 1998). Striking the GUPPI analysis also follows from this District's Local Rule 26.2, which states that a "party that without substantial justification fails to disclose information required by this Rule or by Fed. R. Civ. P. 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any . . . information not so disclosed." The same principle should apply to the government's failure to disclose the GUPPI analysis in its Initial Expert Report, as the CMO required. At this late hour, Defendants cannot reasonably prepare a full written rebuttal to Dr. Hill's GUPPI analysis. The government also would likely insist on an additional deposition of Professor Snyder focused on GUPPI, adding substantially to an already overloaded burden of pretrial preparation. The fairest solution instead is to enforce the letter and spirit of the CMO, strike the new GUPPI opinion, and require the Government to proceed at trial on the basis of the analyses developed and disclosed in the Initial Report.

## CONCLUSION

For the foregoing reasons, the motion to strike Dr. Hill's belated GUPPI analysis should be granted.

## Local Rule 7(m) Certification

Pursuant to Local Rule 7(m), the undersigned counsel for Defendants has conferred with the government. The government will oppose this Motion.

Dated: July 8, 2022                    Respectfully submitted,

By:   /s/ Daniel M. Petrocelli

Daniel M. Petrocelli (appearing *pro hac vice*)
M. Randall Oppenheimer (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
roppenheimer@omm.com

Andrew J. Frackman (appearing *pro hac vice*)
Abby F. Rudzin (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10026
Telephone: (212) 326-2000
afrackman@omm.com
arudzin@omm.com

Jonathan D. Hacker (D.C. Bar No. 456553)
Julia Schiller (D.C. Bar No. 986369)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
jhacker@omm.com
jschiller@omm.com

Deborah L. Feinstein (D.C. Bar No. 412109)
Jason Ewart (D.C. Bar No. 484126)
**ARNOLD & PORTER**
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
debbie.feinstein@arnoldporter.com
jason.ewart@arnoldporter.com

*Attorneys for Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC*

By:    */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing *pro hac vice*)
Jessica K. Delbaum (appearing *pro hac vice*)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (D.C. Bar No. 500031)
Michael Mitchell (D.C. Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, D.C. 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (D.C. Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants Paramount Global (f/k/a ViacomCBS Inc.) and Simon & Schuster, Inc.*