### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*,<br><br>v.<br><br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC.<br>*Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

### DEFENDANTS' MOTION TO EXCLUDE USE OF PRINTING-RELATED EVIDENCE TO ESTABLISH ALLEGED ANTICOMPETITIVE EFFECTS

Defendants respectfully move *in limine* for an order precluding the government from presenting evidence or argument of the printing capabilities of Bertelsmann SE & Co. KGaA ("Bertelsmann"), and printing-market conditions in general, to support its claim that Defendants' merger will substantially lessen competition in the market to acquire U.S. book rights.

For months, the government has insisted that information in its possession regarding printing-industry market conditions is irrelevant to this action. That is consistent with its Complaint, which contains no allegations that Bertelsmann's role in the printing market will affect post-merger competition in the book-acquisition market. On that basis, the government has refused to produce documents about printing-market conditions. Yet the government sought and obtained both written discovery and deposition testimony on the topic of Bertelsmann's printing capacity and the general availability of printing services to publishers. Defendants provided that discovery to the government while preserving their objection—consistent with the government's own position—that such information is not relevant to the government's claims.

Despite its discovery position, the government's proposed trial exhibits and deposition designations suggest that it intends to argue at trial that other publishers lack equivalent competitive access to printing facilities, thereby enabling the merged entity to win acquisitions with lower advances or force rivals to fall in line with coordinated price terms. But after a lengthy investigation, the government declined to assert a claim that the merged company could harm competition by foreclosing other publishers' access to printing capacity, a so-called "vertical" claim. Nor did it assert a theory that the combined entity would use Bertelsmann's printing resources to prevent rivals from expanding into or entering the government's alleged markets. It cannot belatedly seek to assert such theories now, especially after withholding evidence directly relevant to the availability of printing services and whether the combined entity could, in fact, profitably reduce other publishers' access to Bertelsmann's printing capacity. The government cannot have it both ways: either the printing-market evidence is relevant to its claims and should have been produced in discovery, or it is irrelevant and cannot be offered at trial. Accordingly, Defendants respectfully move for an order prohibiting the government from presenting evidence or argument about Bertelsmann's printing capabilities, and printing-market conditions more generally, to prove competitive harm in the book-acquisition market.

## BACKGROUND

Before filing the Complaint in this action on November 2, 2021, the government undertook a nearly year-long investigation into whether and how Penguin Random House's acquisition of Simon & Schuster ("S&S") would affect competition in the publishing industry. During that investigation, the government sought and obtained information about Bertelsmann's printing facilities and publishers' access to printing facilities in general. Declaration of Julia Schiller ("Schiller Decl.") ¶ 2. Such information was relevant to a potential "vertical" theory of competitive harm, viz., as a result of the merger, Bertelsmann would have sufficient power in the

printing market to raise other publishers' printing costs above competitive levels, thereby allowing the combined entity to harm the ability of other publishers to compete in the markets for the acquisition or sale of books.  The government also had other information about market conditions in the printing industry, collected in a recent investigation into a proposed merger of two other printing industry participants.  *See United States v. Quad/Graphics, Inc., et al.*, No. 1:19-cv-04153 (N.D. Ill. June 20, 2019).  But after analyzing this information, the government concluded that it had no basis for alleging that the combined PRH/S&S could or would use its access to Bertelsmann's printing capacity to harm competition in any market.  Its Complaint asserts no vertical claim and does not allege that it would be profitable for Bertelsmann to deny other publishers competitive access to its printing capacity.  *See generally* Dkt. 1 (Compl.).

Nevertheless, on December 17, 2021, the government served a request for production on both Bertelsmann and Penguin Random House ("PRH") seeking documents identifying the publishers who use Bertelsmann's printing services, the volume each publisher printed with Bertelsmann, and the dollar value of the printing services each publisher purchased from Bertelsmann.  Schiller Decl. ¶ 3.  Bertelsmann and PRH objected that this information is not relevant to the parties' claims or defenses in this action.  But to avoid burdening the Court with a discovery dispute, Bertelsmann and PRH produced responsive documents, subject to their relevance objection.  *Id.* ¶ 4.  The government also obtained testimony from numerous party and third-party witnesses about Bertelsmann's printing services and printing-market conditions more generally.  *Id.* ¶ 5.  That testimony demonstrated that, in addition to the other businesses Bertelsmann operates worldwide, Bertelsmann owns printing facilities, that Bertelsmann's printing services business is in a separate division from its publishing business, and that

Bertelsmann provides access to printing services to PRH as well as all publishers on an arms-length basis.[1]

Given the government's requests, Bertelsmann and PRH likewise sought discovery about conditions in the printing market, requesting documents that the government "sent, received, or otherwise obtained in connection with any investigations concerning the publishing industry" that the government has "undertaken, conducted, or otherwise been involved in since January 1, 2016." *Id.* ¶ 6.  But unlike Bertelsmann and PRH, the government refused to cooperate, objecting to the request on relevance grounds and unilaterally interpreting the request as *excluding* any government investigations into printing industry competition.  *Id.* ¶ 7.

Bertelsmann and PRH responded by observing that the government's asymmetric position would unfairly allow the government to withhold evidence relevant to the competitive effects of Bertelsmann's printing capacity on the book-acquisition market, even while the government was demanding and receiving such evidence from Defendants.  *Id.* ¶ 8.  In an attempt to resolve the dispute, Bertelsmann and PRH offered to compromise by excluding documents from any investigation the government might have opened into the printing industry *if* the government would represent that it did not intend to submit or rely on any printing-related evidence.  *Id.*

The government rejected the proposed compromise and refused to review its files and produce responsive documents.  The government instead repeatedly demanded that Bertelsmann and PRH identify with more specificity the particular documents it sought from the

---

[1] Bertelsmann's CEO and Chairman, Thomas Rabe, testified in response to the government's questions that Bertelsmann Printing Group is part of Bertelsmann's "B2B services" division, while PRH is part of its "media services" division.  *Id.* ¶ 5.  He also testified that Bertelsmann will "honor" all agreements that its printing plants have with publishers.  *Id.*

government's investigatory files on printing-industry competition—even though the documents were solely in the government's possession and Defendants had no way to identify them. *Id.* ¶¶ 9–11. During numerous meet-and-confers, the government maintained its position that it had no obligation to search for and produce evidence concerning the extent and nature of competition in the printing industry because that evidence has no relevance to this case. *See id.* ¶¶ 10–12.

## ARGUMENT

This case is about competition in the market to acquire U.S. book rights, not competition in the market to provide printing services to publishers. The government nevertheless seeks to introduce extensive evidence concerning Bertelsmann's printing capacity, other publishers' access to that capacity, and the availability of printing capacity in general. The only plausible basis the government has for introducing such evidence is to attempt to show that Bertelsmann will deny or threaten to deny other publishers access to printing, thereby facilitating price coordination or giving the combined entity an unfair competitive advantage in book acquisitions. But the government did not allege any printing-based theory of harm in its Complaint, and it refused to produce discovery on printing-market conditions, which would have been directly relevant to that theory's merits. Accordingly, the government should be barred from presenting that theory, or introducing evidence in support of that theory, at trial.

## I.    EVIDENCE OF BERTELSMANN'S PRINTING CAPACITY IS IRRELEVANT TO THE MERGER'S ALLEGED ANTICOMPETITIVE EFFECTS

Evidence concerning Bertelsmann's printing capacity, and the availability of that capacity or other printing facilities to PRH and other publishers, is not relevant to this case. To satisfy the relevance standard for admissibility, evidence not only must have a "tendency to make a fact more or less probable than it would be without the evidence"; it must *also* concern a "fact [] of consequence" to determination of the action. Fed. R. Evid. 401.

Evidence about the printing market could concern a fact of consequence if the government were asserting a claim that the merger will harm the printing industry.  But the Complaint asserts no such claim.  Printing evidence also might be relevant if the government were asserting a vertical claim or theory that the post-merger entity will likely exploit its parent's printing capacity to raise rivals' printing costs and thereby undermine their ability to compete for book acquisitions.  But again, the Complaint asserts no such theory.  And in the absence of such claims, evidence concerning publishers' access to printing capacity—whether through Bertelsmann or elsewhere—has no bearing on this case.  The government itself effectively admitted as much in discovery, asserting that information about printing-market conditions was not sufficiently relevant to require it to search for and produce information responsive to discovery requests on the topic.  *See supra* at 4.  Conversely, Bertelsmann's and PRH's willingness to produce printing evidence—to avoid a discovery dispute—is not a concession of relevance and, in any event, the relevance bar for the admission of evidence at trial is higher than the relevance bar for discovery.[2]

Despite the absence of any printing-industry-related claims, the government's proposed deposition designations and trial exhibits demonstrate that it intends to devote many hours of trial time to printing industry competitive dynamics.  The government's proposed deposition designations include more than 500 lines of testimony on the issue from over a half-dozen parties and nonparties.  Schiller Decl. ¶ 14.  Those designations include testimony about the inadequate printing capacity in the United States, printers' delays in fulfilling publishers' orders, the

---

[2] *See Almonte v. Hines*, 2016 WL 6834015, at *1 (S.D.N.Y. Nov. 18, 2016) ("Even after the December 2015 amendments to the Federal Rules of Civil Procedure, the quantum of relevance necessary to warrant discovery is still lower than the quantum of relevance necessary for admissibility at trial.").

resulting difficulty publishers have in keeping books in stock, and speculation about whether

Bertelsmann Printing Group gives preferential treatment to printing orders from Penguin

Random House. *See id.* If the government's designations on these irrelevant topics are admitted,

Defendants' counter-designations—necessary to rebut the government's selective designations—

will require more than 300 additional lines of testimony. *Id.* ¶ 15. And these estimates do not

even include the testimony about printing that the government might try to elicit from live

witnesses. The government should not be permitted to waste valuable trial time by injecting

hours of irrelevant evidence into trial.

## II. THE GOVERNMENT MAY NOT RELY ON THEORIES BASED ON EVIDENCE IT REFUSED TO PRODUCE

Even if the government had asserted a theory of harm based on the availability of printing

services in its Complaint, its refusal to produce printing-market-related documents in discovery

should preclude it from introducing evidence in support of that theory at trial.

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is

not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at

a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

This "automatic" sanction applies "to material that should have been provided in discovery

responses but was not." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 2289.1 (3d ed. 2022); *see* Fed. R. Civ. P. 37 advisory committee's notes (1993)

(Rule 37(c) "provides a self-executing sanction"). Courts routinely apply Rule 37 to bar a party

from introducing evidence it failed to produce in discovery. *See, e.g.*, *McNair v. District of*

*Columbia*, 325 F.R.D. 20, 22 (D.D.C. 2018); *Norden v. Samper*, 503 F. Supp. 2d 130, 160

(D.D.C. 2007); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005);

*Sinco, Inc. v. Metro-N. Commuter R.R. Co.*, 133 F. Supp. 2d 308, 311 n.3 (S.D.N.Y. 2001).

Rule 37(c) not only forbids a party from using information it failed to disclose, it also authorizes "other appropriate sanctions," expressly including an order "prohibiting the . . . party from supporting . . . designated claims . . . or from introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); *see* Fed. R. Civ. P. 37(c)(1)(C). The government's failure to produce information relevant to any theory of printing-related harm should preclude the government from asserting that theory at all. The government had the benefit of information in its possession about printing-industry conditions when it drafted its Complaint, crafted its discovery requests, and conducted its depositions in this action. Its trial strategy—including identification of exhibits and designation of deposition testimony—is clearly informed by its knowledge of the printing market. That same information would be relevant to Defendants' responsive argument at trial that, for example, all publishers have equal and adequate access to printing on competitive terms, and that the merger will not affect the availability of printing or the terms of access. Yet the government denied Defendants access to that information. The government "cannot evade [Defendants] on this issue throughout the course of discovery and then present it to the Court for the first time" at trial. *Hollingsworth v. Chateau Bu-De, LLC*, 987 F. Supp. 2d 629, 642 (D. Md. 2013); *see Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 595 F.3d 1203, 1208, 1211–13 (11th Cir. 2010) (trial court did not abuse discretion in excluding evidence at trial to support theories not disclosed in discovery responses).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court issue an order excluding evidence and argument concerning Bertelsmann's printing capabilities, publishers' access to printing, and other printing-market conditions from trial.

**Local Rule 7(m) Certification**

Pursuant to Local Rule 7(m), the undersigned counsel for Defendants has conferred with the government.  The government will oppose this Motion.

Dated: July 8, 2022                    Respectfully submitted,


                                       By:   */s/ Daniel M. Petrocelli*

                                       Daniel M. Petrocelli (appearing *pro hac vice*)
                                       M. Randall Oppenheimer (appearing *pro hac vice*)
                                       **O'MELVENY & MYERS LLP**
                                       1999 Avenue of the Stars
                                       Los Angeles, CA 90067
                                       Telephone: (310) 553-6700
                                       dpetrocelli@omm.com
                                       roppenheimer@omm.com

                                       Andrew J. Frackman (appearing *pro hac vice*)
                                       Abby F. Rudzin (appearing *pro hac vice*)
                                       **O'MELVENY & MYERS LLP**
                                       7 Times Square
                                       New York, NY 10026
                                       Telephone: (212) 326-2000
                                       afrackman@omm.com
                                       arudzin@omm.com

                                       Jonathan D. Hacker (D.C. Bar No. 456553)
                                       Julia Schiller (D.C. Bar No. 986369)
                                       **O'MELVENY & MYERS LLP**
                                       1625 Eye Street, NW
                                       Washington, D.C. 20006
                                       Telephone: (202) 383-5300
                                       jhacker@omm.com
                                       jschiller@omm.com

                                       Deborah L. Feinstein (D.C. Bar No. 412109)
                                       Jason Ewart (D.C. Bar No. 484126)
                                       **ARNOLD & PORTER**
                                       601 Massachusetts Ave., NW
                                       Washington, D.C. 20001
                                       Telephone: (202) 942-5000
                                       debbie.feinstein@arnoldporter.com
                                       jason.ewart@arnoldporter.com

                                       *Attorneys for Defendants Bertelsmann SE & Co.
                                       KGaA and Penguin Random House LLC*

By:   */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing *pro hac vice*)
Jessica K. Delbaum (appearing *pro hac vice*)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (D.C. Bar No. 500031)
Michael Mitchell (D.C. Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (D.C. Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants Paramount Global (f/k/a ViacomCBS Inc.) and Simon & Schuster, Inc.*