# Exhibit A

```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


  United States of America,    ) Civil Action
  et al.,                      ) No. 16-CV-1493
                               )
              Plaintiffs,      ) Bench Trial
                               ) AFTERNOON SESSION
  vs.                          ) Washington, DC
                               ) Monday, Nov. 28, 2016
  Anthem, Inc. and Cigna       ) Time:  2:17 p.m.
  Corporation,                 )
                               )
              Defendants.      )
  _____

                    TRANSCRIPT OF BENCH TRIAL
                         HELD BEFORE
              THE HONORABLE JUDGE AMY BERMAN JACKSON
                   UNITED STATES DISTRICT JUDGE
  _____

  A P P E A R A N C E S

  For the Plaintiffs:
  United States            Jon B. Jacobs
                           Scott Ivan Fitzgerald
                           Peter Schwingler
                           U.S. DEPARTMENT OF JUSTICE
                              Antitrust Division
                              450 Fifth Street, NW
                              Suite 4100
                              Washington, DC 20530
                              (202) 598-8916

  District of Columbia     Catherine Anne Jackson
                              OFFICE OF ATTORNEY GENERAL
                              441 4th Street, NW
                              Suite 630 South
                              Washington, DC 20001

  (CONTINUED ON NEXT PAGE)

  Proceedings reported by machine shorthand, transcript
  produced by computer-aided transcription.
```

```
 1     A P P E A R A N C E S (CONTINUED):

 2     State of Colorado         Abigail Leah Smith
                                 ATTORNEY GENERAL'S OFFICE
 3                                   Consumer Protection Section
                                     1300 Broadway
 4                                   Denver, CO 80203

 5     For the Defendant:
       Anthem, Inc.              Christopher M. Curran
 6                               John Mark Gidley
                                 Heather Burke
 7                               Robert Milne
                                 Martin Toto
 8                               Michael Hamburger
                                     WHITE & CASE LLP
 9                                   701 13th Street, NW
                                     Washington, DC 20005-3807
10                                   (202) 626-3600

11     Cigna Corporation         Charles F Rule
                                 Daniel J. Howley
12                                   Paul, Weiss, Rifkind,
                                     Wharton & Garrison LLP
13                                   2001 K Street, NW
                                     Washington, DC 20006-1047
14                                   (202) 223-7300

15
       _____
16
       Court Reporter:           Lisa A. Moreira, RDR, CRR
17                               Official Court Reporter
                                 United States Courthouse, Room 6718
18                               333 Constitution Avenue, NW
                                 Washington, DC  20001
19                               202-354-3267

20

21

22

23

24

25
```

1  A.  So remember we're trying to understand how often they're
2  1 and 2.  You could use just the market shares alone to get
3  an estimate of that.  I gave you an example of that earlier.
4  But it would be nicer to incorporate the win/loss data that
5  gives us deeper insight into how often they're 1 and 2.
6       In principle, both methods would allow us to
7  incorporate that win/loss data, but as it turns out, the
8  statistical requirements for incorporating that into the
9  merger sim could not be met with the available data.  So I'm
10 only going to incorporate the win/loss measures in the UPP
11 analysis.
12      I hope that's clear.
13      THE COURT:  Okay.
14      THE WITNESS:  It is technical.  It's unavoidable.
15 Q.  Perhaps one minor additional technical point.
16 A.  Okay.
17 Q.  Is there a term used for the type of auction model you
18 used in this case?
19 A.  Yes.  So the model I'm using is what's called a sealed
20 bid second price auction, and without getting too much into
21 the weeds, it's well known in auction theory that different
22 types of auctions tend to generate very similar results from
23 the seller or the buyer, depending on whether you're selling
24 an object or buying an object.  The second price sealed bid
25 auction is just a lot easier to use with the data, but it

1    can be used -- the results can be used to approximate a wide
2    number of auction results.
3              THE COURT:  When using an auction model, you are
4    assuming that the decision-maker's decision is 100 percent
5    price-driven?
6              THE WITNESS:  Not at all.
7              THE COURT:  Okay.  If you call it an auction,
8    you're just talking about a choice that winnows itself down
9    to bidders, but you're not saying it ends up being their
10   choice based on price?
11             THE WITNESS:  That's correct.
12             THE COURT:  Okay.
13             THE WITNESS:  The choice is based on the value
14   that's being delivered.
15             THE COURT:  Okay.
16             THE WITNESS:  And we know that the employers and
17   their consultants score each of the bids.
18             THE COURT:  Right.
19             THE WITNESS:  And they come down with a bottom
20   line score that counts a lot of different factors.
21             Think of the auction as based on the highest score
22   being delivered.
23             THE COURT:  Okay.
24   Q.   Let's talk about your results.  Could you walk us
25   through this slide and help us understand what you did and