UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 *Plaintiff,*<br><br>       v.<br><br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC,<br><br>                 *Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

**UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF
<u>PENGUIN RANDOM HOUSE'S ANNOUNCED BIDDING POLICY</u>**

The United States moved *in limine* to preclude evidence of statements by Penguin Random House ("PRH") about its Announced Bidding Policy to allow PRH imprints and legacy Simon & Schuster ("S&S") imprints to bid against one another to acquire books, because it is an ephemeral and ultimately unenforceable promise. Therefore, it is irrelevant and threatens to waste time and cause confusion at trial. *See* Dkt. 95. In their Opposition, Defendants assert that the Court should consider "all evidence and argument from both sides" concerning the credibility of their post-merger promise and its effect, if any, on competition in the relevant markets. *See* Dkt. 104 at 3. But Defendants' Opposition only confirms that doing so would be a waste of valuable trial time, as the Announced Bidding Policy is unenforceable and economically irrational, and is ultimately irrelevant to the Court's analysis of the actual transaction at issue.

1

Therefore, it should be excluded as irrelevant under Fed. R. Evid. 401 and 402, and under Fed. R. Evid. 403 because it will waste the limited trial time on a side show about the credibility of Defendants' post-acquisition promise and the credibility of those making such promises.

## ARGUMENT

### I. Defendants' Opposition Confirms That the Announced Bidding Policy Is Unenforceable.

PRH's Announced Bidding Policy is entirely unenforceable and can be rescinded without legal remedy the day after the merger. The law does not provide remedies for breach of a unilateral promise made to oneself. Restatement (Second) of Contracts § 9 (1981). Significantly, Defendants do not dispute that the Announced Bidding Policy is not legally binding. The only argument Defendants put forth in their Opposition regarding enforceability of the Announced Bidding Policy is a passing remark that if PRH were to rescind the policy after the merger, it would damage its relationships with the literary agents who decide whether to invite PRH imprints to bid on their clients' books. Dkt. 104 at 4. But this is not real enforcement. It is not plausible that the myriad agents the companies deal with would have any way of collectively disciplining the combined PRH/S&S if it were to thwart its announced policy, that is if the agents could even detect divergence from the policy unless it was publicized. Indeed, if those agents were to curb how often they submitted their client's books to the biggest U.S. publisher, with its approximately 150 imprints and near 50% market share post-merger, they and their clients would suffer an even greater loss of competitive options for publishing their books.

**II.     Case Law Cited by Defendants Supports the Notion That an Unenforceable Corporate Promise Should Be Excluded.**

The United States is not aware of any merger cases—and Defendants cite none—where the Court has given any credit to a legally unenforceable promise such as the Announced Bidding Policy and found it meaningful evidence. First, several of the cases that Defendants point to concern <u>legally binding</u> commitments, most of which involve structural change through the permanent divestiture of assets. *See FTC v. Arch Coal, Inc.*, No. 1:04-cv-00534-JDB, Slip. Op. (D.D.C. July 7, 2004) (structural change through divestiture of assets); *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179 (S.D.N.Y. 2020) (relying on a structural divestiture to support entry); *FTC v. Atl. Richfield Co.*, 549 F.2d 289 (4th Cir. 1977) (agreement to divest assets); *FTC v. Butterworth Health Corp.*, 946 F. Supp. 1285 (W.D. Mich. 1996), aff'd 121 F.3d 708 (6th Cir. 1997) (multi-part commitment made binding by consent decree). In cases where a company signs an agreement to permanently divest assets, or in rare case agrees to a behavioral remedy via consent decree, there may be some real, relevant impact on future competition to be considered.

The remaining cases that Defendants cite involve legally unenforceable promises, which unsurprisingly carry no weight with any Court. *See United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 82 (D.D.C. 2011) (rejecting the argument that a pledge to maintain prices could rebut the likelihood of anticompetitive effects); *United States v. Pennzoil Co.*, 252 F. Supp. 962, 984 (W.D. Pa. 1965) (rejecting as not credible the acquiring company's stated intention that it would maintain the to-be-acquired company as a separate entity and permit it to continue to function in the future as it had been doing). As Courts routinely find these unenforceable unilateral promises to be not credible and give them no weight in merger cases, there is simply no reason to waste time on it here. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1206

(D.C. Cir. 1991) (courts are "to generalize from their experience . . . in order to minimize unnecessary inquiries into factual minutiae").

Here, unlike every one of the above cases where a post-merger promise was given credit, and like every one where the promise was rejected, there is no legally binding commitment in front of the Court. Thus there is no way to trust that the Announced Bidding Policy would be implemented and kept in place, as is obviously necessary for it to have any meaningful impact on competition.[1]

### III. Defendants' Opposition Fails to Absolve Concerns That the Announced Bidding Policy Was a Litigation-Focused Tactical Stunt.

As discussed in the underlying Motion, the Announced Bidding Policy is likely no more than a strategic play to quiet competitive concerns while this case is pending. In an attempt to argue that the Announced Bidding Policy is not merely an empty gesture for advocacy purposes, and should therefore be given some weight, Defendants repeatedly rely on the fact that the future policy was announced before the United States filed its Complaint. Dkt. 104 at 2, 3–4, 6. But PRH publicized the Announced Bidding Policy ten months after the Transaction was signed, in reaction to competitive concerns from agents and authors, and at a time when the Department of Justice's Antitrust Division was nearing the end of its merger investigation and PRH and S&S were advocating against the filing of this lawsuit. This timeline strongly suggests that the Announced Bidding Policy was made with an intent to avoid—or otherwise help Defendants' position in—this litigation, regardless of the fact that it was unveiled before the Complaint was filed.

---

[1] Even if the Announced Bidding Policy were made to be binding, the United States would still have objections, but that is not the situation here and so it is not ripe for review.

## IV. Defendants' Opposition Confirms Several Points About the Economic Irrationality of the Announced Bidding Policy.

Defendants' Opposition also confirms what was already obvious, that implementation of the Announced Bidding Policy would be against PRH's economic self-interest, thus rendering it an empty promise that loses its motivating principle if this merger were permitted. Defendants reference their current and longstanding imprint competition policy in an effort to somehow justify the logic behind the Announced Bidding Policy. But there is no connection between the two. The incumbent policy follows basic economic principles—PRH encourages bidding competition between its imprints "until advised by the agent running the auction that only PRH imprints remain." Dkt. 104 at 2. At the point where PRH's imprints are the last imprints interested in acquiring the book, PRH stops bidding against itself. It follows that "allowing agents to pursue multiple imprints for a given book increases the likelihood that the author will find the best home for the book, thereby also increasing the likelihood that a PRH imprint will acquire the book." Dkt. 104 at 5. This is all well and good for explaining why the current imprint bidding policy makes economic sense. But it also helps explain why the contrasting Announced Bidding Policy, under which co-owned imprints would potentially bid each other up to PRH's detriment even after competitors had stopped bidding, has no economic bearing. After only PRH-owned imprints remain, intra-firm bidding clearly has no impact on "the likelihood that a PRH imprint will acquire the book"—rather, such bidding at that point would do nothing but make the PRH imprint pay more money to acquire it. As such, the Announced Bidding Policy is entirely irrational and is unlikely to be implemented or kept in place for long.

Defendants' Opposition also notes the current policy of "house bids" at PRH, by which imprints in the same division coordinate a combined bid rather than compete with one another, cutting out any supposed benefits of intra-firm bidding in that context. Dkt. 104 at 3, n. 1. This

5

policy will undoubtedly continue at the merged company, and could easily be the wave of the future for PRH and S&S imprints, thus ending price competition between them at any stage of a book acquisition.

V. **Debate Over the Viability and Potential Effect of the Announced Bidding Policy Would Waste Time and Confuse the Issues at Trial.**

Significantly, Defendants do not in their Opposition disagree with the United States' assertion that the topic of the Announced Bidding Policy carries a danger of wasting time and causing confusion at trial. In doing so, Defendants ignore the bulk of the United States' Fed. R. Evid. 403 argument.[2] While Defendants argue that the "unfair prejudice" part of Rule 403 has limited application to bench trials, they ignore the applicability of the other parts of the Rule raised in the United States' Motion. *See United States v. Fitzsimons*, No. 21-CR-158, 2022 WL 1658846, at *5 (D.D.C. May 24, 2022) (finding in a Rule 403 balancing test that the risks of wasting time and complicating the presentation of evidence have applicability in the context of a bench trial). As illustrated above and in the underlying Motion, hearing evidence in these cases regarding merging parties' promises—especially when such promises are unilaterally made and unenforceable—is a waste of time and is likely to confuse testimony. This topic is of no probative value, and would be especially wasteful given the narrow window of trial time in the present case created by Defendants' urgency to achieve their corporate goals.

The Court should focus on law and undisputed fact in ruling on this motion, yet Defendants insist on encouraging the court to "trust us." If the Court determines it would prefer to hear evidence on these promises, the United States will be ready to present their case regarding the credibility and trustworthiness of those promises and the parties' commitment to

---

[2] Most of Defendants' Opposition addresses only the United States' relevance argument, though mistakenly citing Fed. R. Evid. 403, rather than Fed. R. Evid. 401 and 402.

them. But respectfully, these debates are a distraction from what the Court should be focused on: i.e., the structure of the market as impacted by the combination of these two major players.

## CONCLUSION

PRH's Announced Bidding Policy is an ephemeral, unenforceable promise that carries no weight in the consideration of the issues before the Court. Evidence regarding that promise is therefore irrelevant, and threatens to waste time and confuse the issues at trial. For these reasons, the United States requests that the Court grant its Motion.

Respectfully submitted,

Dated: July 15, 2022

*/s/ John R. Read*
John R. Read (DC Bar #419373)
Jonathan S. Goldsmith (DC Bar #1044315)

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Fax: (202) 514-7308
Email: john.read@usdoj.gov

*Counsel for Plaintiff United States of America*

## CERTIFICATE OF SERVICE

      I certify that on July 15, 2022, I served the foregoing and all accompanying documents on the below individuals by electronic mail:

<u>For Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC</u>:

Daniel M. Petrocelli (dpetrocelli@omm.com)
M. Randall Oppenheimer (roppenheimer@omm.com)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Andrew J. Frackman (afrackman@omm.com)
Abby F. Rudzin (arudzin@omm.com)
Eamonn W. Campbell (ecampbell@omm.com)
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Julia Schiller (jschiller@omm.com)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Debbie Feinstein (Debbie.Feinstein@arnoldporter.com)
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001

<u>For Defendants ViacomCBS Inc. and Simon & Schuster, Inc.</u>:

Stephen Fishbein (sfishbein@shearman.com)
Jessica Delbaum (jdelbaum@shearman.com)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Ryan Shores (ryan.shores@shearman.com)
Michael Mitchell (michael.mitchell@shearman.com)
Shearman & Sterling LLP
401 9th Street NW, Suite 800
Washington, DC 20004

Rachel Mossman (rachel.mossman@shearman.com)
Shearman & Sterling LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201

Dated: July 15, 2022

                                                            <u>/s/ Ihan Kim</u>
                                                            Ihan Kim
                                                            U.S. Department of Justice
                                                            Antitrust Division
                                                            450 Fifth Street, NW, Suite 4000
                                                            Washington, DC 20530
                                                            Phone: 202-532-4283
                                                            E-mail: ihan.kim@usdoj.gov

                                                            *Counsel for Plaintiff United States of America*