UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *Plaintiff,*<br><br>v.<br><br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC.<br><br>    *Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO EXCLUDE USE OF PRINTING-RELATED EVIDENCE
TO ESTABLISH ALLEGED ANTICOMPETITIVE EFFECTS**

  Defendants seek an order precluding the government from introducing evidence or argument of Bertelsmann's printing capabilities and printing-market conditions in general, because such evidence is not relevant to any claim the government asserted, and because the government refused to produce documents in its possession about printing-market conditions. The government's response confirms both points. As to the government's claims, the complaint is devoid of any vertical theory of foreclosure or withholding, yet the government's response states explicitly that the government's now plans to pursue just such a theory at trial: "Bertelsmann is in a unique position in the United States as the only major publisher with printing assets and the ability to supply or withhold printing services to both its Big 5 competitors and many smaller publishers. The ability to control a scarce asset that is essential to the publication of books is a significant competitive advantage to PRH, and one that its competitors worry it will exploit post-merger." Dkt. 107-1 at 6. To be clear, the government's

1

brief in opposition to Defendants' motion in limine is the first time—barely more than two weeks before trial—the government has asserted any withholding-access theory of harm.

The government now plans to assert such a theory despite having denied Defendants any discovery of documents in its possession that would be directly relevant to the availability of printing services and whether Bertelsmann would have a profit incentive to withhold access to printing, as the government now wants to show. The government says it had no obligation to produce such documents because it does not intend to rely on them, but the government misses the point: by refusing to produce the documents, the government also unilaterally determined that *Defendants* could not rely on them either, even if they would undermine the government's newly minted withholding theories. The government also asserts that the documents were all legally protected from disclosure, but with respect to *other* investigative files, the government was willing to discuss what materials were exempt from those protections. It refused to do the same for materials in its printing investigation files.

At bottom, the government's brief confirms both that it seeks to assert a new withholding theory of harm, and that it withheld documents relevant to that theory without any reasonable justification. Had Defendants known from the outset that the government intended to claim at trial that the merged entity could profitably harm rivals and obstruct new entry by withholding access to printing-based theories of harm, Defendants would have conducted discovery and prepared for trial very differently to defend against that claim. The government accordingly should be precluded from presenting evidence or argument about the availability and withholding of printing services at trial.

## BACKGROUND

The government's opposition to Defendants' motion claims Defendants "mischaracterized" the discovery record, Dkt. 107-1 at 3, but the government's own recitation of facts only confirms Defendants' key points:

- The government's complaint in this action alleges no printing-related theories of harm. *See* Dkt. 107-1 at 4-5.

- The government has in its possession printing-related evidence it obtained during an investigation into the merger of two printing facilities: Quad/Graphics, Inc., and LSC Communications. Dkt. 107-1 at 8; Dkt. 107-2 at 4 (Matelson Decl. ¶ 7).

- But when Defendants sought printing-related evidence from the government's prior investigation files, the government refused to produce it unless Defendants first identified what they wanted from those files, without Defendants ever having seen the files' contents. Dkt. 107-2 at 4-5 (Matelson Decl. ¶¶ 7-8).

The government contends that the material Defendants sought is all subject to various legal protections against disclosure. Dkt. 107-2 at 4 (Matelson Decl. ¶ 7). Yet the government admits that despite those protections, it was able to produce certain *exempt* documents from its other publishing industry merger investigations (the 2021 HarperCollins-Houghton Mifflin Harcourt merger and the 2021 Hachette-Workman merger), Dkt. 107-1 at 11, after discussing with Defendants what categories of documents from those investigation files it agreed were not protected. Supplemental Declaration of Julia Schiller ¶ 2. The government simply refused to engage in the same discussions with respect to the documents from its Quad/Graphics-LSC merger investigation, making no effort whatsoever to identify which documents it believed it could produce. *Id.* ¶ 3. To the contrary, it wrongly shifted the burden to *Defendants* to somehow identify which documents were exempt, even though Defendants of course had no way to know what documents were in the government's files. *Id.* Defendants reminded the government that the obligation to identify documents responsive to Defendants' request was the *government's,* not Defendants'. *Id.* ¶ 4.

3

# ARGUMENT

## I. PRINTING-RELATED EVIDENCE IS NOT RELEVANT

Evidence related to Bertelsmann's printing capabilities and general industry access to printing does not concern a "fact [] of consequence" to determination of this action, and must therefore be excluded. *See* Fed. R. Evid. 401, 402. It is true that the government's complaint in this action *mentions* printing. Barely. The complaint's brief references to printing are just background information identifying Bertelsmann Printing Group as a supplier of book printing services and a subsidiary of Bertelsmann (Dkt. 1 at 8 (Compl. ¶ 17)), listing "printers" among the entities that participate in bringing books to market (*id.* at 9 (Compl. ¶ 22)), and noting that printing is one of the many services publishers provide to authors (*id.* at 9, 13 (Compl. ¶¶ 23, 33)). There are zero allegations even hinting that Bertelsmann would have a profit incentive to withhold access to its printing services as a means of hindering rivals and obstructing entry by new rivals. *Compare* Dkt. 1 (Compl.) *with* Dkt. 107-1 at 6-7.

Indeed, the government *admits* that its complaint does not "target" the printing industry and contains no "vertical" claim about withholding printing access, but its opposition brief is perfectly clear about its intent to shoehorn that claim into trial. Dkt. 107-1 at 6-7. It expressly argues that printing-market evidence is relevant because it will seek to prove at trial "the ability to supply or withhold printing services" is a "scarce asset" that gives PRH a "significant competitive advantage," that "PRH could favor the printing of its own books, to the potential disadvantage of external printing clients of the Bertelsmann Printing Group," and that "competitors worry it will exploit" printing access to their detriment. *Id.* at 6.

Whatever label the government now wants to apply, a claim that a combined entity with control over access to an input will use it (intentionally or otherwise) to obstruct expansion and entry by rivals is a classic vertical theory. *See* U.S. Dep't of Justice & Fed. Trade Comm'n,

4

*Vertical Merger Guidelines* § 4 (2020). No such theory appears anywhere in the complaint—not as a distinct claim, and not even as a factual allegation about the mechanism by which the merger would be likely to harm competition. The complaint does not even allege—as the government now says it will argue at trial—that printing capacity is stretched thin and thus rivals will have difficulty competing, even if they continue to have equal access to printing. Litigating such an allegation would require extensive discovery into market conditions, printing demand, costs, publication timing requirements, and so on. But because the government did not assert any such theory until its response brief on this motion, such issues were not adequately developed during discovery. Evidence related to the theory of harm from unequal or inadequate access to printing is therefore inadmissible. *See Beyene v. Hilton Hotels Corp.*, 2012 WL 13214662, at *3 (D.D.C. Nov. 13, 2012) (granting motion *in limine* to exclude evidence related to negligent hiring claim that was no longer part of complaint).

## II. THE GOVERNMENT'S STATUTORY AND PROTECTIVE ORDER ARGUMENTS ARE A RED HERRING

Defendants do not dispute that certain legal protections may apply to some of the printing-related materials the government refused to produce. But it was inappropriate for the government to hide behind those protections without at least engaging in discussions with Defendants about what documents might be exempt—especially since the government now claims printing-related evidence is so crucial to its trial plans.[1] Defendants have no access to the government's files, so it meant nothing when the government invited Defendants to identify for

---

[1] It was also inappropriate for the government to hide behind the protective order entered in the Quad/Graphics litigation. As the government admits, that protective order does not bar disclosure of the protected materials entirely—it just requires the producing parties' consent. Dkt. 107-2 at 4 (Matelson Decl. ¶ 7). The government never even offered to try to obtain that consent. Suppl. Schiller Decl. ¶ 5.

5

themselves which documents from those files are exempt from legal protections. It was clear from the start that the government was entirely capable of reviewing its own files to identify which materials are exempt—it did exactly that when it produced documents from its HarperCollins/Houghton Mifflin Harcourt and Hachette/Workman merger investigation files. It could and should have done the same for its Quad/Graphics merger files.

### III. THE SANCTION DEFENDANTS SEEK IS APPROPRIATE

The government contends the order Defendants seek is inappropriate under the Federal Rules. *See* Dkt. 107-1 at 10. But the Court has discretion to prevent prejudice by precluding the government from pursuing the theory on which it refused to allow discovery. "District courts have considerable discretion in managing discovery . . . and possess broad discretion to impose sanctions for discovery violations under Rule 37." *Wilson v. On the Rise Enters., LLC*, 2019 WL 399821, at *3 (D.D.C. Jan. 30, 2019) (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015)); *see also Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 689 (D.C. Cir. 1987) (review of discovery sanctions "limited by the district court's considerable discretion in such matters").[2]

"The central requirement of Rule 37 is that any sanction must be just." *Wilson*, 2019 WL 399821, at *3 (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996)). The sanction Defendants request is just. It is "proportional" to the government's conduct, in that it serves only to remedy prejudice resulting to Defendants from the government's pursuit of

---

[2] The government suggests that Defendants should have more persistently pursued the documents the government withheld. But even the government's own recitation of facts demonstrates that Defendants sent at least *four* letters and emails on the subject and held at least two meet-and-confer calls. Dkt. 107-2 at 3-5, 22 (Matelson Decl. ¶¶ 6-8 & Attachment B).

Defendants saw no need to move to compel production of information that bore no apparent connection to the government's claims. It was only when the government served its proposed trial exhibit list and deposition designations that Defendants understood that the government intended to pursue theories of harm based on printing access and withholding at trial.

belated theories of harm on subjects for which it refused to produce probative evidence. *See Bonds*, 93 F.3d at 808.  The government will face minimal, if any, prejudice from the order Defendants seek, considering that after a lengthy pre-trial investigation, the government decided to omit any claim or factual allegation that unequal or inadequate access to printing capacity would preclude expansion and entry by rivals.  *See id*.

## CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* to exclude evidence and argument concerning Bertelsmann's printing capabilities and printing market conditions generally should be granted.

Dated: July 15, 2022 Respectfully submitted,

By:   */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli (appearing *pro hac vice*)
M. Randall Oppenheimer (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
roppenheimer@omm.com

Andrew J. Frackman (appearing *pro hac vice*)
Abby F. Rudzin (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10026
Telephone: (212) 326-2000
afrackman@omm.com
arudzin@omm.com

Jonathan D. Hacker (D.C. Bar No. 456553)
Julia Schiller (D.C. Bar No. 986369)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
jhacker@omm.com
jschiller@omm.com

Deborah L. Feinstein (D.C. Bar No. 412109)
Jason Ewart (D.C. Bar No. 484126)
**ARNOLD & PORTER**
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
debbie.feinstein@arnoldporter.com
jason.ewart@arnoldporter.com

*Attorneys for Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC*

By:   */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing *pro hac vice*)
Jessica K. Delbaum (appearing *pro hac vice*)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (D.C. Bar No. 500031)
Michael Mitchell (D.C. Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (D.C. Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants Paramount Global (f/k/a ViacomCBS Inc.) and Simon & Schuster, Inc.*