UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　*Plaintiff*,<br><br>　v.<br><br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC,<br>　　　　　　*Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE USE OF PRINTING-RELATED EVIDENCE**

## TABLE OF CONTENTS

**FACTUAL BACKGROUND** ................................................................................................2

**ARGUMENT** ..................................................................................................................4

    **I.**     **Evidence Regarding Bertelsmann's Printing Capacity Is Relevant**........................4

    **II.**    **Defendants' Mischaracterization of the Discovery History and Their Failure to Seek Judicial Relief Preclude Them from Seeking to Bar the Introduction of Relevant Evidence.**................................................................................................6

        A.   The History of Request 13 .......................................................................7

        B.   Fed. R. Civ. P. 37(c)(1) Is Inapplicable ...................................................8

        C.   The United States Produced Recent Investigative Files That Are Relevant to the Current State of the Publishing Industry..................................................9

**CONCLUSION** ..............................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Carnathan v. Ohio Nat. Life Ins. Co.*, 1:06-CV-999, 2008 WL 4000392 (M.D. Pa. Aug. 25, 2008) ...................................................................................................................................8

*Collins v. Diversified Consultants Inc.*, 15-cv-02115-RBJ-NYW, 2017 WL 8942568 (D. Colo. Feb. 1, 2017) ..............................................................................................................8

*Lankford v. Taylor*, CV-17-02797-PHX-DWL, 2021 WL 1515504 (D. Ariz. Apr. 16, 2021) .......8

*United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603 (D.D.C. 1979) ..............................................7

**Statutes**

15. U.S.C. § 18a(h) .................................................................................................................1, 7

15 U.S.C. §1313(c) ..................................................................................................................1, 7

**Rule**

Fed. R. Civ. P. 37(c)(1)..................................................................................................................8

Defendants seek to exclude the introduction of evidence regarding Bertelsmann SE & Co. KGaA's ("Bertelsmann's") book printing business and the printing of trade books more generally, asserting that the United States should be barred from introducing such evidence because it objected to producing files from a 2019 investigation into a separate proposed merger of printers. *See* Dkt. 99. The United States did not use materials from that prior investigation in this case. To be clear: during discovery in *this* case, the United States produced its investigative file for this merger—including all materials related to printing—to the Defendants.

But Defendants' quibble is about files from an earlier, separate matter. As described in the accompanying Declaration and as relayed to the Defendants, the United States is prohibited from producing materials from the prior, separate matter to the Defendants. *See* Exh. A, Declaration of Bennett Matelson ("Matelson Dec."). The Hart-Scott-Rodino Act ("HSR Act"), the Antitrust Civil Procedure Act ("ACPA"), and the protective order entered by the court in the separate matter bar our production. *See* 15 U.S.C. § 18a(h); 15 U.S.C. §1313(c). In light of that fact, the United States notified Defendants that they were free to seek the information from third parties that do not face these constraints.

Defendants' attempt to exclude relevant evidence adduced in *this* case about printing resources relies on mischaracterizations of the discovery record and seeks to exclude evidence Defendants themselves elicited that is relevant to multiple issues in this case. Those issues include, at a minimum, (1) the extent to which printing availability affects choices authors have when selling a book to publishers, (2) Defendants' claim that new entrants could quickly and easily enter the market, and (3) the extent to which existing competitors could readily expand their output. Defendants have elicited testimony from multiple third parties about their merger-related printing concerns, including the concern that a combined Penguin Random House

1

("PRH") and Simon & Schuster ("S&S") will be so dominant that it will be able to employ exclusionary tactics, such as restricting printing capacity or access to distribution networks, to make it more difficult for publishers to compete against the combined firm.

Contrary to Defendants' assertions, the United States did not categorically deny Defendants' request for materials related to its prior printing investigation. Rather, the United States made clear that it was restricted in its ability to produce investigative materials by statutory obligation and a protective order in the filed case that followed the investigation. The United States also asked Defendants to identify materials they were seeking that would not be subject to a bar on production and encouraged Defendants to seek information from third parties for what the United States was barred from producing. Defendants cannot now seek to exclude all evidence concerning printing issues in this case—none of which relates to a 2019 investigation of a proposed printer merger—by fabricating discovery failures that do not exist. For these reasons, Defendants' request to exclude printing-related evidence should be denied.

## FACTUAL BACKGROUND

PRH is the only major publisher in the United States with printing assets. Corrected Expert Report of Nicholas Hill ("May 10 Hill Report") at ¶ 51. During its investigation of this matter, the United States sought and obtained information about Bertelsmann's printing facilities and other publishers' access to printing facilities in general. *See* Defendants' Motion *in Limine*, Dkt. 99, at 2. There is only one other major trade book printer in the United States, namely LSC.

The Complaint identifies the role printing by publishers, and by Bertelsmann in particular, plays in the market for acquisition of book rights from authors. Specifically, the Complaint identifies Bertelsmann Printing Group as "a major supplier of book printing services

in the United States" and points to the role publishers of trade books have in procuring printing-related services for their authors:

> Bringing a book to market in the United States requires the participation of many different entities, including authors and their agents, publishers, printers, distributors, wholesalers, retailers, and ultimately, readers.

Compl. ¶¶ 17, 22. As the Complaint further notes, it is publishers' role to "arrange for printing and distribution of books to wholesalers and other retailers." *Id.* ¶ 23.

During discovery, the United States requested documents regarding Bertelsmann's printing services; those materials confirm that PRH is the only major publisher with printing assets. *See, e.g.,* Ex. B, PX-983 (BPRH-002729574) at 2 ("███████████████████████████████████████████████████████████████████████████████████████████████"). As noted earlier, during discovery the United States produced its investigative file—including any materials related to printing—to the Defendants.

During depositions of third-party publishers, a number of witnesses testified that they were concerned about the impact of the merger on PRH's future provision of printing and distribution services to other publishers. Both sides' experts also addressed printing in their reports. *See* May 10 Hill Report at ¶¶ 211–12; Rebuttal Expert Report of Edward A. Snyder ("June 3 Snyder Report") at ¶ 304, n.528. This evidence is plainly relevant and underscores one of the many risks occasioned by allowing this proposed merger to proceed. Such evidence should not be excluded.

## ARGUMENT

### I. Evidence Regarding Bertelsmann's Printing Capacity Is Relevant.

Bertelsmann is in a unique position in the United States as the only major publisher with printing assets and the ability to supply or withhold printing services to both its Big 5 competitors and many smaller publishers. The ability to control a scarce asset that is essential to the publication of books is a significant competitive advantage to PRH, and one that its competitors worry it will exploit post-merger.

During discovery, the heads of several Big 5 publishers and smaller publishers testified about their concerns about the impact of the merger on an essential part of book publishing: the printing of books. If there were a change in the supply chain as a result of the transfer of books from S&S to Bertelsmann's Printing Group, already stretched capacity would be further limited, and PRH could favor the printing of its own books, to the potential disadvantage of external printing clients of the Bertelsmann Printing Group.

Party and third-party witnesses also testified about the link between printer access and publishers' retention of authors. *See, e.g.,* Ex. C, ▇▇▇▇▇▇▇ (▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ testified that if ▇▇ lost access to printing capacity, that would adversely impact its ability to convince authors to publish with them and sales would fall); Ex. D, Weisberg Dep. at 155–57 (Macmillan CEO testified that ."). 

The United States intends to introduce testimony on these issues because it is relevant to the choices authors have when selling a book to publishers. Bertelsmann and PRH now want to exclude that evidence on the basis that it is "not relevant" because this case is not targeted at the

4

printing industry or a vertical claim. No such claim is necessary for evidence of Bertelsmann's significance in the printing of trade books to be relevant. Bertelsmann and PRH recognize the significance of their control of printing resources: their own documents tout that it is a huge competitive advantage in attracting authors to be the sole publisher has a printing asset in its family, specifically because it means that PRH has the ability to "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" Ex. B, PX-0983, at 2; *see also* Ex. E, PX-427 (BPRH-LIT-003947732) at 5 (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬").

There will be much testimony in this case—by both sides—concerning whether competition from other publishers can prevent the harm from the merger to authors, and whether new publishers can enter the field and overcome significant entry barriers to mitigate the effects of the merged entity's market power. Part of that competition, as PRH has stated, is publishers' ability to convince authors that they are able to timely print their books to meet demand and get them to market, and part of the challenge for any new publisher is finding a means to get its books printed at all. The inability of the publishing industry to keep up with demand for print books during the past years is well-documented. *See, e.g.,* Ex. F, McIntosh Lit. Dep. at 215 (Penguin Random House U.S. CEO Madeline McIntosh testified that "There isn't enough capacity in North America to print all the demand in the market for physical books."). PRH's attempt to call Bertelsmann's control of one of the two largest printers in the United States irrelevant to its relative strengths in acquiring books compared to its competitors is far-fetched.

5

**II.     Defendants' Mischaracterization of the Discovery History and Their Failure to Seek Judicial Relief Preclude Them from Seeking to Bar the Introduction of Relevant Evidence.**

Defendants assert that the United States should be precluded from introducing evidence about printing capacity as a sanction for failure to produce documents from a past investigation into the proposed merger between Quad/Graphics, Inc. and LSC Communications, Inc. There is no basis for a sanction here, as the United States complied with its discovery obligations, and Defendants failed to raise any concerns about compliance with those requests to this Court during discovery.

Defendants have been on notice that the United States considered printing capacity issues relevant since the pre-Complaint investigation of this case. As Defendants' Declaration in support of its motion admits, the United States during its investigation "sought and obtained information concerning Bertelsmann's ownership and operation of printing facilities, and publishers' access to printing facilities in general." Dkt. 99-1 at 1 (Schiller Decl. ¶ 2). At every stage of the case, the United States has made its interest in evidence relating to printing in the trade book industry clear: the United States sought printing-related evidence during the pre-Complaint investigation, requested further documents concerning printing from Defendants during this litigation, questioned party and third-party witnesses about printing issues, and included printing issues in Dr. Hill's expert report. Defendants' awareness that the issue was in play is made clear from the fact that they initiated questions about printing when deposing publishers—including the CEOs of Big 5 publishers HarperCollins and Macmillan—before the United States even began its questioning of those witnesses. Defendants' attempt to rely on a discovery disagreement as a basis for sanctions is unfounded.

6

A.     The History of Request 13

Defendants issued Request Number 13, asking for all documents and data "sent, received, or otherwise obtained in connection with any investigations concerning the publishing industry" by the United States since January 1, 2016. Ex. A, Matelson Dec., ¶ 4. The United States served its objections and responses to that request on February 2, 2022, noting in its objections its concerns about the overbreadth of this request and the statutory limits on production of investigative material under the Hart-Scott-Rodino Act and the Antitrust Civil Process Act.[1]  Ex. A ¶ 5.  Aware of the United States' focus on this issue early on in discovery, Defendants tried in February 2022 to get the United States to agree not to submit or rely on any evidence regarding printing in in exchange for Defendants' dropping their demand for past investigative materials. The United States made clear that it would not agree to exclude evidence regarding printing at trial; it also represented that it had not used materials from prior investigations in this litigation, and agreed that it would not use those materials in the future. *See* Ex. A ¶ 6; *see also* Dkt. 99-1 at 3 (Schiller Decl. ¶¶ 8–9).

Further back and forth between the parties occurred until mid-April, with the United States repeatedly asking for a more precise identification of non-privileged materials sought and Bertelsmann/PRH counsel refusing to produce such an identification. A meet and confer was held on April 18, with no progress toward agreement. *See* Ex. A ¶ 8.  From that point forward,

---

[1] Those statutes provide that materials submitted to the Antitrust Division are confidential and may not be disclosed in subsequent litigation, except in limited circumstances not applicable here.  *See* 15 U.S.C. §1313(c) (providing for confidentiality of investigative materials collected by the Antitrust Division under the Antitrust Civil Process Act, subject to certain exceptions); 15 U.S.C. § 18a(h) (providing for confidentiality of materials under the Hart-Scott-Rodino Act); *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 647–48 (D.D.C. 1979) (holding that the confidentiality protections of the Antitrust Civil Process Act apply unless the government puts the materials to direct use in the instant litigation).
.

Defendants' counsel took no further steps to resolve the disagreements with regard to Request 13, choosing to raise the issue again only last week, three months later and long after fact discovery closed. *See* Ex. A ¶ 9.

### B. Fed. R. Civ. P. 37(c)(1) Is Inapplicable

Fed. R. Civ. P. 37(c)(1), which Defendants rely on as the basis for their motion, does not address a failure to produce materials. Rather, Rule 37(c)(1) relates to a failure to disclose under Fed. R. Civ. P. 26(a) and a failure to supplement interrogatory responses under Fed. R. Civ. P. 26(e). It does not address the duty to produce documents in dispute under Fed. R. Civ. P. 34, which should be addressed through a motion to compel under Fed. R. Civ. P. 37(a)(3)(B).

Defendants did not file a motion to compel on this issue, and they cannot seek to remedy that now through Fed. R. Civ. P. 37(c)(1). *See, e.g., Collins v. Diversified Consultants Inc.*, 15-cv-02115-RBJ-NYW, 2017 WL 8942568, at *12 n.11 (D. Colo. Feb. 1, 2017) (finding Rule 37(c)(1) did not apply where the challenged conduct related to a document request, thus making a timely motion to compel production the appropriate remedy rather than relief under Rule 37(c)(1)); *Lankford v. Taylor,* CV-17-02797-PHX-DWL, 2021 WL 1515504, at *7 (D. Ariz. Apr. 16, 2021) (Rule 26(e) was not violated, and hence Rule 37(c)(1) sanctions were unavailable, for plaintiff's alleged failure to respond to interrogatory where defendants did not move to compel); *Carnathan v. Ohio Nat. Life Ins. Co.*, 1:06-CV-999, 2008 WL 4000392, at *2 (M.D. Pa. Aug. 25, 2008) ("While excluding relevant evidence from trial is an appropriate sanction to compel strict compliance with mandatory initial disclosures under Rule 26(a) […], it is certainly inappropriate when the party seeking the information knew there was an objection and did not pursue a motion to compel during the discovery process.") (citations and footnotes omitted).

### C. The United States Produced Recent Investigative Files That Are Relevant to the Current State of the Publishing Industry

The investigative files from the *Quad/Graphics* merger are not relevant to this case. The United States is not relying on materials from that 2019 investigation, which looked at an industry that was far broader than the one at issue here.[2] Print publishing has fundamentally changed in the years since the *Quad/Graphics* investigation. Bertelsmann itself acquired in 2020 the last remains of Quad/Graphics's book printing business after the merger with LSC fell through, and Bertelsmann would have had far more direct access to the Quad/Graphics information it seeks than any outdated investigative materials the United States could have provided, assuming the statutory and protective order bars did not apply.

Moreover, the United States produced several far more relevant investigative files to Defendants during discovery. The United States produced its entire investigative file in this case, including all materials gathered during the investigation related to printing. The United States also produced materials from multiple other investigative files, including: the 2013 Penguin-Random House merger, the ████████████████████████████████████, and the ██████████████████████████.[3] The United States did not have any other investigations that it considered to be in the "publishing industry" (defined as excluding printing and non-trade book publishing) in the relevant time period. Thus, the United States produced all the evidence that directly bears on the printing issues here.

---

[2] Specifically, the *Quad/Graphics* case addressed magazine, catalog, and book printers; trade book publishing is a subset of one of those areas, making large quantities in the file irrelevant (i.e., those relating to magazine, catalog, and non-trade book printing)).

[3] Materials from these investigations were able to be produced because the parties agreed to narrow the scope of the request for the 2013 Penguin-Random House merger to exclude materials protected by statutory confidentiality and privilege, and because the CMO explicitly addressed the production of materials from the two recent mergers. *See* Ex. A ¶ 10.

## CONCLUSION

Printer capacity issues play a central role in the trade book publishing industry, and the United States and third parties have consistently articulated the significance of those issues to this case. Defendants' attempt to raise a discovery issue less than a month before trial as a means of precluding the introduction of evidence is an attempt to prohibit the introduction of unfavorable testimony that Defendants' counsel themselves elicited from third parties. The United States made its position on the discoverability of protected investigative materials from a printing industry case several years ago clear; but instead of taking the proper route of raising the dispute months ago with the Court, Defendants apparently chose to try to "go silent" in the hope of claiming prejudice before trial. But Defendants have in fact obtained the available discovery from the United States, failed to seek any non-party discovery from printers, and waited for the eve of trial to claim prejudice. There is no prejudice and if there were, it is self-inflicted. Defendants' motion *in limine* should be denied.

Respectfully submitted,

Dated: July 13, 2022

 /s/ John R. Read
John R. Read (DC Bar #419373)
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Fax: (202) 514-7308
Email: john.read@usdoj.gov

*Counsel for Plaintiff United States of America*

## CERTIFICATE OF SERVICE

      I certify that on July 13, 2022, I served the foregoing and all accompanying documents on the below individuals by electronic mail:

<u>For Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC</u>:

Daniel M. Petrocelli (dpetrocelli@omm.com)
M. Randall Oppenheimer (roppenheimer@omm.com)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Andrew J. Frackman (afrackman@omm.com)
Abby F. Rudzin (arudzin@omm.com)
Eamonn W. Campbell (ecampbell@omm.com)
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Julia Schiller (jschiller@omm.com)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Debbie Feinstein (Debbie.Feinstein@arnoldporter.com)
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001

<u>For Defendants ViacomCBS Inc. and Simon & Schuster, Inc.</u>:

Stephen Fishbein (sfishbein@shearman.com)
Jessica Delbaum (jdelbaum@shearman.com)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Ryan Shores (ryan.shores@shearman.com)
Michael Mitchell (michael.mitchell@shearman.com)
Shearman & Sterling LLP
401 9th Street NW, Suite 800
Washington, DC 20004

Rachel Mossman (rachel.mossman@shearman.com)
Shearman & Sterling LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201

Dated: July 13, 2022

      */s/ Ihan Kim*
Ihan Kim
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Phone: 202-532-4283
E-mail: ihan.kim@usdoj.gov

*Counsel for Plaintiff United States of America*