UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Plaintiff,*<br><br>  v.<br><br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC,<br><br>      *Defendants*. | **FILED UNDER SEAL**<br><br>Civil Action No. 1:21-cv-02886-FYP |

**UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY FROM JENNIFER RUDOLPH WALSH**

  The United States moves the Court to exclude the expert testimony of Defendants' rebuttal expert Jennifer Rudolph Walsh under Federal Rule of Evidence 702. Ms. Walsh was an agent at a literary agency for thirty years before leaving her literary agency in 2019 to start a different career. Her education is limited to a bachelor's degree in Literature. Ms. Walsh's report, which she asserts is a rebuttal to the report of the United States' economics expert Nicholas Hill, is a lengthy description of the publishing industry taken from her memories as an agent; after a twenty-six page description of her understanding of the book acquisition process and what she believes motivates its participants based solely on her experience in one part of the industry, she provides ten pages of unfounded conclusions (citing no record evidence) about the impact of the merger, offering the ultimate opinion that "the merger will not adversely impact competition in the acquisition of books by publishers." Ms. Walsh is not an economist, has never served as an expert, has no experience as a publisher acquiring books, has conducted no analysis of the publishing industry as a whole, and has provided no references to the record in support of

her conclusions. Ms. Walsh's purported "expert" opinion testimony should be excluded because she is not qualified to provide such testimony and because her testimony on such matters is without foundation and therefore completely unreliable. At most, Ms. Walsh's testimony should be limited to her understanding of the operation of the publishing industry up to her 2019 retirement along with any relevant lay opinions that the Court may find useful pursuant to Federal Rule of Evidence 701. Ms. Walsh has no relevant expert testimony to give in this matter and should not be permitted to testify as such.

## FACTUAL BACKGROUND

On May 4, 2022, the United States served on Defendants an expert report from economist Dr. Nicholas Hill. Dr. Hill conducted an analysis of the proposed merger using applicable merger guidelines and formed an opinion that the proposed merger would have material anti-competitive effects on compensation for authors of manuscripts. He further concluded that the deleterious effects of the merger are unlikely to be mitigated by any efficiencies. Dr. Hill's conclusions rest on a combination of extensive qualitative, quantitative, and modeling evidence from the testimony and documents produced by Defendants and non-parties.

On June 3, Defendants submitted two expert reports to rebut Dr. Hill's report: a report from Dr. Edward Snyder, a professor in the Yale School of Management, and a report from Ms. Walsh. Ms. Walsh's report provides no analysis based on economic principles or methods. Nonetheless, based solely on her former experience as an agent, Ms. Walsh provides conclusory testimony about the lack of anti-competitive effects of the proposed merger. Ms. Walsh has no background whatsoever in economics or antitrust law or guidelines. *See* Exhibit A ("Exh. A"), Deposition of Jennifer Rudolph Walsh ("Walsh Dep."), at 62-64.

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" can provide testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue[.]" While an expert may be qualified based on practical experience or training rather than a formal education in an area, "'if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Rothe Development, Inc. v. Department of Defense, et al.*, 107 F.Supp.3d 183, 196 (D.D.C. 2015) (quoting Fed. R. Evid. 702 advisory committee's note (2000)). If a court has determined that a witness qualifies as an expert within the meaning of Rule 702, "the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge,' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Meister v. Medical Engineering Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)).

**ARGUMENT**

I.   **Ms. Walsh Is Not Qualified to Offer Opinions on the Impact of the Merger.**

Expert opinion testimony offered by a witness who does not qualify as an expert, or which is outside her area of expertise, is inadmissible. Fed. R. Evid. 702. The opinions Ms. Walsh offers about the competitive impact of the merger are well outside any area of expertise she may have and should therefore be excluded.

3

Ms. Walsh's educational background consists of a bachelor's degree in Literature from Kenyon College. Exh. A, Walsh Dep., at 29. She began working at a literary agency during college and proceeded to work at that agency and its successors for thirty years. Ms. Walsh stepped down from her position as an agent in 2019 to focus on a touring event that has subsequently closed. Exhibit B ("Exh. B"), Expert Report of Jennifer Rudolph Walsh ("Walsh Report"), at 5-7. Ms. Walsh has never worked at a publishing company and has no formal training in economics or merger analysis. Exh. A, Walsh Dep. at 21, 62-64, 73.

As to the competition among publishers in the market for anticipated top sellers, the subject of this case, Ms. Walsh has experience only from her work as an agent at an agency that ███████████████████████████████████, according to Penguin Random House's own document, *see* Exhibit C ("Exh. C"), BPRH-005427111, at -140, and even that experience ended before most of the relevant time period of the data produced in this case.[1] Yet Ms. Walsh's opinions go far beyond her prior life experiences as a literary agent.

Despite her lack of education, training, or experience in economics, Ms. Walsh offers an array of opinions regarding matters of economics. She offers opinions—without citing a bit of record evidence—on the projected level of advances post-merger, output effects, availability of alternative buyers, entry barriers, and competitive conditions. The numerous opinions far outside her expertise include:

- "It is my opinion, informed by my 30 years of experience as a top literary agent, that the merger will not adversely impact competition in the acquisition of books by publishers." Exh. B, Walsh Report, at 3, ¶ 8.

- "In my experience, publishers that are not thought of as part of the Big Five are viable competitors for books at all advance levels, including for books that receive advances above $250,000. There is nothing unique in the acquisition

---

[1] Discovery documents in the case were produced for the period 2018 to 2021, and testimony regarding industry data is thus focused on that time period.

- process for a book that receives an advance above $250,000—these books are viewed the same as other books by publishers, and all publishers can compete to acquire these books." Exh. B, Walsh Report, at 28, ¶ 103.

- "Beyond the Big Five, smaller publishers will also continue to compete aggressively to acquire books. These publishers can compete to acquire any book, with some more likely to compete than others depending on the particular book that the agent is trying to sell. This will include books that obtain advances above $250,000. And based on trends in the industry, new entrants to the industry—such as those that I mentioned above—are likely to be increasingly competitive." Exh. B, Walsh Report, at 34, ¶ 117.

- "It is my opinion that the merger will not result in fewer books being published. In my experience, writers write books even if they receive a lower advance than they had hoped or even if there is no publisher for that book. Writing is a creative outlet for authors, and a decrease in the number of publishers in the market will not impact their output." Exh. B, Walsh Report, at 36, ¶ 124.

- "If all of the Big Five publishers closed their doors tomorrow, writers will still write, readers will still read, and the absence of a competitor or competition will have no adverse impact on the industry." Exh. B, Walsh Report, at 37, ¶ 125.

While an industrial organization economist may be qualified to offer opinions on such topics after reviewing relevant data and the record evidence (including, for example, advance data and data about head-to-head competition between the merging parties), Ms. Walsh is not so qualified and has not reviewed the available data.  *See* Exh. B, Walsh Report, Appendix A; *see also* Exh. A, Walsh Dep. at 18-21.  Accordingly, this testimony is inadmissible*. See, e.g., Rothe*, 107 F.Supp.3d at 203 (finding plaintiffs' proffered expert, the vice president of the company, not to be qualified to rebut defendants' economists' experts' opinions); *Ralston*, 2011 WL 6002640, at *6  (N.D. Cal. Nov. 30, 2011) (expert's 30 years of experience training and consulting mortgage brokers did not provide a sufficient basis to provide testimony about other brokers' practices with regard to a specific loan package); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 536 (D. Md. 2002) ("general business experience unrelated to antitrust economics does not render a witness qualified to offer an opinion on complicated antitrust issues"); *see also*

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.- Conn.*, 98 F. Supp. 2d 729, 733 (W.D. Va. 2000) ("[M]arket analyses for antitrust markets generally require some expertise in the field of industrial organization.").

If Ms. Walsh were qualified based on her thirty years of experience as an agent to offer expert opinions on antitrust economics issues in the publishing industry, the vast majority of the fact witnesses identified on both parties' lists would be more qualified, since many of them have been working in the publishing industry for decades and continue to do so full-time—unlike Ms. Walsh. Relative to those witnesses, Ms. Walsh's ability to talk about present and future facts related to literary agents (much less the publishing industry as a whole) is thus limited. *See, e.g.,* Exh. A, Walsh Dep. at 50 (acknowledging that she cannot "speak comprehensively" about compensation practices of different literary agencies); *id.* at 57 (agreeing that a CEO of a Big Five publisher would qualify as an expert in the publishing industry).

## II. Ms. Walsh's Opinions Are Not Reliable Because She Has Presented No Methodology for Her Conclusions.

Even if she were qualified to offer expert opinions on antitrust economics, Ms. Walsh's opinions about the impact of the merger should also be excluded because she presents no support for her conclusions. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Expert opinions must have "a traceable, analytical basis in objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998).

Here, Ms. Walsh's opinions about the industry are her own assertions supported by nothing, not even an analysis of materials from the agency she worked for. *See* Exh. A, Walsh Dep., at 27 (acknowledging that she did not rely on any client files in preparing her report).

There is not a single citation to a document supporting her opinions. She only identifies three items as those she relied upon: the Complaint, Dr. Hill's report, and subpoena responses from one small publisher. *See* Exh. B, Walsh Report, Appendix A. Summarizing the basis for her opinion that the merger will not harm authors and will have no adverse impact on the industry, for example, Ms. Walsh describes as follows her belief that the publishing industry weathered the merger of Penguin and Random House unharmed: "some in the industry thought the 2013 merger between Penguin and Random House would harm competition for content acquisition. In my experience, that merger had no impact on author advances." Exh. B, Walsh Report at 27, ¶ 100. Ms. Walsh simply asks the Court to credit her testimony because she pronounces her opinion. But, as Federal Rule of Evidence 702 makes clear, those kinds of opinions must only be provided by persons trained in economics whose opinions are solidly grounded in the record evidence. The fact that Ms. Walsh believes anecdotally or subjectively that advances were not impacted by the Penguin-Random House merger does not make it so; her *ipse dixit* is irrelevant and, moreover, directly contrary to the evidence in the case that she did not analyze. Ms. Walsh did not review the industry data that was gathered in this case, did not read the internal company documents that speak to the post-merger advance levels, did not review the testimony of fact witnesses who were privy to the effects of the merger, and did not address the opinions of either Dr. Hill or Dr. Snyder, who reviewed the data relevant to the merger and developed conclusions based on that data. Ms. Walsh's opinion about the impact of a future merger cannot be based on her "experience" of the impact of a past merger that relies on no data or industry-wide analysis.

To the extent Ms. Walsh seeks to opine on the antitrust concepts that undergird the legal and factual analysis at issue here, such as the relevant market, market share, and price impact, as described above, she has no basis to do so. She is not familiar with any of the concepts that

guide an antitrust analysis; she testified that she has not reviewed the Merger Guidelines,[2] has never done a market share analysis, does not have any experience in defining product markets for antitrust purposes, has no experience analyzing unilateral effects, and did not perform any quantitative analysis to inform herself about the impact of the merger on prices in the publishing industry.  *See* Exh. A, Walsh Dep., at 63-64, 70.  Ms. Walsh does not address the burden-shifting framework that guides courts' inquiry into an alleged Section 7 violation, nor could she, because she did not analyze concentration in the relevant market.  There is no foundation for Ms. Walsh's personal experience to overcome the burden-shifting framework based on market data that applies to this merger case.  Therefore, Ms. Walsh should be precluded from testifying about her opinions about the impact of the merger (including the entirety of Sections I and VI of her report).

### III. If Ms. Walsh Is Permitted To Testify as a Lay Witness, Her Testimony Should Be Appropriately Limited.

Stripped of her opinions about the impact of the merger, what remains of Ms. Walsh's report are her general observations of the tools agents use to sell books.  Those tools will be discussed by lay witness agents, editors, and third-party publishers.  Cloaking testimony about how books are sold in expert garb arbitrarily gives her testimony greater weight than the (up-to-date) experience of the numerous other industry players planning to testify – authors, agents at other literary agencies, and editors and executives at defendants' and third-party publishing

---

[2] U.S. Dep't of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines* (2010).

houses. Thus, to the extent she is permitted to testify, Ms. Walsh should be permitted to do so only as a lay witness under Federal Rule of Evidence 701.[3]

Ms. Walsh even stretches beyond her experience to recount purported facts for which she has no personal knowledge. *See, e.g.,* Exh. B, Walsh Report, at 9, ¶ 29 ("This can mean that an editor, supported by the publishing house, might pay a high advance to acquire a book that she really loves, even if she or her publishing house has doubts about its commercial prospects."); *id.* at 32–33, ¶ 112 ("As the recent entrants to the industry demonstrate, the barriers to entry for new publishers are low and innovative publishers are emerging to disrupt the norms."). Thus, a number of her conclusions about the industry from her report are inadmissible under Rule 701.

Moreover, as Ms. Walsh admits, every agent and every author does things differently. *See* Exh. B, Walsh Report at 19, ¶ 69 ("There are many different ways to sell books, and in my experience every agent I supervised had a different approach for different projects."); *id.* at 22, ¶ 81 ("Every author has different factors that matter to her."). Consequently, she should not be allowed to testify about the industry beyond her own agency. *See, e.g.,* Exh. A, Walsh Dep., at 110 ("Q. Do you know whether other agents . . . approach, current, exclusive submissions in the same way? A. I can't speak to other agents, but from the agents that I worked with, we all -- we all tended to approach them in a very similar fashion."). She also cannot testify about her

---

[3] Rule 701 provides:
If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

9

predictions about how the market will respond to a merger; such testimony necessarily implicates specialized knowledge she does not have.

Thus, should Ms. Walsh be allowed to testify as a fact witness, her testimony should be circumscribed by the same rules that apply to all other fact witnesses. She should be permitted to offer only those facts about which she has personal knowledge about the industry through her retirement from her agency in 2019.

## CONCLUSION

For the reasons set forth above, the Court should exclude Ms. Walsh as an expert witness because she utterly fails the requirements of Federal Rule of Evidence 702. She has neither the technical or factual basis to offer opinions concerning the legal and economic matters at issue or past publishing industry mergers. Thus, any testimony concerning the subjects of Sections I and VI of her report and the opinions contained in other sections of her report should be entirely excluded and any lay testimony Defendants offer from her should be limited to her personal experiences and knowledge of the business of a literary agent.

Pursuant to the Court's Standing Order and Local Rule 7(m), the parties have met and conferred, and Defendants have stated that they will oppose this Motion.

Respectfully submitted,

Dated: July 8, 2022        　　　／s/ John R. Read　　　　　　　
　　　　　　　　　　　　　　John R. Read (DC Bar #419373)
　　　　　　　　　　　　　　Anna E. Cross (DC Bar #494788)
　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　Antitrust Division
　　　　　　　　　　　　　　450 Fifth Street, NW, Suite 4000
　　　　　　　　　　　　　　Washington, DC 20530
　　　　　　　　　　　　　　Telephone: (202) 725-0165
　　　　　　　　　　　　　　Fax: (202) 514-7308
　　　　　　　　　　　　　　Email: john.read@usdoj.gov

　　　　　　　　　　　　　　*Counsel for Plaintiff United States of America*

## CERTIFICATE OF SERVICE

      I certify that on July 8, 2022, I served the foregoing and all accompanying documents on the below individuals by electronic mail:

For Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC:

Daniel M. Petrocelli (dpetrocelli@omm.com)
M. Randall Oppenheimer
(roppenheimer@omm.com)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Andrew J. Frackman (afrackman@omm.com)
Abby F. Rudzin (arudzin@omm.com)
Eamonn W. Campbell (ecampbell@omm.com)
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Julia Schiller (jschiller@omm.com)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Debbie Feinstein
(Debbie.Feinstein@arnoldporter.com)
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001

For Defendants ViacomCBS Inc. and Simon & Schuster, Inc.:

Stephen Fishbein (sfishbein@shearman.com)
Jessica Delbaum (jdelbaum@shearman.com)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Ryan Shores (ryan.shores@shearman.com)
Michael Mitchell
(michael.mitchell@shearman.com)
Shearman & Sterling LLP
401 9th Street NW, Suite 800
Washington, DC 20004

Rachel Mossman
(rachel.mossman@shearman.com)
Shearman & Sterling LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201

Dated: July 8, 2022

    */s/ Ihan Kim*
    Ihan Kim
    U.S. Department of Justice
    Antitrust Division
    450 Fifth Street, NW, Suite 4000
    Washington, DC 20530
    Phone: 202-532-4283
    E-mail: ihan.kim@usdoj.gov

    *Counsel for Plaintiff United States of America*