UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                *Plaintiff,*

v.

BERTELSMANN SE & CO. KGaA,
PENGUIN RANDOM HOUSE, LLC,
VIACOMCBS, INC., and
SIMON & SCHUSTER, INC,

                *Defendants*.

Civil Action No. 1:21-cv-02886-FYP

**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF
DR. EDWARD SNYDER REGARDING EFFICIENCIES**

## INTRODUCTION

Dr. Snyder's testimony fails to meet the standards for admissibility because it is premised on incorrect factual and legal foundations. Dr. Snyder admits in both his reports and in his deposition that he made no effort to verify any of the estimates of cost savings in the November 2020 Investment Model. Dr. Snyder further admits that he relies on this Model despite the fact that it was subsequently updated several times by its author and does not reflect two years of actual performance by Simon & Schuster ("S&S"). Dr. Snyder goes on to then question his own reliance on the November 2020 Investment Model, rejecting its projections for certain cost savings while increasing by ▓▓▓▓ its projected author compensation based on a ratio that has no basis in economics or fact and that is premised on self-serving promises by Defendants' executives about how they will behave if only this Court approves this merger.

Nothing in Defendants' Opposition refutes any of those foundational reasons to bar Dr. Snyder's testimony about efficiencies pursuant to Fed. R. Evid. 702. These failings are epitomized by Dr. Snyder's constant reference to the November 2020 Investment Model as the "PRH Efficiencies Model." Yet no one at PRH or anywhere else (except Defendants' trial counsel) ever used that term to describe the Model. Instead of doing the hard and necessary work to provide a sound factual and legal basis for his efficiencies claims, Dr. Snyder resorts to that kind of sleight of hand. But efficiencies claims must "represent more than mere speculation and promises about post-merger behavior," *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 721 (D.C. Cir. 2001), and be "verifiable by an independent party." *United States. v. H&R Block, Inc.,* 833 F. Supp. 2d 36, 89 (D.D.C. 2011).[1] As such, Dr. Snyder's proposed testimony regarding

---

[1] Indeed, the Supreme Court and this Circuit have taken a skeptical look at efficiencies as a potential defense to a merger, *see, e.g., United States v. Philadelphia National Bank*, 374 U.S. 321, 371 (1963); *United States v. Anthem, Inc.*, 855 F.3d 345, 353 (D.C. Cir. 2017), which is

1

efficiencies fails to meet the basic requirements of Fed. R. Evid. 702 and should be barred at trial.

## ARGUMENT

I.  **Dr. Snyder's Undisputed Failure to Verify the Alleged Efficiencies from PRH's Proposed Acquisition of S&S Renders His Testimony on That Subject Inadmissible as a Matter of Law**

Dr. Snyder should not be allowed to opine on whether the efficiencies are cognizable under the *Merger Guidelines*, or the amount of any such efficiencies, because he did not independently verify the alleged efficiencies. As now-Chief Judge Howell stated in *U.S. v. H&R Block*—a case whose holding Defendants ignore:

> While reliance on the estimation and judgment of experienced executives about costs may be perfectly sensible as a business matter, the lack of a verifiable method of factual analysis resulting in the cost estimates renders them not cognizable by the Court. If this were not so, then the efficiencies defense might well swallow the whole of Section 7 of the Clayton Act because management would be able to present large efficiencies based on its own judgment and the Court would be hard pressed to find otherwise.

833 F. Supp. 2d at 91; *see also Heinz*, 246 F.3d at 721 (holding that cognizable efficiencies must "represent more than mere speculation and promises about post-merger behavior.").

Defendants do not dispute that Dr. Snyder did *not* verify any of the synergy amounts that the November 2020 Investment Model allegedly projected. Dr. Snyder should not be allowed to opine that the alleged efficiencies are "significant and cognizable," *see, e.g.*, Dkt. No. 109 at 5, if he did not even analyze whether the Model accurately projected the nature and amount of those

---

particularly warranted here where PRH, the market leader, seeks to acquire one of its largest competitors, which would only enhance PRH's dominance. Defendants do not deny this high bar. Rather, they make the red herring argument that the Supreme Court has never held that efficiencies are "irrelevant." Dkt. No. 109 at 4 n.3. As to D.C. Circuit precedent, Defendants notably cite the dissent in *Anthem*, Dkt. No. 109 at 4, and ignore the majority opinion that explicitly questions efficiencies as a "viable legal defense to illegality under Section 7," *Anthem*, 855 F.3d at 353.

alleged efficiencies. Defendants cite no cases where an expert testified as to the nature, amount, and cognizability of efficiencies, without first actually verifying the efficiency amounts.

Defendants do not dispute that the November 2020 Investment Model relied on by Dr. Snyder is a tool that PRH created before Bertelsmann agreed to purchase S&S so it could determine an appropriate price for its rival. In addition, Defendants do not dispute that the Model does not, and was not designed to, project cognizable efficiencies under the multi-prong standards of the *Merger Guidelines*. Indeed, Defendants do not contend that the Model's author, Manuel Sansigre, PRH's Global Head of M&A, knew of, let alone applied, the *Merger Guidelines*. Rather, the model projected *synergies*, which Defendants do not dispute are at best the starting point for determining efficiencies under the case law and the *Merger Guidelines*. *See H&R Block,* 833 F. Supp. 2d at 89 n.41 ("Cognizable efficiencies are a subset of synergies. 'Synergies' refer more generally to any business performance benefits that result from the merger of two companies.") (internal quotation marks omitted).

Defendants do not dispute that the outdated financial model was based on management judgments and that it was not based on any type of integration planning that analyzed available information on specific employees, salaries, contracts, real estate, warehouses, future plans, or other details from S&S. Dkt. No. 97 at 8-9; Dkt. No. 109 at 15-16. In fact, as detailed in the Government's Opening Brief, for virtually every alleged synergy, Mr. Sansigre simply estimated the percentage by which he thought the proposed merger would improve the performance of S&S as part of the merged entity and used that percentage as a multiplier of a total cost to come up with proposed cost savings. Dkt. No. 97 at 11-12. Because the November 2020 Investment Model is based on Mr. Sansigre's estimates, there is no supporting data or documentation other than his hard-coded Excel spreadsheets—making the efficiencies impossible to verify. Dkt. No.

97 at 8-9.  That the Model was allegedly created in the "ordinary course" is not a talisman that renders it reliable for projecting efficiencies.

As a result, Dr. Snyder's efficiencies opinions—based on his blind acceptance of PRH's November 2020 financial projections—are contrary to well-established law that efficiencies claims must be "verifiable by an independent party." *H&R Block*, 833 F. Supp. 2d at 89.  When an expert's methodology conflicts with governing legal standards, it is no longer relevant "to the task at hand," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), and should be excluded.  *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003); *see also Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (affirming exclusion of expert testimony because expert's "wholesale adoption of Plaintiff's estimates without revealing or apparently even evaluating the bases for those estimates, goes beyond relying on facts and data and instead cloaks unexamined assumptions in the authority of expert analysis.").  Thererfore, Dr. Snyder should not be allowed to bootstrap a nearly two-year old valuation model into a verifiable efficiencies defense based on nothing more than a cursory review, where Dr. Snyder did nothing to substantiate any of the underlying assumptions.  As now-Chief Judge Howell held, permitting this kind of rubber-stamping by an expert would open the door to management projections justifying efficiencies that would render the Clayton Act's concern with incipient market power a dead letter.  *H&R Block*, 833 F. Supp. 2d at 91.  *Cf. Anthem*, 855 F.3d at 364 ("If merging companies could defeat a Clayton Act challenge merely by offering expert testimony of fantastical cost savings, Section 7 could be [a] dead letter.").

### II. Defendants Admit That Dr. Snyder Disregards Actual Simon & Schuster Data for 2020 and 2021 and Later Iterations of the November 2020 PRH Financial Model

Defendants do not dispute that Dr. Snyder had access to actual data for S&S for the years 2020 and 2021, and that he nonetheless relied on the stale PRH **projections** for these years that were used for the November 2020 Investment Model.  Dkt. No. 97 at 10-11; Dkt. No. 109 at 17. His disregard of the actual data has no economic basis and further renders his testimony unreliable.  For example, Defendants do not dispute that the November 2020 Investment Model projected that PRH could ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 97 at 11; Dkt. No. 109 at 17.  Yet, Dr. Snyder ignores that fact in his testimony.

Further, Defendants do not dispute that PRH itself had created later versions of the November 2020 Investment Model that incorporated new data from S&S, including for purposes of responding to the Department of Justice requests during its investigation.  Nor do Defendants dispute that there are material differences in the individual synergy amounts that Dr. Snyder disregarded.  *See* Dkt. No. 97 at 11-12; Dkt. No. 109 at 17.  Instead, Defendants argue it was appropriate for Dr. Snyder to ignore (1) actual data in favor of outdated projections and (2) the later iterations of the PRH financial analysis because by sheer coincidence, the total synergy amounts are roughly the same—give or take a few million dollars.  Dkt. No. 109 at 17.

But as the Government explained in its Opening Brief, comparing total amounts is not a methodology, particularly when *each* efficiency claim must be verified. Dkt. No. 97 at 12.  *See Merger Guidelines* § 10 ("[I]t is incumbent upon the merging firms to substantiate efficiency claims so that the Agencies can verify by reasonable means the likelihood and magnitude of **each** asserted efficiency, how and when **each** would be achieved (and any costs of doing so),

5

how **each** would enhance the merged firm's ability and incentive to compete, and why **each** would be merger-specific.") (emphasis added). Defendants do not cite any cases that stand for the proposition that an expert can verify efficiencies by looking at the total amount, rather than substantiating each efficiency claim, and thereby satisfy the law or the *Merger Guidelines* by proposing a general approximation (assuming Dr. Snyder had done such an approximation himself).

### III. Defendants Do Not Rebut That Dr. Snyder's Opinions Are Untethered to the Undisputed Facts

Although Defendants generally state that it is disputed "whether and how Dr. Snyder verified the PRH Efficiencies Model," Dkt. No. 109 at 12, they do not actually dispute *any* of the instances where the Government showed that Dr. Snyder's opinions are untethered to the facts or otherwise unsubstantiated.[2] For example:



- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. No. 97 at 9-10.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. No. 97 at 10.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] Defendants' effort to paint the Government as having the burden to prove that efficiencies are unverifiable, Dkt. No. 109 at 9, is wrong as a matter of law. *See Anthem*, 855 F.3d at 364; *H&R Block,* 833 F. Supp. 2d at 89. It simply has nothing to do with whether *Dr. Snyder* followed an appropriate methodology as an expert witness to opine on the alleged "significant and cognizable efficiencies" of the proposed transaction.



Instead, Defendants suggest the *Merger Guidelines* allow Dr. Snyder to rely on the November 2020 financial model because it was created in the ordinary course of business. Dkt. No. 109 at 8. But neither the *Merger Guidelines* nor the caselaw suggest it was appropriate for Dr. Snyder to accept the projections and ignore the undisputed record evidence.

Similarly, with respect to past "analogous" transactions, Defendants again assert that someone other than Dr. Snyder will explain why these transactions were analogous at trial. Dkt. No. 109 at 18. But *Dr. Snyder* has rendered an opinion that these past transactions are analogous and support his opinions. Thus, *Dr. Snyder* needs to explain why and how these past transactions are supportive. This requires him to independently assess: (i) whether the realized past cost savings were cognizable efficiencies under the *Merger Guidelines*; and (ii) if so, whether the past realized efficiencies are analogous to the claimed savings at issue. Dkt. No. 97 at 12-14. It is inappropriate for him to simply accept the assertions by Defendants' executives as the basis for his opinion. *See, e.g., FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 73 (D.D.C. 2018); *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 98 (D.D.C. 2017).[3]

---

[3] Defendants' cases cited on Dkt. No. 109 at 9-10 are not to the contrary. These cases stand for the unremarkable proposition that Defendants can rely on evidence, other than expert

Case 1:21-cv-02886-FYP   Document 136   Filed 07/22/22   Page 9 of 12

IV.  **Defendants Do Not Dispute That No Economic Literature Supports Dr. Snyder's Pass-Through Analysis or That His Pass-Through Analysis Cannot Show the Merged Entity Will Pay Authors More for Individual Books**

Defendants do not deny that Dr. Snyder's ratio that he propounds to justify claims that authors will be enriched by this merger is grounded in neither the economic literature nor accepted economic principles. *See* Dkt. No. 109 at 21-24.  Instead, Defendants argue that the "objective data" support his analysis. *Id*. at 21 n.13.  They are wrong; this argument is also inconsistent with the undisputed evidence.

Dr. Snyder initially claimed that his analysis was supported by the fact that ▉▉▉▉▉▉▉ between author compensation and net income over the years 2017 to 2019.  Dkt. No. 97 at 16.  Faced with the reality that ▉▉▉▉▉▉▉ over a longer period of time, Dr. Snyder now asserts that author compensation is typically ▉▉▉▉▉▉▉. *See* Dkt. No. 109 at 21-22.  Even if that were true (it is not), using slightly smaller ratios leads, by Dr. Snyder's own calculations, ▉▉▉▉▉▉▉.[4]  That is hardly an endorsement of any particular calculation of added author compensation.  His efforts to identify a non-existent relationship between author compensation and Net income to calculate pass-through is nothing more than an *ipse dixit* and should be excluded.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (Easterbrook, J.) ("An expert must offer good reason to think that his approach produces an accurate estimate



---

testimony, to support their efficiencies defense.  Further, these cases confirm that efficiencies claims must be verifiable.  In fact, in *FTC v. Staples, Inc*., which Defendants highlight in their Opposition, the court found that defendants' efficiency claims failed to rebut the FTC's prima facie case in part because its base case savings were "in large part unverified."  970 F. Supp. 1066, 1089 (D.D.C. 1997).

[4] *Compare* Snyder Reply ¶ 32 *with* Snyder Reply ¶ 18k.

8

using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the result.").

Further, Defendants admit that Dr. Snyder's ratio is "agnostic about whether the gains in efficiency will be used to acquire more books or pay authors for specific books greater amounts." Dkt. No. 97 at 18; Dkt. No. 109 at 23-24. Defendants now argue that this admission is irrelevant because if the merged entity does not pay authors more for specific books, there will still be "increased output." Dkt. No. 109 at 23. This assertion—made without a basis—appears nowhere in Dr. Snyder's report. That the merged entity might acquire more books, rather than increase individual advances, does not mean that there will be an increased output in the market for anticipated top sellers. Nor does it mean that any additional spending on "more books" by the merged firm would accrue entirely to authors' benefit, let alone to authors of anticipated top-selling books, as Dr. Snyder's methodology implies.[5] Even were the Court to accept Dr. Snyder's groundless theory as a means to predict PRH's future spending on author compensation, it would admittedly not help the Court determine whether the alleged cost savings from the merger would benefit authors in the relevant market. Fed. R. Evid. 702; *Aetna*, 240 F. Supp 3d at 94 ("[T]he companies must demonstrate that their claimed efficiencies would benefit customers . . . in the challenged markets.") (internal quotation marks omitted); *Merger Guidelines* § 10.

---

[5] For example, if but-for the merger, Hachette would buy a book for $300,000, but, after the merger, PRH's purported efficiencies would cause it to pay $305,000, Dr. Snyder's ratio credits all of the $305,000 as a benefit to authors, when common sense demonstrates that the author is only $5,000 better off. As a result, Dr. Snyder's ratio cannot be used as a reliable method to project benefits to authors from PRH's purported efficiencies.

## CONCLUSION

For all these reasons, the Court should grant the United States' motion *in limine* and reject Dr. Snyder's proposed efficiencies testimony under the standards of Fed. R. Evid. 702.

Respectfully submitted,

Dated: July 15, 2022
/s/ John R. Read
John R. Read (DC Bar #419373)
Melvin A. Schwarz

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Fax: (202) 514-7308
Email: john.read@usdoj.gov

*Counsel for Plaintiff United States of America*

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2022, I served the foregoing and all accompanying documents on the below individuals by electronic mail:

For Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC:

Daniel M. Petrocelli (dpetrocelli@omm.com)
M. Randall Oppenheimer
(roppenheimer@omm.com)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Andrew J. Frackman (afrackman@omm.com)
Abby F. Rudzin (arudzin@omm.com)
Eamonn W. Campbell (ecampbell@omm.com)
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Julia Schiller (jschiller@omm.com)
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Debbie Feinstein
(Debbie.Feinstein@arnoldporter.com)
Arnold & Porter
601 Massachusetts Ave., NW
Washington, DC 20001

For Defendants ViacomCBS Inc. and Simon & Schuster, Inc.:

Stephen Fishbein (sfishbein@shearman.com)
Jessica Delbaum (jdelbaum@shearman.com)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Ryan Shores (ryan.shores@shearman.com)
Michael Mitchell
(michael.mitchell@shearman.com)
Shearman & Sterling LLP
401 9th Street NW, Suite 800
Washington, DC 20004

Rachel Mossman
(rachel.mossman@shearman.com)
Shearman & Sterling LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201

Dated: July 15, 2022

*/s/ Ihan Kim*_____
Ihan Kim
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Phone: 202-532-4283
E-mail: ihan.kim@usdoj.gov

*Counsel for Plaintiff United States of America*