UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　　　　*Plaintiff,*<br>　　v.<br>BERTELSMANN SE & CO. KGaA,<br>PENGUIN RANDOM HOUSE, LLC,<br>VIACOMCBS, INC., and<br>SIMON & SCHUSTER, INC.<br>　　　　　　　*Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

**DEFENDANTS' BENCH MEMORANDUM REGARDING EFFICIENCIES PROOF**

　　　　The government's efforts to control how defendants present their defense against this merger challenge rest on the false legal premise that merging parties are prohibited from presenting evidence that a merger will likely result in efficiency benefits unless they proffer testimony from an expert who verified projected benefits. Based on that premise, the government moved *in limine* to bar defendants' expert, Professor Ted Snyder, from providing certain efficiencies-related opinions, because he did not purport to "verify" the extensive, detailed, ordinary-course analyses conducted by Penguin Random House ("PRH")'s Senior Vice President and Head of Global Mergers & Acquisitions, Manuel Sansigre, the company's President and COO, Nihar Malaviya, and others.

　　　　The Court denied that motion, but ordered the parties to "meet and confer on whether there's a way to efficiently present evidence of the efficiencies analysis that allows me to, first, resolve the issue of whether its verified or verifiable." Ex. A (July 25, 2022 Pretrial Conf. Tr.) at 60:24-61:2. The parties were unable to reach agreement. In its email, the government not only presented an inaccurate recitation of the parties' discussions and defendants' position, but also

1

explicitly stated the government's objective of controlling defendants' evidentiary presentation in order to facilitate a motion by the government seeking judgment as a matter of law on the issue of efficiencies (a motion defendants would contest on both procedural and substantive grounds).

> **A. The Government Should Not Control Defendants' Presentation Of Evidence To Facilitate Piecemeal Rulings On Subsidiary Legal Issues.**

The entire premise of the government's effort to dictate defendants' own order of proof is misguided. Leaving aside for the moment the merits of the government's legal argument, merger trials (like any other trial) are not structured to facilitate piecemeal legal rulings on the many subsidiary legal issues presented in such cases. For example, it is defendants' position that the government's market definition in this case is legally insupportable. But defendants are not demanding that the government present all its market definition evidence before it addresses any other issue, so that defendants can file an early motion for judgment as a matter of law on that threshold issue. Forcing the government to order its proof that way might in theory be more efficient, because it would obviate the need for the parties to prepare witnesses on all the remaining harm issues in the case. But defendants recognize that the better approach—and the universal approach in all merger cases—is that the parties should simply present their competing evidence on all issues and elements (subject to normal rules of evidence). The Court then issues findings of fact and conclusions of law based on a full record. In those final rulings, the Court may rule that the government did not establish a legally cognizable market, just as it might rule that the defendants did not adduce sufficient evidence of merger-specific efficiencies. The relevant point here is that the trial should be structured to facilitate final rulings on all issues, not piecemeal rulings on subsidiary issues.

### B. Defendants Are Not Required To Have Efficiencies Evidence Verified By An Expert.

As noted above, this entire dispute rests on the premise that the government should be entitled to move to bar defendants from arguing that the merger will create cognizable merger-specific efficiencies because defendants' expert, Professor Snyder, did not verify those efficiencies himself. His efficiencies-related testimony instead focused on determining how much of the efficiency benefits Messrs. Sansigre and Malaviya and others at PRH identified would be "merger specific," and how much would be "passed through" to authors in the form of increased compensation and other benefits. The government accordingly wants to seek judgment as a matter of law on efficiencies, once the Court has heard from Messrs. Sansigre and Malaviya. In the government's view, that evidence will be *legally* insufficient to establish cognizable efficiencies. That argument is incorrect.

At the recent status conference, the government claimed defendants were required to retain an expert to demonstrate the "verifiability" of their efficiencies:

> Mr. Schwarz: And, likewise, it's – the reason why we're here is because we know that – based on – *I'm not making this up. It's four decisions by four courts in this district that an independent analysis [of efficiencies] is required*. Mr. Sansigre is not independent, can't supply. And no one else is doing it here.

Ex. A at 60:1-8.[1] But that is not the law. The government did make it up. None of the authorities the government cites holds or suggests that Clayton Act § 7 categorically bars merging parties from showing pro-competitive efficiency benefits of a merger unless they have retained an expert witness to evaluate and confirm those benefits. And multiple cases hold squarely to the contrary. As with any other evidence, the issue is simply whether the evidence

---

[1] *See also* Ex. A at 39:11-13 ("[E]very judge who's faced th[is] issue in this district has said it has to be an independent party."); *id*. at 38:25-39:3 ("I think they're [defendants] saying Your Honor has to do it. That's exactly what every judge in this district has rejected. No, I need somebody independent to verify, explain it."); *id*. at 37:3-4 (DOJ argues "we need an independent expert who doesn't have a stake in the venture" to verify efficiencies). Unless indicated, all emphases are added and internal citations omitted.

supporting claimed efficiencies is sufficiently credible and reliable to permit a conclusion that they "represent more than mere speculation and promises about post-merger behavior." *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 721 (D.C. Cir. 2001).

In *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015), the sole question on efficiencies the court addressed was whether defendants had demonstrated that the claimed efficiencies were "merger specific." *Id.* at 83-85. The underlying analysis of likely benefits had been conducted by defendants' consultant McKinsey & Co. in the ordinary course of due diligence, and the court explicitly stated that it did "not question the rigor and scale of [McKinsey's] analysis" or "the accuracy of McKinsey's total annual costs savings." *Id.* at 82-83. But defendants' quantification of potential benefits was "not the issue before the court"; rather, the court rejected the claimed efficiencies only because defendants did not show that the savings "amount, or at least a substantial portion of it, could not be achieved independently of the merger." *Id.* at 83. As to that narrow point, the court observed that defendants' expert had not "conducted any independent analysis of the McKinsey estimate to determine which savings, if any, can be achieved without the merger." *Id.* That observation did not invoke a categorical rule that testimony from a retained expert is always required to establish merger-specificity—the point, rather, was that defendants had *no* evidence of merger-specificity, expert or otherwise.

That ruling has no bearing here. First, it does not support the government's assertion that merging parties are required to verify the *amount* of claimed efficiencies through expert testimony. To the contrary, as noted, the *Sysco* court appears to have explicitly *credited* defendants' detailed analysis of benefits as adequately substantiated. Second, defendants' expert here *did* analyze merger specificity, making a number of deductions for certain categories he believed may be achieved absent the merger. Initial Snyder Report ¶¶ 81, 82 n.184. If anything, the analysis in *Sysco* supports defendants' position here.

The government relied on *U.S. v. H&R Block, Inc.*, 833 F. Supp. 2d 36 (D.D.C. 2011), but it misreads that decision as well. The court in that case held only that the efficiencies asserted there were not "verifiable" because they were largely unsupported by *any* facts,

4

documents or information—*not* because defendants failed to retain an expert. *Id*. at 91 ("TaxACT's predicted cost figures for taking over these activities were not based on an analysis of facts *that could be verified by a third party*. Instead, TaxACT based its cost estimates on management judgments. By comparison, HRB's estimated costs for the relevant activities were rooted in accounting and planning documents prepared in the ordinary course of business."). In the course of its analysis, the court quoted from § 10 of the 2010 Horizontal Merger Guidelines (the "Guidelines"), which identifies the responsibilities of not only the merging parties, but also DOJ itself, in evaluating asserted merger efficiencies: "It is incumbent upon the merging firms to substantiate efficiency claims so that the Agencies can verify by reasonable means the likelihood and magnitude of each asserted efficiency, how and when each would be achieved (and any costs of doing so), how each would enhance the merged firm's ability and incentive to compete, and why each would be merger-specific." Guidelines § 10.[2] That language on its face merely states that the merging parties must provide enough substantiation for claimed efficiencies that the Agencies can verify the claims by reasonable means—it will not suffice to simply assert that the merger will generate benefits.

The *H&R Block* court restated that passage as follows: "In other words, a 'cognizable' efficiency claim must represent a type of cost saving that could not be achieved without the merger *and the estimate of the predicted saving must be reasonably verifiable by an independent party*." *Id*. That perfectly accurate restatement did not rewrite the Guidelines principle into a categorical mandate that efficiencies can be proved in court *only* through expert testimony. It restates only what the Guidelines passage itself plainly says: the claimed efficiency must be substantiated enough that it *can* be independently verified. When applied outside the context of the Agency investigation-stage verification described in the Guidelines, the principle suggests

---

[2] During an investigation the merging parties must substantiate the efficiencies, while the DOJ verifies them. *See* Guidelines § 10; *see also* 2006 Commentary on the Horizontal Merger Guidelines ("2006 Commentary") p. 52 ("Verification of Efficiency Claims. After the parties have presented substantiation for their claimed merger-specific efficiencies, *the Agencies attempt to verify* those claims."); Guidelines § 1, n.1 (2006 Commentary "remains a valuable supplement to the[] Guidelines").

5

nothing more than the normal support required for essentially any factual claim in any case—the claim must be well-enough substantiated that a factfinder can credit it. The substantiation *may* include expert opinions, but there is no categorical requirement for expert testimony in all cases, as the government asserts.

That much is clear from cases like *FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997), and *FTC v. Peabody Energy Corp.*, 492 F. Supp. 3d 865 (E.D. Mo. 2020), both of which evaluated claimed efficiencies on the basis of percipient witness testimony, without requiring separate expert testimony. In *Staples*, "defendants' efficiencies witness" was a business executive—Shira Goodman, Senior Vice President of Integration at Staples—who testified about various aspects of the projected efficiencies, including development of the company's integration plan, the basis for various projected efficiencies, and the company's analogous experience achieving efficiencies in prior mergers. 970 F. Supp. at 1089-90.

In *Peabody Energy*, defendants presented testimony from a fact witness concerning the verifiability of the efficiencies. 492 F. Supp. 3d at 914 (noting the Vice President of Mine Finance "testified about the 'Clean Team' process used by Defendants" and "estimating the [joint venture] efficiencies"). Like here, the FTC complained that defendants' expert "did not verify the efficiencies because he failed to independently identify the assumptions, factual foundations, and calculations underpinning the JV mine plan, and his reliance on the parties' business judgment and private conversations renders his analysis unverifiable," *id.* at 915, but the court squarely rejected that argument. "Based on testimony from Defendants' employees and several customers, as well as the results of previous analogous mergers undertaken by Arch," the court held, "it seems clear that the projected efficiencies are more than a mirage." *Id.* at 916; *see id.* ("the Court … has no doubt that there is truth to Defendants' claim that the JV is likely to achieve significant efficiencies"). The court observed that claimed efficiencies "grounded in the business judgments" of the merging parties' employees require careful scrutiny, and it agreed with the FTC that "some portion of Defendants' projected efficiencies are unrealistic or oversimplified." *Id.* But having heard all the evidence, the court was persuaded that the

6

defendant "used a process substantially similar to that used in the ordinary course of business to determine the anticipated efficiencies arising from this transaction, and they have supported their claims with evidence from past transactions." *Id*.

The government cannot reconcile its position with the foregoing authorities. And in the remaining cases it cites—*U.S. v. Aetna, Inc.*, 240 F. Supp. 3d 1 (D.D.C. 2017), and *FTC v. Wilh. Wilhemsen Holding ASA*, 341 F. Supp. 3d 27 (D.D.C. 2018)—defendants did retain experts, so the issue whether such testimony is legally mandatory never arose. *See Aetna*, *id*. at 95 (expert assessed whether the claimed efficiencies were "merger-specific, verifiable, and cognizable"); *Wilhemsen*, *id*. at 73 (expert "contended that the estimates are verifiable insofar as [defendant] identified the potential bases for cost savings, performed its own vetting and due diligence, and has a track record of realizing projected cost savings"). Neither case holds that merging parties are only allowed to establish the amount of cognizable efficiencies through expert testimony, as the government asserts.

The government's argument is also directly contrary to its own stated policies. The Guidelines expressly state that "[d]ocuments created in the normal course are *more probative* than documents created as advocacy materials in merger review." Guidelines ¶ 2.2.1; *see also id*. § 10 ("Projections of efficiencies may be viewed with skepticism, *particularly when generated outside of the usual business planning process*"). Defendants cannot be barred from presenting their own ordinary course analysis of merger efficiencies, supported by substantial additional evidence as well, just as the Guidelines contemplate. Whether that evidence provides sufficient substantiation to credit the claimed efficiencies is a merits question to be determined after trial—not a threshold basis for barring that inquiry altogether.

That post-trial merits issue will be whether claimed efficiencies "represent more than mere speculation and promises about post-merger behavior." *Heinz Co.*, 246 F.3d at 721. No case holds that expert testimony is required to make that showing. As the cases cited above show, concrete and credible evidence from the merging parties—especially from ordinary-course business analyses—can more than suffice. At trial, Mr. Sansigre, PRH's Senior Vice President

and Head of Global Mergers & Acquisitions, and others will testify about the various documents, data, information, and experience PRH relied on to project efficiencies from the merger. Contrary to the DOJ's suggestion, PRH's efficiency projections are not "hard-coded" numbers with no discernable analysis or support for them. For example, PRH estimated efficiencies of approximately $9 million per year from moving S&S employees into PRH's offices. Mr. Sansigre estimated those projections by first looking at S&S's lease to understand the square footage, how much S&S was paying, and when the lease expired. Mr. Sansigre asked its real estate broker, Cushman & Wakefield, to assess lease conditions in New York. PRH's banker, JPMorgan, then estimated how much PRH could get by re-leasing the S&S space. And Mr. Sansigre confirmed with PRH's real estate department that PRH had enough space for S&S employees. These estimates were also reviewed by two separate committees at Bertelsmann, and were informed and validated by PRH's similar experiences in prior transactions. *See* Guidelines §10 (stating "efficiencies claims substantiated by analogous past practice are those *most likely to be credited*"); 2006 Commentary at p. 53 (the "*best way* to substantiate an efficiency claim is to demonstrate that similar efficiencies were achieved in the recent past from similar actions"). These documents and information are the basis for PRH's real estate synergy calculations—they are not simply made up out of thin air as the government claims.

### C. Efficiencies Are Not A Separate Defense.

Finally, the government's suggestion that the Court can somehow divorce, separate, and remove all evidence of efficiencies from the trial because efficiencies are a "defense" is wrong.[3] Efficiencies are "relevant to the competitive effects analysis of the market" and form part of the "comprehensive and holistic assessment of whether the proposed merger is likely to create or enhance market power or facilitate its exercise." *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 124, 151 (D.D.C. 2004); *see also Sysco*, 113 F. Supp. 3d at 82 ("[E]ven if evidence of efficiencies alone is insufficient to rebut the government's prima facie case, such evidence may

---

[3] *See* Ex. A at 35:7-12 (Mr. Schwarz: "We put aside today the government's view that there is a serious question about whether or not an efficiencies defense exists at all in this case…").

nevertheless be relevant to the competitive effects analysis of the market required to determine whether the proposed transaction will substantially lessen competition."); *U.S. v. Anthem, Inc.*, 855 F.3d 345, 354 (D.C. Cir. 2017) (noting "two circuit courts, and our own, have subsequently recognized the use of efficiencies evidence in rebutting a prima facie case"); *FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1054 (8th Cir. 1999) (efficiencies should be considered "in the context of the competitive effects of the merger").

This underscores why the government should not be allowed to truncate and remove efficiencies from the rest of the trial proceedings. Defendants are entitled to present all their efficiencies evidence—including testimony from fact and expert witnesses alike—prior to the Court issuing a decision in this matter. Efficiencies are simply not severable from other issues in this trial—including, for instance, the rationale for pursuing this merger. The Court should reject the DOJ's attempt to micromanage and carve out the efficiencies evidence from the rest of the trial.

Dated: July 29, 2022

Respectfully submitted,

By: ___/s/ Daniel M. Petrocelli___

Daniel M. Petrocelli (appearing *pro hac vice*)
M. Randall Oppenheimer (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
roppenheimer@omm.com

Andrew J. Frackman (appearing *pro hac vice*)
Abby F. Rudzin (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10026
Telephone: (212) 326-2000
afrackman@omm.com
arudzin@omm.com

Jonathan D. Hacker (D.C. Bar No. 456553)
Julia Schiller (D.C. Bar No. 986369)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
jhacker@omm.com
jschiller@omm.com

Deborah L. Feinstein (D.C. Bar No. 412109)
Jason Ewart (D.C. Bar No. 484126)
**ARNOLD & PORTER**
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
debbie.feinstein@arnoldporter.com
jason.ewart@arnoldporter.com

*Attorneys for Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC*

By:    */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing *pro hac vice*)
Jessica K. Delbaum (appearing *pro hac vice*)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (D.C. Bar No. 500031)
Michael Mitchell (D.C. Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (D.C. Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants Paramount Global (f/k/a ViacomCBS Inc.) and Simon & Schuster, Inc.*