# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff*,<br><br>v.<br><br>BERTELSMANN SE & CO. KGaA, PENGUIN RANDOM HOUSE, LLC, VIACOMCBS, INC., and SIMON & SCHUSTER, INC.<br><br>*Defendants*. | Civil Action No. 1:21-cv-02886-FYP |

## JOINT MOTION TO SEAL CONFIDENTIAL TRIAL EXHIBITS AND TESTIMONY PURSUANT TO LOCAL RULE 5.1(h)

The United States ("Plaintiff"), and Bertelsmann SE & Co. KGaA, Penguin Random House, LLC ("PRH"), ViacomCBS, Inc., and Simon & Schuster, Inc. ("S&S") (collectively, "Defendants," and together with Plaintiff, the "Parties") respectfully move the Court for an order permanently sealing certain information in exhibits and demonstratives introduced at trial and transcripts reflecting trial testimony offered during closed sessions.

As set forth below, some of the exhibits admitted at trial, some of the demonstratives used at trial, and the trial testimony offered during closed session contain confidential information, including information, testimony, and materials designated as Highly Confidential or Confidential Information pursuant to the Stipulated Protective Order entered in this case. (Dkt. 38). This confidential information falls broadly into five categories: (1) Defendants' sensitive information related to book acquisitions; (2) Defendants' sensitive operational information, including costs, models, contract terms, details of ongoing negotiations and negotiation strategies, and other competitively sensitive commercial information; (3)

1

Defendants' future business strategies, including details of future business plans, projections, and merger-related analyses; (4) documents containing personally identifiable information; and (5) confidential third-party information.  Information falling into categories (1), (2), (3), and (5) should be maintained under seal given that public disclosure would prejudice PRH, S&S, Paramount Global and third parties because it would cause harm to their business interests and could be used against them in negotiations with suppliers, agents, vendors, and others, or used by competitors to obtain an unfair competitive advantage.  Information falling into category (4) warrants protection because disclosing personally identifiable information is likely to expose individuals to unsolicited book submissions, inquiries from the public and media, and harassing messages.

Accordingly, the Parties hereby move that the full, unredacted copies of the following exhibits, demonstratives, and portions of trial transcripts remain permanently sealed because they contain confidential information:

| | | | |
|---|---|---|---|
| • DX-021 | • DX-249 | • DX-406 | • DX-439 |
| • DX-022 | • DX-263 | • DX-408 | • DX-440 |
| • DX-025 | • DX-273 | • DX-409 | • DX-441 |
| • DX-038 | • DX-279 | • DX-410 | • PX-0039 |
| • DX-054 | • DX-286 | • DX-411 | • PX-0041 |
| • DX-071 | • DX-288 | • DX-412 | • PX-0042 |
| • DX-076 | • DX-301 | • DX-413 | • PX-0054 |
| • DX-105 | • DX-327 | • DX-414 | • PX-0068 |
| • DX-131 | • DX-333 | • DX-415 | • PX-0079 |
| • DX-143 | • DX-338 | • DX-416 | • PX-0080 |
| • DX-144 | • DX-339 | • DX-417 | • PX-0087 |
| • DX-148 | • DX-375 | • DX-423 | • PX-0092 |
| • DX-154 | • DX-376 | • DX-433 | • PX-0107 |
| • DX-169 | • DX-382 | • DX-435 | • PX-0116 |
| • DX-188 | • DX-384 | • DX-436 | • PX-0121 |
| • DX-217 | • DX-385 | • DX-437 | • PX-0136 |
| • DX-220 | • DX-405 | • DX-438 | • PX-0140 |

- PX-0148
- PX-0151
- PX-0157
- PX-0161
- PX-0162
- PX-0163
- PX-0168
- PX-0174
- PX-0190
- PX-0197
- PX-0218
- PX-0241
- PX-0320
- PX-0324
- PX-0326
- PX-0327
- PX-0328
- PX-0332
- PX-0336
- PX-0405
- PX-0406
- PX-0411
- PX-0412
- PX-0421
- PX-0438
- PX-0445
- PX-0529

- PX-0530
- PX-0557
- PX-0559
- PX-0568
- PX-0569
- PX-0574
- PX-0577
- PX-0588
- PX-0590
- PX-0613
- PX-0624
- PX-0632
- PX-0634
- PX-0643
- PX-0652
- PX-0655
- PX-0656
- PX-0663
- PX-0669
- PX-0679
- PX-0682
- PX-0697
- PX-0700
- PX-0716
- PX-0729
- PX-0749
- PX-754

- PX-757
- PX-758
- PX-760
- PX-790
- PX-0821
- PX-0829
- PX-0831
- PX-0837
- PX-0838
- PX-0856
- PX-0857
- PX-0858
- PX-0862
- PX-0863
- PX-0864
- PX-0874
- PX-0882
- PX-0885
- PX-0886
- PX-0932B—PX-958B
- PX-0959
- PX-0960
- PX-0963
- PX-0968
- PX-0983

- PX-0986
- PX-0989
- PX-0995
- PX-2001
- PX-2003
- PX-2006
- PX-2008
- U.S. Demo. 5
- U.S. Demo. 8
- U.S. Demo. 9
- Defs.' Demo. 1
- Defs.' Demo. 2
- Defs.' Demo. 6
- Defs.' Demo. 13
- Defs.' Demo. 14
- Defs.' Demo. 18
- Defs.' Demo. 20
- Trial Tr. 1137:17-1148:24
- Trial Tr. 1149:2-1173:23
- Trial Tr. 1174:2-1182:14
- Trial Tr. 1182:16-1183:25
- Trial Tr. 1438:6-1450:8
- Trial Tr. 1450:8-1469:7
- Trial Tr. 2195:1-2217:25
- Trial Tr. 2218:1-2230:6
- Trial Tr. 2230:7-2233:2

On September 1, 2022 the Court granted the Parties' motions to seal their respective proposed findings of fact and conclusions of law which cite to, quote from, or otherwise reference many of the same trial exhibits and testimony sought to be sealed here.  *See* Dkts. 170-171, 9/1/2022 Minute Orders.

For any of these materials that need not be kept from public disclosure in their entirety, publicly-available redacted and/or excerpted copies accompany this Motion.  In these redacted and/or excerpted copies, the Parties have redacted the confidential information contained in the exhibit and/or removed pages that contained confidential information and data that was not referenced at trial.[1]

The Parties jointly file this Motion and are in agreement regarding the relief sought.

---

[1] The Parties excerpted certain lengthy exhibits (certain Excel spreadsheets and PowerPoint decks) to just include the pages referenced at trial and in post-trial submissions.  The Parties have included as part of this Motion, demonstratives on the final exhibit list marked for identification, but not admitted into evidence, to the extent those exhibits contained confidential information.

## **TABLE OF CONTENTS**

Page

I.    PROCEDURAL BACKGROUND.................................................................. 8

    A.    The Protective Order ................................................................... 8

    B.    Third-Party Discovery ................................................................ 8

    C.    Party Discovery........................................................................ 10

II.    STANDARD OF REVIEW ........................................................................ 11

III.    DISCUSSION ........................................................................................... 12

    A.    Sensitive Party Information Warrants Protection .................................. 12

        i.    Confidential Book Acquisition Information ............................. 15

        ii.    Sensitive Operational Information........................................... 17

        iii.    Future Business Strategy ......................................................... 19

        iv.    Personally Identifiable Information ......................................... 21

    B.    Sensitive Third-Party Information Warrants Protection ....................... 23

    C.    Closed-Courtroom Testimony Warrants Protection ............................. 28

IV.    CONCLUSION........................................................................................ 29

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ball Mem. Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
 784 F.2d 1325 (7th Cir. 1986) ................................................................ 16

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
 984 F.3d 114 (D.C. Cir. 2021) ....................................................... 12, 14, 25

*Doe v. Syrian Arab Republic*,
 2020 WL 5422844 (D.D.C. Sept. 10, 2020) ............................................ 22

*E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*,
 98 F.3d 1406 (D.C. Cir. 1996) .............................................................. 11

*F.T.C. v. OSF Healthcare Sys.*,
 2012 WL 1144620 (N.D. Ill. Apr. 5, 2012) ............................................. 16

*Friedman v. Sebelius*,
 672 F. Supp. 2d 54 (D.D.C. 2009) ......................................................... 11

*Gardner v. Saul*,
 2020 WL 12969217 (D.D.C. Oct. 16, 2020) ............................................ 22

*Hyatt v. Lee*,
 251 F. Supp. 3d 181 (D.D.C. 2017) ....................................................... 26

*In re Application of New York Times Co. for Access to Certain Sealed Court Records*,
 585 F. Supp. 2d 83 (D.D.C.2008) .......................................................... 13

*In re Fort Totten Metrorail Cases*,
 960 F. Supp. 2d 2 (D.D.C. 2013) ................................................ 12, 15, 25, 28

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*,
 316 F. Supp. 3d 455 (D.D.C. 2018) ....................................................... 11

*Jackson v. Starbucks Corp.*,
 2022 WL 888180 (D.D.C. Mar. 25, 2022) ............................................... 24

*Johnson v. Greater Se. Cmty. Hosp. Corp.*,
 951 F.2d 1268 (D.C. Cir. 1991) ............................................................ 11

*McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*,
 375 F.3d 1182 (D.C. Cir. 2004) ............................................................ 18

*Metlife, Inc. v. Fin. Stability Oversight Council*,
 865 F.3d 661 (D.C. Cir. 2017) ..................................................... 11, 14, 24, 29

*New York v. Microsoft Corp.*,
 2002 WL 649456 (D.D.C. Apr. 2, 2002) ................................................. 26

*Nixon v. Warner Commc'ns, Inc.*,
 435 U.S. 589 (1978) .......................................................................... 14

*Nursing Home Pension Fund v. Oracle Corp.*,
 2007 WL 3232267 (N.D. Cal. Nov. 1, 2007) ........................................... 22

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Rich v. Shrader*,
  2013 WL 6028305 (S.D. Cal. Nov. 13, 2013) ........................................................ 18

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,
  2018 WL 432654 (E.D. Cal. Jan. 16, 2018) .......................................................... 18

*Roseberry-Andrews v. Dep't of Homeland Sec.*,
  299 F. Supp. 3d 9 (D.D.C. 2018) ....................................................................... 22

*Saint Alphonsus Med. Ctr.--Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
  2014 WL 3101716 (D. Idaho July 3, 2014) .......................................................... 18

*SMD Software, Inc. v. EMove, Inc.*,
  2013 WL 1091054 (E.D.N.C. Mar. 15, 2013) ........................................................ 18

*State of New York v. Microsoft Corp.*,
  2002 WL 818073 (D.D.C. Apr. 29, 2002) ......................................................... 24, 25

*U.S. v. ISS Marine Servs.*,
  905 F. Supp. 2d 121 (D.D.C. 2012) .................................................................. 23

*United States ex rel Scott v Humana*,
  2021 WL 4449277 (W.D. Ky. Sept. 28, 2021) ....................................................... 16

*United States v. Aetna Inc.*,
  2016 WL 8738427 (D.D.C. Dec. 2, 2016) ................................................. 17, 18, 19, 20

*United States v. All Assets Held at Bank Julius Baer & Co.*,
  520 F. Supp. 3d 71 (D.D.C. 2020) ..................................................................... 14

*United States v. Anthem, Inc.*,
  2017 WL 10505050 (D.D.C. Jan. 18, 2017) .......................................................... 23

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980) .................................................................... passim

*Vanda Pharms., Inc. v. Food & Drug Admin.*,
  539 F. Supp. 3d 44 (D.D.C. 2021) ..................................................................... 19

# I.    PROCEDURAL BACKGROUND

## A.    The Protective Order

The Parties negotiated and agreed to a proposed protective order, which the Court entered on November 17, 2021 ("Protective Order"). (Dkt. 38). The Protective Order was intended, in part, to protect from public disclosure both party and third-party confidential, proprietary, or otherwise sensitive information that may be produced in the case. To that end, the Protective Order directed that any confidential information produced in the case be designated using one of two levels of confidentiality designations: "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

After the Protective Order was entered, the Parties engaged in written discovery and document production. That discovery included both party and third-party discovery. In compliance with the Protective Order, if Defendants or third parties determined that materials to be produced in this case contained confidential, proprietary, or otherwise sensitive information, the producing party marked the materials using either the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation, as appropriate. Ultimately, the Parties included many of these materials on their trial exhibit lists and introduced them at trial.

## B.    Third-Party Discovery

The Case Management Order ("CMO") (Dkt. 53), as modified by subsequent orders (Dkts. 86, 89), required that the Parties contact each third party by June 23, 2022, and inform the third party if any of the confidential materials the third party produced in this case ultimately appeared on the Parties' trial exhibit lists. Third parties were required to notify the Parties of objections, if any, by July 6, 2022. The Parties thereafter met and conferred no later than July 12, 2022 with each third party that had objected and discussed the use and disclosure of these confidential materials at trial. If the third party had lingering objections after meeting and

conferring with the Parties, the third party was invited to submit a letter to the Court by July 21, 2022 describing its objections.  In accordance with this procedure, twenty-eight third parties submitted letters requesting that the Court prevent public disclosure of the confidential information contained in the materials the third parties produced in discovery.  Generally speaking, these third parties objected to the public disclosure of their commercially sensitive data, internal discussions of forward-looking business strategy, and details, including financial terms, of book acquisitions or attempted acquisitions.

The objecting third parties were invited to attend a July 25 pretrial status conference where they were permitted to address the Court regarding the use of their confidential information at trial.  At the July 25 conference, the Court sealed confidential third-party business information that "reveals the identities of authors, publishers, and agents involved in individual contracts, negotiations, or auctions," finding that the factors set forth in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) weighed in favor of sealing.  July 25, 2022 Hr'g Tr. 19:22-25, 22:1-5.  That ruling also contemplated "raw data" files that were created to support expert reports but contain the same confidential third-party information to be permanently sealed.  *See id.* at 12:21-18:16.  The Court further ordered that the Parties meet and confer to revise a Stipulated Order on the Use of Confidential Information at Trial (the "Stipulated Order") so that the Stipulated Order would specifically encompass confidential information produced by agents and publishers.  *Id.* at 13:22-16:15.  The Parties jointly revised the Stipulated Order, incorporating input from third parties.  The Court signed the revised Stipulated Order on August 9.  (Dkt. 165).

In signing the Stipulated Order, the Court ordered the Parties not to reveal "the identity of an author in public filings or in open court during trial in a manner that connects that author's

identity to specific amounts offered, committed, or paid in connection with a book contract or any other specific financial details of an actual or proposed book contract." Dkt. 165 at 1. The Stipulated Order further held that if the Parties intended to discuss any confidential third-party information in open court that can be individually identified, the third-party's identity must be anonymized or redacted. *Id.* at 1-2.

The Parties diligently honored their obligations to prevent the public disclosure of confidential third-party information during trial. To that end, the Parties met and conferred with each third party before and during trial and reached agreements with each third party regarding which portions of the third party's information could and could not be publicly displayed and discussed at trial. The Parties now seek to seal these exhibits, and where possible, provide redacted and excerpted copies, to maintain confidential the information that the Parties and third parties agreed to keep out of public view.

### C.    Party Discovery

The Parties also worked diligently to protect confidential and sensitive Defendant information from public disclosure. Pursuant to section XIV(1)(d) of the Parties' Joint Pretrial Statement (Dkt. 119), each Party disclosed to all other Parties any exhibit the Party intended to use with a witness on its witness list two days before that witness was called. The Parties then met and conferred regarding the confidentiality of any such exhibits and worked to agree on limited proposed redactions wherever possible. The Parties engaged in a similar process for all deposition transcripts that might be used for impeachment during trial as well as deposition testimony that was designated to be used at trial. Moreover, if it was evident that designated deposition testimony or a live trial witness's testimony might involve discussion of confidential material, the Parties conferred to determine whether and what portions of the testimony warranted a closed trial session.

Following those efforts, the Parties now submit this joint Motion to permanently seal the exhibits, demonstratives, and testimony that the Parties agree warrant protection under the *Hubbard* factors. Whenever possible, the Parties are providing the Court with redacted and excerpted copies of exhibits, demonstratives, and testimony that can be made available for public access while maintaining confidential the information that warrants protection.

## II.    <u>STANDARD OF REVIEW</u>

Whether to seal court filings "is a decision best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 56-57 (D.D.C. 2009). While "the starting point" in considering whether to "seal court records is a 'strong presumption in favor of public access to judicial proceedings,'" "documents filed with the court or introduced into evidence[] often have a private character, diluting their role as public business." *E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). Public access "may be denied 'to protect trade secrets . . . and to minimize the danger of an unfair trial by adverse publicity.'" *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 316 F. Supp. 3d 455, 463 (D.D.C. 2018) (quoting Hubbard, 650 F.2d at 315).

This Circuit has identified six factors that bear on public access:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *Hubbard*, 650 F.2d at 317-22). All six *Hubbard* factors are relevant, but "a strong showing on

one *Hubbard* factor can outweigh several other factors." *In re Fort Totten Metrorail Cases*, 960

F. Supp. 2d 2, 11 (D.D.C. 2013).

For the reasons set forth below, all information subject to this Motion warrants sealing.

## III.   **DISCUSSION**

The Parties have conducted a rigorous, document-by-document, line-by-line review of all

trial exhibits and testimony and have identified compelling reasons to permanently seal the full

unredacted copies of those materials that contain sensitive information that should be shielded

from public disclosure.  As set forth below, the Parties address these materials by category and

subcategory to aid the Court in its *Hubbard* analyses and avoid repetition.  Some exhibits and

testimony fall into more than one category and should be sealed for multiple reasons.

### A.    **Sensitive Party Information Warrants Protection**

Many trial exhibits, demonstratives, and testimony contain Defendants' sensitive

information, consisting of: confidential terms of book acquisitions and negotiations;

competitively sensitive information about business operations; discussions of forward-looking

business strategies, projections, and integration plans; and personally identifiable information.

Public disclosure of this information would prejudice PRH and S&S, and harm their business

interests.  The *Hubbard* factors, as applied to each of these categories, weigh in favor of sealing

this sensitive information from public disclosure.

In assessing the first *Hubbard* factor, the court is to "consider the public's need to access

the information that remains sealed, not the public's need for other information sought in the

overall lawsuit." *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 119

(D.C. Cir. 2021).  Because the Parties are submitting redacted copies of confidential exhibits and

trial transcripts where possible and have worked diligently to redact and seal as little relevant

information as possible, the information that the Parties are requesting remain sealed in this case

is limited, while much of the trial record remains public.  For nearly all exhibits that are subject

to this Motion, the Parties exchanged proposed redactions before the exhibits were used in court

and met and conferred to reach agreement on narrow redactions aimed at guarding only that

information that warrants protection.  As discussed in more detail in the following sections, there

is no public need to access the limited information that the Parties seek to keep fully under seal.

The first factor therefore weighs in favor of sealing sensitive party information.

　　　　The second and third *Hubbard* factors also weigh in favor of sealing.  The second

*Hubbard* factor concerns whether the public had prior access to the information and to what

extent.  *Hubbard*, 650 F.2d at 318 ("previous access has been considered relevant to a

determination whether more liberal access should be granted"); *In re Application of New York*

*Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 93 (D.D.C.2008)

(finding that when "much of the critical information is already in the public forum ... this factor

weighs in favor of unsealing the ... materials").  The third *Hubbard* factor asks whether someone

has objected to disclosure and who is that objector.  *Hubbard*, 650 F.2d at 319.  As to each

category of party information subject to this Motion, the answers to these questions are the same:

the public has not previously had access to the information and Defendants, whose competitively

sensitive information is at issue, continue to object to its disclosure.

　　　　The fourth and fifth *Hubbard* factors are often considered together.  They concern the

strength of the objector's privacy interests and the possibility that disclosure will prejudice the

objector.  July 25, 2022 Hr'g Tr. 21:7-10 ("The fourth and fifth *Hubbard* factor is concerning the

strength of the interests and possibility of prejudice are often considered together …").  "Valid

privacy and property interests are not limited to personal details, but may also include

confidential business information that should be kept private for competitive business reasons."

*United States v. All Assets Held at Bank Julius Baer & Co*., 520 F. Supp. 3d 71, 83 (D.D.C. 2020). As discussed more fully below, there should be little doubt that Defendants have a strong interest in protecting their sensitive commercial information from disclosure to competitors; such disclosure would harm Defendants in business negotiations and prejudice Defendants' ability to successfully implement strategic plans, including future book negotiations and corporate acquisitions. In addition to the Defendants' interest in keeping this information confidential, the United States has a strong interest in keeping competitively sensitive information confidential to prevent the transfer of such information among competitors, thereby diminishing competition among those competitors as a result of the disclosure. As the Supreme Court observed in 1978, courts have consistently "refused to permit their files to serve as … sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 598 (1978). Moreover, corporations and individuals alike have a strong private interest in protecting disclosure of personally identifiable information. For these reasons, courts regularly exclude the public from accessing "the records of court proceedings to protect private" interests. *MetLife*, 865 F.3d at 671 n.12 (quoting *Hubbard*, 650 F.2d at 315 & n.81). Accordingly, the fourth and fifth factors also weigh in favor of sealing.

Finally, the sixth *Hubbard* factor concerns the purpose for which the exhibit was introduced during the trial. "[W]hen the sixth factor highlights the fact that a sealed document didn't affect a judicial decision, it can be the 'most important' element cutting against disclosure[.]" *Cable News Network*, 984 F.3d at 120. Even if the information at hand in this Motion is relevant to the Court's determination, the other factors favor maintaining the materials under seal.

Ultimately, all factors weigh in favor of sealing Defendants' confidential information. Even if that were not the case, the Court need not find that all *Hubbard* factors weigh in favor of sealing.  Again, "a strong showing on one *Hubbard* factor can outweigh several other factors." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 11.  Below, the Parties describe the categories of sensitive party information that was entered into evidence and why that information specifically warrants sealing.

### i.    Confidential Book Acquisition Information

The first category of information Defendants seek to permanently seal is confidential information related to Defendants' acquisition, or attempted acquisition, of books.  This information appears in the exhibits and demonstratives identified in Exhibit A to this Motion, in the following forms: emails related to book acquisitions, including discussions of offers and contract negotiations and attachments; "winner" and "runner-up" logs; profitability trackers; summaries of book auctions; and Rosetta Stone decoders that, when applied to the trial transcript, would allow any reader to easily decode confidential testimony.[2]

The Court largely addressed this category of exhibits as it related to third-party information at the July 25 pre-trial status conference in this case.  At that conference, the Court conducted an analysis of the *Hubbard* factors and determined that they weighed in favor of sealing information that "reveals the identities of authors, publishers, and agents involved in individual contracts, negotiations, or auctions."  July 25, 2022 Hr'g Tr. 22:1-5.  The Court stated that it could "discern no need for the public to access the specific details of any particular book contract or at least the identities of the parties involved in any given transaction."  *Id.* at 20:10-13.  The Court acknowledged that this information "is routinely kept secret to avoid competitive

---

[2] This Court has ordered such Rosetta Stone exhibits to be "filed with the Court under seal at the close of trial."  (Dkt. 165).

injury" (*id*. at 20:23-24) and "the decision to seal certain evidence that reveals confidential

information [would not] adversely affect the public's right to public access" (*id*. at 20:16-19).

Finally, the Court recognized that the "details of each book contract, [] including the identity of

the parties to each transaction, will not be significant in the Court's decision-making." *Id.* at

21:23-25.

The same is true for Defendants' information related to book acquisitions. Although the

public can determine what publishing house publishes a given book and how well that book is

selling, the public generally has no access to contract terms, proprietary data related to costs and

profitability, or details of specific bids made on a book or the terms of an offer. That information

"is routinely kept secret to avoid competitive injury" and sealing it would not "adversely affect

the public's right to public access." *Id.* at 20:18-19, 24. Courts routinely restrict the public

disclosure of confidential bidding and win-loss information because disclosure can affect

industry behavior. *See Ball Mem. Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1345–46

(7th Cir. 1986) (restricting confidential bidding data from disclosure because competitors could

use the data to change pricing or "use it to [their] advantage in the next round of negotiations");

*F.T.C. v. OSF Healthcare Sys.*, 2012 WL 1144620, at *3 (N.D. Ill. Apr. 5, 2012) (restricting

from disclosure "contract terms, contract negotiations and strategies, and pricing information" as

trade secrets); *United States ex rel Scott v Humana*, 2021 WL 4449277, at *7 (W.D. Ky. Sept.

28, 2021) (restricting detailed spreadsheets and tables showing a party's bids spanning several

years due to the competitive sensitivity of the information). Disclosing that same information

here, as well as profit and loss data, would give competitors an unfair look into Defendants'

bidding and offer strategies, which could impact future book acquisitions and competition for

those books—the very core of the publishing industry. It would also reveal sensitive information

about author compensation, agent negotiations, and contract terms, which publishers, authors, and agents alike routinely seek to protect.

As the Court has already recognized, the particular details or data of any given book acquisition or sale "will not be significant in the Court's decision-making." July 25, 2022 Hr'g Tr. 21:23-25. Moreover, Defendants are the ones that own that data and they have objected to its disclosure out of fear of competitive injury. The *Hubbard* factors therefore weigh in favor of sealing this information.

### ii. Sensitive Operational Information

The second category of information Defendants seek to permanently seal is Defendants' sensitive operational and financial information. This information appears in the exhibits and demonstratives identified in Exhibit B to this Motion, in the following forms: current cost information, contract terms, market analyses, proprietary strategies, marketing spend, and limited information relating to PRH's proposed acquisition of S&S, including the transaction agreement, the sale process, and corresponding modeling and projections.

This type of sensitive commercial information is routinely protected in this district. For instance, in *United States v. Aetna Inc.*, 2016 WL 8738427, at *2 (D.D.C. Dec. 2, 2016), a special master sitting for a court in this district held that all *Hubbard* factors weighed in favor of sealing various documents and testimony that contained discussions of competitively sensitive information, including information related to various companies' current business operations and future business strategies. As just one example from that case, Blue Cross Blue Shield Association ("BCBSA") objected to the disclosure of testimony that contained BCBSA's "competitively sensitive and highly confidential [business] information, including analyses of market trends and discussions of business strategy options." *Id.* BCBSA claimed that the disclosure "would result in substantial harm to BCBSA, including to its ability to compete in the

industry." *Id.* Analyzing the *Hubbard* factors, the special master recognized that: "[t]he public's need to access this material is *de minimis*"; there had been no prior public access to the information; BCBSA "expressly requested that the information be kept under seal"; BCBSA had a "very strong interest in keeping its proprietary business information confidential"; BCBSA was likely to suffer prejudice if the information was not sealed; and the information was proffered to support a claim or defense in the case but BCBSA had not voluntarily placed the information at issue.[3] *Id.*

Defendants' sensitive operational information should be treated no differently. This information is not readily available to the public and there is no particular public interest in it. Even if there is public interest in the information, it is *de minimis* and Defendants object to the disclosure because it would cause harm to Defendants and their "ability to compete" in the industry. *Aetna Inc.*, 2016 WL 8738427, at *2. For instance, disclosure of some of the identified exhibits (e.g., PX-0682) would give competitors insight on the rates Defendants were able to

---

[3] Courts across the country follow this same approach. *See, e.g., McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1189 (D.C. Cir. 2004) ("Simply put, release of the option year prices in the present contract would likely cause McDonnell Douglas substantial competitive harm because it would significantly increase the probability McDonnell Douglas's competitors would underbid it in the event the Air Force rebids the contract."); *Saint Alphonsus Med. Ctr.--Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, 2014 WL 3101716, at *6 (D. Idaho July 3, 2014) (sealing confidential business documents because "proprietary information is akin to a secret formula of ingredients for, say, a soft drink — it gives a competitive advantage to the holder of the formula, who has expended time and money to develop the formula. If the secret formula is revealed, the competitive advantage is lost"); *Rich v. Shrader*, 2013 WL 6028305, at *4 (S.D. Cal. Nov. 13, 2013) (sealing documents containing "business strategies and secrets" because "[s]uch information may be utilized by business competitors seeking to gain an advantage by circumventing the time and resources necessary to develop their own business strategies and models"); *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2018 WL 432654, at *3 (E.D. Cal. Jan. 16, 2018) (granting plaintiff's request to seal the rates that it charges its customers); *SMD Software, Inc. v. EMove, Inc.*, 2013 WL 1091054, at *3 (E.D.N.C. Mar. 15, 2013) (noting compelling reasons to seal "confidential information such as plaintiffs' pricing methods, projected costs and profit margin, the parties' revenue and revenue growth information, and customer loyalty information").

negotiate with vendors, retailers, and lessors.  Disclosure of other exhibits and demonstratives will provide competitors insight into Defendants' costs and profit margins (e.g., PX-0162, PX-0163, PX-0405, PX-0406, PX-0530, PX-0663, PX-0885, Defs.' Demonstratives 14 and 18). While disclosure of other exhibits will provide competitors and others insight into Defendants' personnel decisions, marketing expenditures, and merger/acquisition processes and strategy (e.g., PX-0241, PX-0669, PX-0679, PX-0864, PX-0885, Defs.' Demonstrative 2 and 14).

The sensitive commercial information at issue in this category is precisely the type of information that the fourth *Hubbard* factor is specifically intended to protect: trade secrets and "business information that might harm a litigant's competitive standing."  *Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 55 (D.D.C. 2021) (citing *Hubbard*, 650 F.2d at 315). Accordingly, the material identified as containing discussion of Defendants' sensitive operational information should be sealed.

### iii.    Future Business Strategy

The third category of information Defendants seek to permanently seal is information related to Defendants' future business strategies.  This information appears in the exhibits identified in Exhibit C to this Motion, in the following forms: financial models, plans regarding forward-looking business strategies, forward-looking personnel discussions, and business projections.

As discussed *supra*, these types of internal strategy documents are regularly kept from public disclosure.  For instance, in *Aetna*, 2016 WL 8738427, at *2, a court in this District granted a motion to seal brought by defendant Humana, sealing exhibits that contained, among other things, "competitively sensitive information, including information regarding Humana's current and future corporate strategies and assumptions."  A special master sitting for the court reviewed the exhibits and determined that "the redacted portions of each exhibit contain non-

public Humana financial information and future strategies." *Id.* Noting that the requested

redactions were "limited" and "related to financial projections for future years," the special

master recommended that Humana's motion be granted and the information be sealed. *Id.*

This case is no different. The Parties have identified a limited number of exhibits and

propose narrow redactions of forward-looking strategic discussions and projections. For

example, certain documents (e.g., PX-0080, PX-0148, PX-0445, PX-0663, PX-0669, PX-0679,

DX-339) contain discussion and information regarding competitive bidding postures in the S&S

sales process, financial modeling relating to the acquisition of S&S, and future capital allocation

plans. This information is competitively sensitive to Defendants in connection with the future

completion of the sale, acquisition, and/or integration of S&S as well as future transactions for

all companies involved.

Other exhibits (e.g., PX-0087, PX-0530) are emails and documents in which some of

Defendants' CEOs and senior executives discuss personnel recommendations, budgeting, and

corporate priorities such as subscription models, title acquisitions, the expansion of PRH's

catalog, and organizational changes such as redeployment of sales, marketing and publicity

resources, among others. Disclosure would provide competitors with access to Defendants'

future plans and could be used to gain an unfair competitive advantage.[4] Other exhibits include

slide decks (e.g., PX-0079, PX-0151) that contain discussion and analyses regarding the creation

---

[4] Similarly, PX-0983 is an email containing specific PRH sales, profit, and other forward-looking
financials. The Parties propose redacting just the specific numbers (and PII) contained in this
document because none of these specific numbers bear on the ultimate issue for the Court to
decide and these details are competitively sensitive. PX-0045 is a document containing
Bertelsmann board minutes discussing numerous topics unrelated to the issues in this case – e.g.,
personnel matters, Bertelsmann technology, data, and other strategies for its broader business
such as its TV and magazine business segments. The Parties are submitting redacted and/or
excerpted copies of these exhibits that conceal the confidential and irrelevant portions reflecting
these sensitive discussions.

of a new PRH imprint, the details of which are competitively sensitive to PRH.  To that end, PRH proposes to redact only the potential name of the imprint and other identifying information.

All of these exhibits, which contain information related to Defendants' forward-looking business strategy, should be redacted or sealed in their entirety for the very same reasons that any materials containing discussion of Defendants' sensitive operational information should be sealed: this is sensitive commercial information that is not readily available to the public and there is no particular public interest in it; Defendants object to the disclosure because it would cause competitive harm to Defendants, including through disclosure to their competitors and hinder Defendants' ability to implement future business strategies; and, although some of the information may have been proffered to support a claim or defense in this case, Defendants did not voluntarily bring this matter or introduce any exhibits falling into this category.

Accordingly, any materials containing discussion of Defendants' future business strategy should be redacted or sealed in their entirety.

### iv.    Personally Identifiable Information

The fourth category of information Defendants seek to permanently seal is personally identifiable information.  This information appears in exhibits in the following forms: email addresses, phone numbers, and mailing addresses of Defendants' employees and third parties. Many of the exhibits addressed *supra* and listed in Exhibits A, B, and C to this Motion contain personally identifiable information alongside the other sensitive information addressed above. Exhibit D to this motion identifies additional exhibits that contain personally identifiable information but no other confidential information.  All personally identifiable information should be protected and has been redacted, where possible, from the redacted and excerpted copies of

the exhibits that the Parties are submitting to the Court contemporaneously with this motion.[5]

There is no need for public access to personally identifiable information, the disclosure of which may lead to Defendants' employees and third parties receiving an influx of contacts regarding book submissions, legal inquiries, news articles, and potentially harassing messages. Although some of this information is presumably publicly accessible, the right to keep personally identifiable information private is well recognized. *See, e.g.*, *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 30 (D.D.C. 2018) (finding it "proper" to withhold "the names, telephone numbers, email addresses, work locations, and other personally identifiable information" of individual because "individuals have a substantial privacy interest in personal information"); *Doe v. Syrian Arab Republic*, 2020 WL 5422844, at *3 n.4 (D.D.C. Sept. 10, 2020) ("The Court permitted the Plaintiffs to file their motion for default judgment and the underlying exhibits under seal because they contained personally identifiable information …"); *Gardner v. Saul*, 2020 WL 12969217, at *1 (D.D.C. Oct. 16, 2020) ("Despite the presumption in favor of disclosure, the Federal Rules of Civil Procedure describe circumstances where filings may be redacted and where access to public filings may be limited. Parties may redact portions of certain personally identifiable information …." (internal citation omitted)); *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("The Ninth Circuit has found that compelling reasons exist to keep personal information confidential to protect an individual's privacy interest and to prevent exposure to harm or identity theft.").

---

[5] Some exhibits identified in Exhibit D (e.g., PX-0068, DX-076) include slide decks with certain slides that were not referenced at trial but which contain sensitive commercial information. Those slides, which were not referenced at trial or in post-trial submissions, have been removed from the redacted copies of the exhibits that the Parties are submitting to the Court contemporaneously with this Motion.  Accordingly, the only remaining confidential information in the relevant portions of these exhibits is personally identifiable information, which has been redacted.

### B.    Sensitive Third-Party Information Warrants Protection

The Parties move to permanently seal sensitive third party information .  This information includes lists of agent deals, specific advance offers made by third-party publishers for certain works, author contracts with third-party publishers, forward-looking business strategies, non-public competitively sensitive financial information (including financial projections), analyses performed by third parties in connection with the potential acquisition of S&S by those third parties, and other sensitive non-public business analyses performed by third parties.[6]  Much of this information is competitively sensitive commercial information that should be protected from public disclosure.  The trial exhibits that contain sensitive third party commercial information, and the confidential material contained in those exhibits, are identified and described in Exhibit E to this Motion.

Courts are particularly careful to protect confidential third-party information when assessing and applying the *Hubbard* factors.  "[W]here a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great" and "the fact that objection to access is made by a third party weighs in favor of non-disclosure."  *Hubbard*, 650 F.2d at 319–20; *see also U.S. v. ISS Marine Servs*., 905 F. Supp. 2d 121, 141 (D.D.C. 2012) (*Hubbard* requires third-party privacy interests to be treated with particular care).  Consistent with this guidance, courts have repeatedly recognized that it is appropriate to keep documents sealed when they contain "proprietary business information" from third-parties, including "competitive sensitive and business strategy information" that could harm a third-party's competitive standing. *See, e.g., United States v. Anthem, Inc.,* 2017 WL 10505050, at *2 (D.D.C. Jan. 18, 2017);

---

[6] This Court has already ruled that confidential business information that "reveals the identities of authors, publishers, and agents involved in individual contracts, negotiations, or auctions" be sealed because they meet the Hubbard factors.  July 25, 2022 Hr'g Tr. 22:1-5.  This information is contained within the third-party documents the Parties now move to be redacted or sealed.

*Jackson v. Starbucks Corp.*, 2022 WL 888180, at *5 (D.D.C. Mar. 25, 2022) (permitting the redaction of videos produced in litigation because "third parties on the videos have a privacy interest in their financial transactions that could be implicated by release"). Where a third party's interest in the confidentiality of its proprietary information is at stake, "courts commonly permit redaction of that kind of information." *MetLife*, 865 F.3d at 671. To that end, courts regularly "exclude[]" the public, both temporarily and "permanently," from accessing "the records of court proceedings to protect private" interests. *Id.* at 671 n.12 (quoting *Hubbard*, 650 F.2d at 315 & n.81).

The Parties have conferred with every third party whose commercially sensitive information was utilized at trial. The Parties have agreed to either submit redacted exhibits with the documents containing this information that can be made available for public access, or, when redaction is not feasible, keep the entire exhibit under seal. The *Hubbard* factors counsel that the sealing of third-party sensitive commercial information is warranted here.[7]

**_Hubbard_ Factor 1 – The Need for Public Access.** This factor weighs in favor of sealing and redaction, because there is no need for the public to access the competitively sensitive third-party commercial information used at trial. The information redacted or sealed does not substantially affect the public's access to the trial record as a whole. The vast majority of the trial occurred in open session and the vast majority of the information contained in the trial exhibits will continue to be publicly available. *See State of New York v. Microsoft Corp.*, 2002 WL 818073, at *2 (D.D.C. Apr. 29, 2002) (sealing Joint Marketing Agreement and restricting public access during trial where there is "no particular need for public access to the JMA and the

---

[7] Two exhibits, DX-408 and DX-409 are Rosetta Stones used during trial to discuss confidential information which this Court ordered to be "filed with the Court under seal at the close of trial." (Dkt. 165).

testimony relating thereto, aside from the more generalized public interest in these judicial proceedings"); *Cable News Network*, 984 F.3d at 119 ("A district court weighing the first factor should consider the public's need to access the information that remains sealed, not the public's need for other information sought in the overall lawsuit.").

**_Hubbard_ Factor 2 – Public Access to Documents.**  The public did not previously have access to these third-party documents.  These documents were provided to the Parties pursuant to the terms of the Protective Order through the discovery process.  *See In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 8 (second Hubbard factor weighed in favor of sealing and against disclosure in a case where settlement documents had not previously been disclosed to the public).  This factor weighs in favor of sealing and redaction.

**_Hubbard_ Factor 3 – Fact of Objection and Identity of Those Objecting to Disclosure.**
The Parties have conferred with the third parties regarding the public disclosure of their commercially sensitive information and all third parties continue to object to the public dissemination of the information at issue.  *See* July 25, 2022 Hr'g Tr. 21:4-6 ("This is not their case, and they have provided the information to the parties with the understanding that it would remain confidential."); *Hubbard*, 650 F.2d at 319 ("[a]n important element in this case is the fact that the party from whom the documents were seized was not made a defendant in the proceedings and now objects to public access . . . [w]e think that where a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great . . . ); *State of New York*, 2002 WL 818073, at *2 (sealing document produced by a third party and courtroom testimony regarding that document because, in part, "Qwest, a third party, has clearly objected to disclosure of this information in open court and has displayed strong property and privacy interests in maintaining the confidentiality of the information at issue"); *New York v. Microsoft*

*Corp.*, 2002 WL 649456, at *1 (D.D.C. Apr. 2, 2002) (sealing third party documents and related courtroom testimony which reflect the third party's "assessment of its own competitive position" and "specific aspects of [the third party's] competitive strategy" after the third party objected); *Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (noting that party objections "do not have the same strength as a third-party objection"). The third *Hubbard* factor weighs in favor of sealing and redaction.

### *Hubbard* **Factors 4 and 5 – Strength of Property and Privacy Interests and Possibility of Prejudice.** The third parties whose confidential information was used at trial have expressed a strong interest in maintaining the confidentiality of the sensitive information contained in the documents at issue. As detailed below, much of this information was addressed in the Court's July 25 order sealing confidential business information.

The third-party information at issue contains sensitive information pertaining to how these third-party agents and publishers do business. For example, several exhibits contain strategy decks and internal communications regarding the potential acquisition of S&S (e.g., DX-025, DX-143, DX-288), and contain information that may be competitively sensitive in future transactions. Other exhibits (e.g., DX-327) contain competitive analyses that other industry participants could use to gain commercial advantage. Some exhibits also contain sensitive financial information and forward-looking business strategy (e.g., DX-105, DX-279, DX-217), which competitors – and counterparties such as agents/authors – could use to the detriment of the third party.

The Parties also request that the Court seal confidential book acquisition information for the reasons described above (*supra* section A(i)). These exhibits consist of agent deal lists detailing every client the agent represents and/or every book deal the agent negotiated above

certain thresholds during the past few years.  These deal lists include non-public details of the

acquisition process for those titles such as the advance amounts paid, the bidding process

employed, the number of bidders, etc. (e.g., DX-263, PX-0749, PX-0831, PX-0838, PX-0856,

PX-0857, Defs.' Demonstrative 1, Defs.' Demonstrative 6).  Exhibits in this category also

include documents summarizing offers made by specific publishers for particular titles (e.g., DX-

220, DX-249, DX-333) and memos summarizing author contracts (e.g., DX-144, DX-148). This

information was largely addressed at the July 25 pre-trial status conference in this case.  At that

conference, the Court conducted an analysis of the *Hubbard* factors and determined that they

weighed in favor of sealing information that "reveals the identities of authors, publishers, and

agents involved in individual contracts, negotiations, or auctions."  July 25, 2022 Hr'g Tr. 22:1-

5.

      Finally, there are numerous charts and graphs used by experts at trial consisting of

analyses of industry data which reveals confidential and highly confidential third party

information including market share, specific advances paid to authors, and the number of

contracts publishers secured at certain thresholds (e.g., DX-375, DXX-376, DX-382, DX-384,

DX-436, DX-437, DX-438, PX-0959, PX-0960, PX-0963, PX-0968, Defs.' Demonstrative 20).

This category of information was largely addressed by Section 4 of the Stipulated Order, which

stated that the Parties may disclose in open court "analyses of industry data relying on

aggregated information, such as cumulative totals, percentages, or comparisons among

subgroups, only if, in those instances where any individual third-party publisher's or literary

agency's Confidential or Highly Confidential Information can be individually identified, the

third-party publisher's or literary agency's identity will be anonymized or redacted." (Dkt. 165 at

2).

Each third party objected to the public disclosure of this information and have expressed a strong interest in keeping this information sealed post-trial.  The fourth and fifth *Hubbard* factors thus weigh in favor of sealing and redaction.

### *Hubbard* Factor 6 – The Purposes for Which the Documents Were Introduced.

Much of the third party information and documents that are the subject of this Motion consist of granular details of specific transactions, offers, and book deals.  At the July 25 pre-trial status conference in this case, the Court noted that the "details of each book contract" including the "identity of the parties to each transaction" will not be significant to the Court's decision-making.  *Id.* at 21:23-25.

All six *Hubbard* factors favor sealing the third-party information at issue in this Motion. Even if that were not the case, the Court need not find that all *Hubbard* factors weigh in favor of sealing: "a strong showing on one *Hubbard* factor can outweigh several other factors."  *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 11.

### C.    Closed-Courtroom Testimony Warrants Protection

The Parties seek an order permanently sealing the portions of the trial transcript that occurred in closed session, including the portions of the deposition designations played in closed session.  These transcript portions are identified in Exhibit F to this Motion.

The testimony that occurred in closed session includes confidential party and third-party information consistent with the categories of information described above.  The Parties and, where relevant, third parties, discussed at length which portions of the trial required closed session because the testimony necessarily contained confidential party or third-party information. The Parties request that any transcript of the closed courtroom testimony remain sealed because it contains the sensitive, non-public information similar in kind to the information described above and because the interests advanced by the Parties and third parties outweighs the public's

need to access this testimony. *MetLife*, 865 F.3d at 671-72, n.12 (collecting cases to support proposition that courts "commonly permit redaction[s]" of "sensitive business information and trade secrets.").

## IV.  **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court enter an order permanently sealing the information, documents, and testimony specified above.

Dated: September 8, 2022

Respectfully submitted,

By: */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli (appearing *pro hac vice*)
M. Randall Oppenheimer (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
roppenheimer@omm.com

Andrew J. Frackman (appearing *pro hac vice*)
Abby F. Rudzin (appearing *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10026
Telephone: (212) 326-2000
afrackman@omm.com
arudzin@omm.com

Jonathan D. Hacker (D.C. Bar No. 456553)
Julia Schiller (D.C. Bar No. 986369)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
jhacker@omm.com
jschiller@omm.com

Deborah L. Feinstein (D.C. Bar No. 412109)
Jason Ewart (D.C. Bar No. 484126)
**ARNOLD & PORTER**
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
debbie.feinstein@arnoldporter.com
jason.ewart@arnoldporter.com

*Attorneys for Defendants Bertelsmann SE & Co.*
*KGaA and Penguin Random House LLC*

By:    */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing *pro hac vice*)
Jessica K. Delbaum (appearing *pro hac vice*)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (D.C. Bar No. 500031)
Michael Mitchell (D.C. Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (D.C. Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants Paramount Global (f/k/a ViacomCBS Inc.) and Simon & Schuster, Inc.*

By: */s/ John R. Read*
John R. Read (D.C. Bar No. 419373)
**United States Department of Justice**
**Antitrust Division**
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
john.read@usdoj.gov

*Attorney for the United States*

**EXHIBIT A**

This chart identifies the exhibits that include Defendants' confidential book acquisition

information and the Parties' proposal for protecting that information through limited redactions

or sealing.

| Exhibit | Description |
|---------|-------------|
| DX-021 | Emails related to book acquisition. Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| DX-038 | Emails related to book acquisition. Redacted information that can be used to identify the author and book |
| DX-054 | Emails related to book acquisition. Redacted information that can be used to tie author to financial terms of offer or agreement. |
| DX-131 | Emails related to book acquisition. Redacted PII and information that can be used to identify the author and book |
| DX-188 | Emails related to book acquisition. Redacted PII and information that can be used to identify the author and book |
| DX-286 | Emails related to book acquisition. Redacted information that can be used to identify the author and book. |
| DX-375 | List of top contacts by publisher. Redacted information related to top contracts by publisher. |
| DX-406 | Rosetta Stone used during Brian Tart's testimony. Sealed so public cannot decipher testimony related to confidential information. |
| DX-410 | Rosetta Stone used during Dr. Hill's testimony. Sealed so public cannot decipher testimony related to confidential information. |
| DX-411 | Rosetta Stone used during Jennifer Rudolph Walsh's testimony. Sealed so public cannot decipher testimony related to confidential information. |
| DX-412 | Rosetta Stone used during Jennifer Bergstrom's testimony. Sealed so public cannot decipher testimony related to confidential information |
| DX-413 | Rosetta Stone used during Sally Kim's testimony. Sealed so public cannot decipher testimony related to confidential information. |
| DX-414 | PRH P&L sheet for potential acquisition. Sealed to protect proprietary information and valuation. |
| DX-433 | Rosetta Stone used during Madeline McIntosh's testimony. Sealed so public cannot decipher testimony related to confidential information. |
| DX-439 | Defendants' Demonstrative 13, which relates to advances for top authors. Redacted information that can be used to tie author to financial terms of contracts. |
| DX-440 | Email related to book acquisition. Redacted PII and information that can be used to identify the author and book. |
| PX-0039 | Emails related to book acquisition. Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |

| PX-0041 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
|---------|----------------------------------------------------------------------------------------------------------------------------|
| PX-0042 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0054 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0107 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0116 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0121 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0161 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0190 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0197 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0218 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0320 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0324 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0326 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0327 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0328 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0332 | Emails related to book acquisition.  Redacted PII and information that can tie author to financial terms of offer or agreement. |
| PX-0336 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0421 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0438 | Emails related to book acquisition.  Redacted PII and information that can be used to tie author to financial terms of offer or agreement. |
| PX-0557 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |
| PX-0559 | Emails related to book acquisition.  Redacted information that can be used to tie author to financial terms of offer or agreement. |
| PX-0568 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0569 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |

| PX-0574 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |
|---|---|
| PX-0577 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book and sensitive information related to financial terms of offer or agreement. |
| PX-0588 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0590 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0613 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0624 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |
| PX-0632 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0643 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |
| PX-0652 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0656 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |
| PX-0697 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0700 | Emails related to book acquisition.  Redacted information that can be used to identify the author and book. |
| PX-0716 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book. |
| PX-0729 | Emails related to book acquisition.  Redacted PII and information that can be used to identify the author and book and sensitive information related to financial terms of offer or agreement. |
| PX-0858 | S&S's objections and responses to interrogatories.  Redacted information related to contract terms and strategies as well as amounts of offers. |
| PX-0862 | PRH's objections and responses to interrogatories.  Redacted information related to contract terms and strategies as well as amounts of offers. |
| PX-0863 | PRH's objections and responses to requests for admission.  Redacted information that can be used to identify the author and book. |
| PX-0882 | S&S's objections and responses to requests for admission.  Redacted information that can be used to identify the author and book. |
| PX-0989 | Email attaching tracker of profitability of books acquired by Putnam.  PII in cover email.  Tracker sealed to protect sensitive information related to book acquisitions and sales. |
| PX-0932B— PX-958B | Summary charts related to book acquisitions.  Redacted information that can be used to identify the author and book. |
| U.S. Demonstrative 5 | Rosetta Stone used to identify authors and titles.  Sealed so public cannot decipher testimony related to confidential information. |

| U.S. Demonstrative 9 | Rosetta Stone used to identify authors and titles.  Sealed so public cannot decipher testimony related to confidential information. |
| --- | --- |
| Defendants' Demonstrative 13 | Defendants' Demonstrative 13, which relates to advances for top authors. Redacted information that can be used to tie author to financial terms of contracts. |

**EXHIBIT B**

This chart identifies the exhibits that include Defendants' sensitive operational

information and the Parties' proposal for protecting that information through limited redactions

or sealing.

| Exhibit | Description |
|---|---|
| DX-022 | Email containing discussion of unrelated PRH business operations. Redacted sensitive financial and operational information. |
| DX-273 | Slide deck reflecting sensitive financial and operational information. Redacted sensitive financial and operational information from excerpted copy. |
| DX-301 | Email attaching spreadsheet tracking integration progress from prior merger. Redacted PII in email and sealed spreadsheet containing sensitive financial and operational information. |
| DX-339 | Slide deck reflecting sensitive financial and operational information. Redacted sensitive financial and operational information. |
| DX-385 | Slide related to average advances paid by PRH before and after Penguin-Random House merger. |
| DX-405 | Emails related to sensitive operational and strategy information. Redacted sensitive operational and strategy information. |
| DX-417 | Email attaching appraisal information. Redacted PII in email and sensitive operational and strategy information in attachment. |
| DX-435 | Email containing discussion of unrelated PRH business operations. Redacted sensitive financial and operational information. |
| DX-437 | Slide related to number of contracts signed and advances paid. Redacted sensitive operational information related to contracts and advances. |
| DX-438 | Slide related to number of contracts signed and advances paid. Redacted sensitive operational information related to contracts and advances. |
| PX-0092 | Emails about sensitive financial and operational information. Redacted PII and sensitive financial information. |
| PX-0136 | Text messages regarding sensitive financial and other operational information. Redacted PII and sensitive information. |
| PX-0140 | Spreadsheet related to integration model. Seal entire spreadsheet. |
| PX-0162 | Emails attaching sensitive information related to financial and operational modeling. Redacted PII and sensitive information related to financial and operational modeling. |
| PX-0163 | Emails attaching slide deck that contains sensitive information related to financial and operational modeling. Redacted PII and sensitive information related to financial and operational modeling. |

| PX-0168 | Emails attaching sensitive information related to financial and operational modeling.  Redacted PII and sensitive information related to financial and operational modeling from excerpted copy. |
|---|---|
| PX-0241 | Emails attaching documents that contain discussion of sensitive personnel issues.  Redacted PII and discussion of sensitive personnel issues. |
| PX-0405 | Spreadsheet related to sensitive financial and operational modeling.  Seal spreadsheet. |
| PX-0406 | Spreadsheet related to sensitive financial and operational modeling.  Seal spreadsheet. |
| PX-0411 | Email attaching slide deck that contains sensitive information regarding contract negotiations.  Redacted PII and sensitive information regarding contract negotiations from excerpted copy. |
| PX-0412 | Email containing PII and sensitive financial and operational information.  Redacted PII and sensitive financial and operational information. |
| PX-0530 | Emails and attached document related to strategy.  Redacted sensitive financial and operational information. |
| PX-0634 | Emails related to S&S sales process.  Redacted sensitive financial and operational information. |
| PX-0663 | Emails, spreadsheet, and slide decks related to S&S sales process and operations.  Redacted sensitive information about the sales process and sensitive financial and operational information from excerpted copy. |
| PX-0669 | Emails and slide deck related to S&S sales process and operations.  Redacted sensitive information about the sales process and sensitive financial and operational information from excerpted copy. |
| PX-0679 | Emails and slide deck related to S&S sales process.  Redacted sensitive information about the sales process and sensitive financial information from excerpted copy. |
| PX-0682 | Emails related to printing contracts.  Redacted sensitive operational and strategy information. |
| PX-0858 | S&S's objections and responses to interrogatories.  Redacted information related to contract terms and strategies as well as amounts of offers. |
| PX-0864 | Sensitive document related to S&S sale.  Seal entire document. |
| PX-0885 | Sensitive document related to S&S sale.  Seal entire document. |
| PX-0886 | PRH's Response to Second Request Spec 31, which contained sensitive financial and operational information.  Redacted sensitive financial and operational information from excerpted copy. |
| Defendants' Demonstrative 2 | Demonstrative related to marketing spends on specific books.  Seal entire document. |
| Defendants' Demonstrative 14 | Demonstrative slide deck used during Manuel Sansigre's examination.  Deck relates to financial and operational modeling.  Seal entire demonstrative as sensitive operational information related to models. |

| | |
|---|---|
| Defendants' Demonstrative 18 | Demonstrative slide deck used during Dr. Snyder's examination. Demonstrative related to various forms of sensitive operational information and third-party information. Redacted sensitive operational information and confidential third-party information, as described in Exhibit E. |
| U.S, Demonstrative 8 | Demonstrative related to various forms of sensitive operational information and third-party information. Redacted sensitive operational information and confidential third-party information, as described in Exhibit E. |

## EXHIBIT C

This chart identifies the exhibits that include sensitive information related to Defendants' future business strategies and the Parties' proposal for protecting that information through limited redactions or sealing.

| Exhibit | Description |
|---------|-------------|
| PX-0079 | Emails attaching slide deck related to potential new imprint. Redacted PII and sensitive forward-looking strategy information from excerpted copy. |
| PX-0080 | Email attaching slide decks that contain various forms of sensitive information. Redacted PII in email and sensitive forward-looking financial information in slide deck. |
| PX-0087 | Emails attaching document that contains PII and sensitive forward-looking strategy information related to finances and personnel decisions. Redacted PII and sensitive forward-looking strategy information related to finances and personnel decisions. |
| PX-0148 | Email attaching document related to S&S sales process. Redacted PII and sensitive information related to sales process. |
| PX-0151 | Slide deck related to potential new imprint. Redacted sensitive forward-looking strategy information from excerpted copy. |
| PX-0445 | Board meeting minutes discussing forward-looking strategy. Redacted sensitive forward-looking strategy information. |
| PX-0530 | Emails and attached document related to future strategy. Redacted sensitive forward-looking financial and operational information. |
| PX-0663 | Emails, spreadsheet, and slide decks related to S&S sales process and operations. Redacted sensitive information about the sales process and sensitive and forward-looking financial and operational information from excerpted copy. |
| PX-0669 | Emails and slide deck related to S&S sales process and operations. Redacted sensitive information about the sales process and sensitive forward-looking financial and operational information from excerpted copy. |
| PX-0679 | Emails and slide deck related to S&S sales process. Redacted sensitive information about the sales process and sensitive forward-looking financial information from excerpted copy. |
| PX-0983 | Emails regarding sensitive forward-looking strategy information related to printing. Redacted PII and sensitive forward-looking strategy information. |

## EXHIBIT D

This chart identifies the exhibits that include personally identifiable information but no other confidential information.  The chart also identifies the Parties' proposal for protecting that information through limited redactions or sealing.

| Exhibit | Description |
|---|---|
| DX-022 | Email containing PII.  Redacted PII. |
| DX-071 | Email containing PII.  Redacted PII. |
| DX-076 | Email containing PII.  Redacted PII from excerpted copy. |
| DX-154 | Email containing PII.  Redacted PII. |
| DX-169 | Email containing PII.  Redacted PII. |
| DX-338 | Email containing PII.  Redacted PII. |
| DX-415 | Email containing PII.  Redacted PII. |
| DX-416 | Email containing PII.  Redacted PII. |
| DX-435 | Email containing PII.  Redacted PII. |
| PX-0068 | Email containing PII.  Redacted PII from excerpted copy. |
| PX-0157 | Email containing PII.  Redacted PII. |
| PX-0174 | Email containing PII.  Redacted PII. |
| PX-0529 | Email containing PII.  Redacted PII. |
| PX-0986 | Email containing PII.  Redacted PII. |
| PX-0757 | Email containing PII.  Redacted PII. |
| PX-0758 | Email containing PII.  Redacted PII. |
| PX-0760 | Email containing PII.  Redacted PII. |

**EXHIBIT E**

This chart identifies the exhibits that include third-party confidential information and the

Parties' proposal for protecting that information through limited redactions or sealing.

| Exhibit | Description |
|---------|-------------|
| DX-025 | News Corp strategy deck from January 2019.  Redacted a slide regarding HarperCollins' analysis regarding a potential acquisition of S&S. |
| DX-105 | Harper Collins 2021 budget PowerPoint deck.  Redacted a slide regarding prior and future financials including revenues, income, EBITDA, market share, key performance highlights from 2020 and 2021 strategic agenda. |
| DX-143 | Email thread between CEO of Harper Collins UK (Charlie Redmayne) and CEO of HarperCollins US  (Brian Murray) regarding the attempted acquisition of S&S by HarperCollins including estimated synergies and bidding strategy.  Redacted sensitive information regarding synergies and strategy related to bidding for S&S. |
| DX-144 | Publishing agreement between Kensington Publishing and Fern Michaels. Sealed entire document. |
| DX-148 | Publishing agreement between Kensington Publishing and Lisa Jackson. Sealed entire document. |
| DX-217 | Macmillan monthly executive meeting slide deck from October 2021. Redacted portions of slides that discuss Macmillan author contracts, financials, analysis of inventory and working capital, warehouse metrics, sales data, and analysis regarding overall performance of the company. |
| DX-220 | Hachette spreadsheet tracking titles Hachette bid $500,000 or more for and lost to other publishers.  The spreadsheet lists Hachette bidding details and subsequent sales information.  Sealed entire document. |
| DX-249 | Norton document summarizing the number of offers above $90,000 from January 1, 2018 through June 30, 2021.  Sealed entire document. |
| DX-263 | Ayesha Pande deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring publisher, advance paid and the bidding process employed.  Sealed entire document. |
| DX-279 | Harper Collins strategy update deck from January 2022. Redacted projections regarding trade title count, title advance spend, and analysis regarding future performance. Redacted supply chain strategy slide detailing supply chain initiatives by Harper Collins. |
| DX-288 | Lagardère Publishing slide deck from March 2020 analyzing the potential acquisition of S&S.  The slide deck reflects detailed analysis regarding sensitive internal deliberations including potential synergies and valuation. Sealed entire document. |
| DX-327 | Harper Collins 2020 budget PowerPoint deck.  Redacted information in slide reflecting Harper Collins' analysis of competitors. |
| DX-333 | Norton document summarizing the number of offers above $250,000 from January 1, 2018 through June 30, 2021.  Sealed entire document. |

| DX-375 | List of largest contracts by publishers with an advance of at least $1 million from 2019 through 2021. Redacted the names of publishers. |
| DX-376 | List of authors paid advances above $250,000 by specific publishers. Sealed entire document. |
| DX-382 | List of market shares for the market of all trade books from 2019-2021 for numerous publishers. Redacted the names of publishers other than PRH and S&S. |
| DX-384 | Selected titles in Dr. Hill's editor meeting minutes data listing the publisher that acquired the title and the publisher that was the runner-up for the title. Redacted the names of non-PRH or S&S publishers. |
| DX-408 | Rosetta Stone used for testimony of Don Weisberg relating to approval amounts. Sealed to protect proprietary business information. |
| DX-409 | Rosetta Stone used for testimony of Brian Murray to describe certain percentages. Sealed to protect proprietary business information. |
| DX-436 | Bar chart listing share of runner-up status for competitors to PRH and S&S for anticipated top sellers. Redacted the names of non-PRH or S&S publishers. |
| DX-437 | Chart listing share of contracts at various advance levels for specific publishers. Redacted the names of non-PRH or S&S publishers. |
| DX-438 | Chart listing share of contracts at various advance levels for specific publishers. Redacted the names of non-PRH or S&S publishers. |
| PX-0655 | Email thread with third party revealing book title. Redacted identifying information and book title. |
| PX-0749 | Elyse Cheney deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring publisher and advance paid. Sealed entire document. |
| PX-0754 | Emails related to book acquisition. Redacted information that can be used to identify the author and book. |
| PX-0790 | Hachette Book Group spreadsheet re potential title acquisitions. Sealed entire document. |
| PX-0821 | Kensington Publishing Corporation document detailing financial information. Sealed entire document. |
| PX-0829 | Macmillan Publishers document detailing financial information. Sealed entire document. |
| PX-0831 | Macmillan printer capacity update deck from March 2019. Sealed entire document. |
| PX-0837 | Gail Ross deal list detailing authors, titles and contracts. The document also reflects the acquiring imprint/publisher, advance paid, and scope of rights acquired. Sealed entire document. |
| PX-0838 | Gail Ross deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring imprint/publisher, advance paid, scope of rights acquired, the acquisition process employed, and final bidders. Sealed entire document. |
| PX-0856 | Andrew Wylie deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring imprint/publisher, advance paid, and submission type. Redacted this document be kept entirely under seal. |

| PX-0857 | Andrew Wylie deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring imprint/publisher and advance paid. Sealed entire document. |
| --- | --- |
| PX-0874 | Christy Fletcher deal list detailing authors, titles, and contracts. The document also reflects the acquiring imprint/publisher and advance paid. Sealed entire document. |
| PX-0959 | Bar chart listing market shares for numerous publishers. Redacted the names of non-PRH or S&S publishers. |
| PX-0960 | Chart listing title counts at various advance levels for numerous publishers. Redacted the names of non-PRH or S&S publishers. |
| PX-0963 | Chart listing share of contracts for anticipated top sellers and non-anticipated top sellers. Redacted the names of non-PRH or S&S publishers. |
| PX-0968 | Bar chart listing share of contracts by year by publisher and Amazon's market share of anticipated top sellers from 2019 to 2021. Redacted the names of non-PRH or S&S publishers. |
| PX-0995 | Bar chart listing percentage of acquired books that were Anticipated Top Seller titles. Redacted the names of non-PRH or S&S publishers. |
| Defendants' Demonstrative 1 | DX-263 with highlighting and color coding on it. Ayesha Pande deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring publisher, advance paid and the bidding process employed. As with DX-263, sealed entire document. |
| Defendants' Demonstrative 6 | PX-749 with highlighting and color coding on it. Elyse Cheney deal list detailing all of her authors, titles and contracts. The document also reflects the acquiring publisher and advance paid. Sealed entire document. |
| Defendants' Demonstrative 18 | Slide deck used for Ted Snyder's direct examination. Redacted non-PRH or S&S publishers from slides that contain the relative share of contracts entered into by publishers at various advance levels, names of third party publishers from chart listing the largest contract by advance dollars for each publisher, the number of titles acquired above $250k by non-PRH and S&S publishers, the names of authors that obtained $250k+ advances from various third party publishers, deposition testimony from third party publishers regarding plans to expand, and a bid made by Harper Collins for a specific title. |
| Defendants' Demonstrative 20 (DX-441) | Chart listing share of contracts at various advance levels for specific publishers. Redacted the names of non-PRH or S&S publishers. |

**EXHIBIT F**

This chart identifies the exhibits that consist of portions of designated deposition

testimony that contained discussion of confidential information and were therefore played at trial

in closed session:

| Exhibit | Description |
| --- | --- |
| PX-2001 | Steven Zacharius (Kensington) confidential designated deposition testimony from April 8, 2022. |
| PX-2003 | Liate Stehlik (HarperCollins) confidential designated deposition testimony from April 28, 2022. |
| PX-2006 | Michael Jacobs (Abrams) confidential designated deposition testimony from April 20, 2022. |
| PX-2008 | Christy Fletcher confidential designated deposition testimony from March 29, 2022. |
| DX-423 | John Glusman confidential designated deposition testimony from March 31, 2022. |

This chart identifies the portions of the trial transcript that consist of live trial testimony

that contained discussion of confidential information and was therefore elicited in closed session:

| Trial Tr. Cite | Description |
| --- | --- |
| 1137:17-1148:24 | Don Weisberg direct examination in closed session. |
| 1149:2-1173:23 | Don Weisberg cross examination in closed session. |
| 1174:2-1182:14 | Don Weisberg re-direct in closed session. |
| 1182:16-1183:25 | Don Weisberg re-cross in closed session. |
| 1438:6-1450:8 | Brian Murray direct examination in closed session. |
| 1450:8-1469:7 | Brian Murray cross examination in closed session. |
| 2195:1-2217:25 | Alex Berkett direct examination in closed session. |
| 2218:1-2230:6 | Alex Berkett cross examination in closed session. |

| 2230:7-2233:22 | Alex Berkett re-direct examination in closed session. |
|---|---|