**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA

        *Plaintiff,*

    v.

BERTELSMANN SE & CO. KGaA,
PENGUIN RANDOM HOUSE, LLC,
VIACOMCBS INC., and
SIMON & SCHUSTER, INC.

        *Defendants*.

Civil Action No. 1:21-cv-02886-FYP

---

**DEFENDANT SIMON & SCHUSTER, INC.'S RESPONSES AND OBJECTIONS**
**TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Defendant Simon & Schuster, Inc. ("S&S"), through its undersigned counsel and pursuant

to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, and Rule 26.2 of the Local Rules

of the United States District Court for the District of Columbia, the Scheduling and Case

Management Order (Dkt. No. 53) (the "CMO"), and the Stipulated Protective Order (Dkt. No.

38) (the "Protective Order"), hereby responds and objects to Plaintiff United States of America's

("Plaintiff") Second Set of Interrogatories to Defendant Simon & Schuster, Inc. dated February

17, 2022 (the "Interrogatories"). The responses and objections set forth herein (the "Responses")

are based upon the information presently available to S&S, and S&S expressly reserves the right

to modify, supplement, or amend its Responses.

**GENERAL OBJECTIONS**

The following General Objections, except as otherwise indicated, apply to each

Interrogatory, are incorporated by reference into each Response, and are in addition to the

specific objections as applicable.

1

Highly Confidential

US v. Bertelsmann
1:21-cv-0866-FYP
**PX 0858**

1.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it seeks to impose obligations on S&S that go beyond the obligations required by the Federal Rules of Civil Procedure, the Local Rules of this Court, the CMO, or the Protective Order.

2.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it is vague and ambiguous, and to the extent that it is overly broad, unduly burdensome, or duplicative of other discovery.

3.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it seeks disclosure of material or information beyond the scope of permissible discovery, that is not relevant to the subject matter of this lawsuit, or that is not proportional to the needs of this case, in contravention of Federal Rule of Civil Procedure 26(b)(1).

4.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it seeks information protected by the work-product doctrine, the attorney-client privilege, the joint-defense privilege, or any other applicable protection and/or immunity recognized by the Federal Rules of Civil Procedure, federal statute, or any other applicable federal or state rule or law.  S&S expressly reserves and claims all such protections and does not intend to waive any such protection.  To the extent that privileged information is disclosed, such disclosure is inadvertent and shall not be deemed a waiver of any privilege or protection.

5.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent that it seeks disclosure of information or material that is not within the possession, custody, or control of S&S, or not readily available to it.  S&S

2

Highly Confidential

responds to these Interrogatories based upon information in its possession, custody, and control and reasonably available to it at the present time.

6.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it seeks confidential or proprietary information, trade secrets, research, development, commercial information, or any other competitively sensitive information.  To the extent S&S agrees to provide such information in response to these Requests, it does so only subject to the Protective Order governing this action.

7.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it seeks information subject to protective orders and/or confidentiality agreements between S&S and third parties.  To the extent S&S agrees to provide such information, S&S will do so only subject to the terms of those protective orders and/or agreements.

8.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it seeks information already in Plaintiff's possession, more readily available to Plaintiff than S&S, in the public domain, or equally available to Plaintiff as to S&S.

9.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, to the extent it purports to require a search for information that is not readily accessible, that would be unduly burdensome, or would not be reasonably likely to yield non-duplicative, responsive material or information.

10.      S&S objects to each Interrogatory, including but not limited to the Instructions applied to each Interrogatory, as premature to the extent it seeks expert discovery and/or to the extent it purports to require S&S to marshal its evidence before trial.  Discovery is ongoing, and

Highly Confidential

DOJ-LIT-000000003

such information will be provided in accordance with the CMO and the Federal Rules of Civil

Procedure.

## OBJECTIONS TO THE INSTRUCTIONS

1.      S&S objects to the Instructions to the extent they seek to impose duties or obligations

on S&S that exceed the requirements of Federal Rules of Civil Procedure 26 or 33.

2.      S&S objects to the use of the undefined terms "you" and "your" in the Instructions as

vague, ambiguous, and overly broad to the extent use of these terms is intended to include entities

and individuals not party to this action and outside of S&S's control or seeks to impose discovery

obligations on any persons or entity that is not a party to this proceeding.  S&S construes those terms

to mean Simon & Schuster, Inc.

## RESPONSES & OBJECTIONS TO SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 1:**  For each investment since 2013 that you claim has improved
your supply chain for distributing books to retailers or wholesalers, including those that resulted
in expedited shipping times or lower return rates, provide a detailed description of the specific
investment, the amount in dollars of the investment, the date and location of the investment, and
the effects of the investment.

**RESPONSE TO INTERROGATORY NO. 1**:

S&S incorporates by reference each objection set forth in its General Objections.  S&S

objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the

needs of this case, on the grounds it seeks information dating back nine years and for any

"investment" regardless of the investment's size, geography, market, or relevance to the claims

or defenses of the parties or the subject matter of this action.  S&S further objects to the

Interrogatory as premature to the extent it seeks expert discovery and/or to the extent it purports

to require S&S to marshal its evidence before trial as such information will be provided in

accordance with the Federal Rules of Civil Procedure and the CMO.  S&S further objects to the

4

Highly Confidential

Interrogatory as vague and ambiguous because the terms "investment," "supply chain,"

"expedited shipping times," "lower return rates," and "effects of the investment" are not defined.

Subject to and without waiving its objections, S&S continually makes investments to

improve its supply chain for distributing books to retailers and wholesalers.  Accordingly, it

would not be feasible for S&S to identify each and every investment it has made since 2013 or

the marginal impact of any particular investment on S&S's supply chain.  Nevertheless, S&S

identifies the following investments that highlight some of the more significant expenditures

S&S has made since 2013:



| Year | |
|---|---|
| 2013 | |
| 2014 (Partial Year) | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |
| 2021 | |

Highly Confidential

DOJ-LIT-000000005

| Year | ▉ | ▉ | ▉ |
|------|------|------|------|
| 2019 | ▉ | ▉ | ▉ |
| 2020 | ▉ | ▉ | ▉ |
| 2021 | ▉ | ▉ | ▉ |

- 

| Year | ▉ |
|------|------|
| 2013 | ▉ |
| 2014 | ▉ |
| 2015 | ▉ |
| 2016 | ▉ |
| 2017 | ▉ |
| 2018 | ▉ |
| 2019 | ▉ |
| 2020 | ▉ |
| 2021 | ▉ |



| Year | ▉ | ▉ |
|------|------|------|
| 2013 | ▉ | ▉ |
| 2014 | ▉ | ▉ |
| 2015 | ▉ | ▉ |
| 2016 | ▉ | ▉ |
| 2017 | ▉ | ▉ |
| 2018 | ▉ | ▉ |
| 2019 | ▉ | ▉ |
| 2020 | ▉ | ▉ |
| 2021 | ▉ | ▉ |

6

Highly Confidential

DOJ-LIT-000000006

- ███████████████████████████████████████
  ███████████████████████████████████████
  █████████████████████████████████████████
  ██████████████████████████████████████
  ██████████████████████████████████████
  ████████████████████████████████

| Year | Total |
|------|-------|
| 2013 | ████ |
| 2014 | ████ |
| 2015 | █████ |
| 2016 | ████ |
| 2017 | ████ |
| 2018 | ████ |
| 2019 | ████ |
| 2020 | ████ |
| 2021 | ████ |

**INTERROGATORY NO. 2:**  Describe any policies, practices, rules, or requirements regarding your acquisition of audio rights (including, but not limited to, those referenced in VCBS-03211148, VCBS-02115435) for the period January 1, 2010, to the present and the basis for enacting or making any changes to such policies, practices, rules, or requirements over that time. For each policy, practice, rule, or requirement, please include in your description the substance of the policy, practice, rule, or requirement, as well as the date of the policy, practice, rule, or requirement went into effect.

**RESPONSE TO INTERROGATORY NO. 2**:

S&S incorporates by reference each objection set forth in its General Objections.  S&S

objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the

needs of this case, on the grounds it seeks information dating back 12 years and for "any

policies, practices, rules, or requirements" or "any changes" thereto, regardless of their scope,

significance, or relevance to the claims or defenses of the parties or the subject matter of this

action.  S&S further objects to this Interrogatory to the extent it mischaracterizes the cited

documents, which speak for themselves.  S&S further objects to the Interrogatory as vague and

Highly Confidential

DOJ-LIT-000000007

ambiguous because the terms "policies, practices, rules, or requirements," "substance," and "changes" are not defined.

Subject to and without waiving its objections, S&S responds that it is not aware of a formal, written company policy, practice, rule, or requirement with respect to the acquisition of audio rights for the period January 1, 2010 to the present. However, generally, S&S treats audio rights as a necessary component of its acquisition of rights to a new title and will not seek to acquire rights to a new title if audio rights are not included. This practice has not changed between January 1, 2010 and the present, but has received greater emphasis at various times for various reasons, including after Amazon's acquisition of Audible and in response to attempts by Audible and other entities to obtain audio rights from certain authors at various points in time. S&S refers to the following portion of the transcript of the deposition of Jonathan Karp on February 17, 2022, in which Mr. Karp describes his understanding of S&S's practices with respect to audio rights: 117:25-119:16, 119:25-120:9.

**INTERROGATORY NO. 3:** Describe any policies, practices, rules, or requirements regarding your payout structure for author advances for the period January 1, 2010, to the present and the basis for enacting or making any changes to such policies, practices, rules, or requirements over that time. For each policy, practice, rule, or requirement, please include in your description the substance of the policy, practice, rule, or requirement, as well as the date the policy, practice, rule, or requirement went into effect.

**RESPONSE TO INTERROGATORY NO. 3**:

S&S incorporates by reference each objection set forth in its General Objections. S&S further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case, on the grounds it seeks information dating back 12 years and for "any policies, practices, rules, or requirements" or "any changes" thereto, regardless of their scope, significance, or relevance to the claims or defenses of the parties or the subject matter of this action. S&S further objects to this Interrogatory as vague and ambiguous because the terms

8

Highly Confidential

"policies, practices, rules, or requirements," "payout structure," "substance," and "changes," are

not defined.

Subject to and without waiving its objections, S&S responds that it is not aware of a

formal, written company policy, practice, rule, or requirement with respect to payout structure

for author advances for the period January 1, 2010 to the present. However, generally, S&S

proposes to structure payments for advances less than $1 million such that there are four equal

payments: the first payment upon the execution of the agreement for acquisition of the rights to

a title; the second payment upon delivery and acceptance of the title; the third payment upon

publication of the hard-cover version of the title; and the fourth payment upon publication of the

paperback version of the title or one year after the publication of the hard-cover version of the

title. If the advance does not exceed $100,000, S&S may exercise greater flexibility with respect

to the proposed payout structure. S&S refers to the following portion of the transcript of the

deposition of Jonathan Karp on February 17, 2022, in which Mr. Karp describes his

understanding of S&S practices with respect to advance payout structures for advances less than

$1 million and less than $100,000: 251:18-252:12. S&S generally proposes to structure

payments for advances greater than $1 million such that the payments are divided into five equal

parts with the first four payments made on the same schedule described above and the fifth

payment made six months after publication of the paperback version of the title or eighteen

months after publication of the hard-cover version of the title. *See* VCBS-03201274. Generally,

S&S seeks to reserve a portion of an advance for payment upon publication of the paperback

version of the title or twelve months after publication of the hard-cover version of the title and

does not structure payments for advances such that more than half of the advance is paid prior to

publication of the title. S&S further refers to the following document that includes a description

Highly Confidential

DOJ-LIT-000000009

of these practices: VCBS-LIT-00496994, VCBS-01928233.  These practices with respect to

proposed payout structures for author advances have not changed between January 1, 2010 and

the present.

**INTERROGATORY NO. 4:**  Describe each instance that any publisher, including you, offered
an advance greater than or equal to $50,000 to acquire the rights to publish a proposed book, and
the author elected to self-publish that proposed book. Please include in your description the name
of the author, the name of the proposed book, the date of your offer for an advance, and the
financial details of your offer.

**RESPONSE TO INTERROGATORY NO. 4**:

S&S incorporates by reference each objection set forth in its General Objections.  S&S

objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the

needs of this case, on the grounds it seeks information without limitation as to time and for "each

instance" of self-publication regardless of the circumstances or the relevance to the claims or

defenses of the parties or the subject matter of this action.  S&S further objects to the

Interrogatory as premature to the extent it seeks expert discovery and/or to the extent it purports

to require S&S to marshal its evidence before trial as discovery is ongoing and such information

will be provided in accordance with the Federal Rules of Civil Procedure and the CMO.  S&S

further objects to the Interrogatory as vague and ambiguous because the terms "the rights to

publish a proposed book," and "self-publish" are undefined.  S&S further objects to this

Interrogatory to the extent it seeks information that is not within S&S's possession, custody, or

control, that is equally available to Plaintiff, and/or that is not reasonably available to S&S, given

that S&S would not have information about every instance in which an author elected to self-

publish a proposed book, or in which "any publisher" offered an advance greater than or equal to

$50,000 to acquire the rights to publish the proposed book.

10

Highly Confidential

DOJ-LIT-000000010

Subject to and without waiving its objections, S&S responds that ████████

████████████████████████████████████████████████████████████████████████

████████████ However, S&S provides the following non-exhaustive, illustrative examples

in which an author elected to self-publish after receiving an offer from S&S or self-publishing

played a role in the competitive process to acquire a new title:

- In ████████ 2010, S&S offered an advance of around $400,000 for ████████ ████████ books. ████ first chose to publish with another publishing house, but ultimately decided to self-publish the ████████

- On ████████ 2020, S&S offered an advance payment of $175,000 for rights to publish ████████████████████████████████ S&S understands that the author declined the offer and elected to self-publish. *See* VCBS-03477375.

- In ████████ 2021, S&S made an advance offer of $250,000 for two titles by ████████ ████████████████████████ that was declined. S&S knew that that this offer may not be attractive because it appeared the author earned significantly more through self-publishing. *See* VCBS-LIT-01159062.

**INTERROGATORY NO. 5:** By title, date, and author, identify each auction or competition to acquire an author's content that you contend shows that Penguin Random House's proposed acquisition of Simon & Schuster would not result in substantial harm to authors. *See* Amended Answer paragraph 2 of Response to Specific Allegations (Dkt. No. 56 at pg. 6 of 18).

**RESPONSE TO INTERROGATORY NO. 5:**

S&S incorporates by reference each objection set forth in its General Objections.  S&S

objects to this Interrogatory to the extent it mischaracterizes S&S's response in the Amended

Answer to paragraph 2 of the Complaint, which speaks for itself, and/or attempts to reassign

Plaintiff's burden to prove its case.  S&S further objects to the Interrogatory as premature to the

extent it seeks expert discovery and/or to the extent it purports to require S&S to marshal its

evidence before trial as discovery is ongoing and such information will be provided in

accordance with the Federal Rules of Civil Procedure and the CMO.  S&S further objects to this

Interrogatory to the extent it seeks information that is not within S&S's possession, custody, or

11

Highly Confidential

DOJ-LIT-000000011

control, that is equally available to Plaintiff, and/or that is not reasonably available to S&S, given that in many instances, S&S and/or PRH are not participants in auctions or competitions to acquire an author's content, and therefore S&S would not have information pertaining to those auctions or competitions.  S&S further objects to the Interrogatory as vague and ambiguous because the terms "competition" and "author's content" are not defined.  S&S also objects to this Interrogatory as unduly burdensome because S&S does not keep a record of the advances it offers in a central location.  S&S further objects to this Interrogatory to the extent it lacks foundation, including to the extent it mischaracterizes the Amended Answer.  Finally, S&S objects to this Interrogatory on the ground that it is Plaintiff's burden, and not S&S's, to prove its allegations of harm to authors as a result of the Proposed Transaction.  For the avoidance of doubt, S&S does not have any burden to show that the Proposed Transaction would not result in harm to authors.

Subject to and without waiving its objections, S&S states that under prevailing case law, Plaintiff bears the burden to prove whether the Proposed Transaction will substantially lessen competition.  In an unconsummated merger, such as the Proposed Transaction, any inferences drawn about the transaction's probable effect on competition must rely on the totality of the evidence; mere anecdotes are not sufficient.  There is no auction or competition (or set of auctions or competitions) to acquire an author's content that shows that PRH's proposed acquisition of S&S would result in substantial harm to authors.  To the contrary, the totality of the auctions and competitions to acquire an author's content demonstrates, inter alia, that the parties face numerous competitors; those competitors could readily replace any hypothesized lost competition from S&S; and agents can and do control the sales process to ensure competition.

12

Highly Confidential

Dated: March 24, 2022                 By: */s/ Stephen R. Fishbein*

Stephen R. Fishbein (appearing pro hac vice)
Jessica K. Delbaum (appearing pro hac vice)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone:(212) 848-4000
sfishbein@shearman.com
jessica.delbaum@shearman.com

Ryan Shores (DC Bar No. 500031)
Michael Mitchell (DC Bar No. 1531689)
**SHEARMAN & STERLING LLP**
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel E. Mossman (DC Bar No. 1016255)
**SHEARMAN & STERLING LLP**
2828 North Harwood Street, Suite 1800
Dallas, TX  75201
Telephone: (214) 271-5777
rachel.mossman@shearman.com

*Attorneys for Defendants Paramount Global (f/k/a
ViacomCBS Inc.) and Simon & Schuster, Inc.*

13

Highly Confidential

DOJ-LIT-000000013

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 24, 2022 I caused a true and correct copy of the foregoing to be served on the following individuals, pursuant to paragraph 19(a) of the Scheduling and Case Management Order entered by the Court on December 15, 2021:

John R. Read (DC Bar #419373)
Sarah H. Licht (DC Bar #1021541)
Jessica N. Leal

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Fax: (202) 514-7308
john.read@usdoj.gov
sarah.licht@usdoj.gov
jessica.leal@usdoj.gov

*Attorneys for Plaintiff*

Daniel M. Petrocelli (appearing pro hac vice)
M. Randall Oppenheimer (appearing pro hac vice)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
roppenheimer@omm.com

Andrew J. Frackman (appearing pro hac vice)
Abby F. Rudzin (appearing pro hac vice)
Eamonn W. Campbell
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, NY 10026
Telephone: (212) 326-2000
afrackman@omm.com
arudzin@omm.com
ecampbell@omm.com

Julia Schiller (appearing pro hac vice)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
jschiller@omm.com

Deborah L. Feinstein (D.C. Bar No. 412109)
**ARNOLD & PORTER**
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
debbie.feinstein@arnoldporter.com

*Attorneys for Defendants Bertelsmann SE & Co. KGaA and Penguin Random House LLC*

/s/ *Stephen R. Fishbein*
Stephen R. Fishbein

14

Highly Confidential

Case 1:21-cv-02886-FYP   Document 181-105   Filed 09/08/22   Page 15 of 15

# VERIFICATION

I, Jonathan Karp, Chief Executive Officer of Simon & Schuster, Inc., hereby verify under penalty of perjury, that I have reviewed the foregoing RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES, and that the Responses to Interrogatories Nos. 1 through 4 are true and correct to the best of my knowledge, understanding, and belief. This verification is based on a reasonable inquiry into the subject matter of the Responses, including my discussions with others and/or review of various records. I reserve the right to update or amend these Responses based on new or additional information.

DocuSigned by:

*Jonathan Karp*

D017C5CA1A324CA...